# United States Court of Appeals
## For the Eighth Circuit

No. 14-2163

Russell Bucklew

*Plaintiff - Appellant*

v.

George A. Lombardi

*Defendant - Appellee*

Appeal from United States District Court
for the Western District of Missouri - Kansas City

Submitted: May 20, 2014
Filed: May 20, 2014

Before LOKEN, BYE, and MELLOY, Circuit Judges.

MELLOY, Circuit Judge.

Missouri death row inmate Russell Bucklew has filed a motion for stay of execution to allow appeal from the district court's denial of his motions for a temporary restraining order, preliminary injunction, and 60-day stay as well as the district court's dismissal of his complaint for failure to state a claim. Bucklew alleges—and the uncontested evidence shows—that he suffers a medical condition known as cavernous hemangioma involving large vascular deformities and tumors in

his face and neck that cause pressure, pain, and frequent bleeding. He also alleges that the likely outcome of his attempted execution pursuant to Missouri's current lethal injection protocol will be either (1) a long, drawn-out, and painful death due to poor movement of the drug through his atypical circulatory system, or (2) death via choking and suffocation on blood released by anticipated ruptures of the weakened veins in his neck and face. He presents uncontested medical evidence in the form of declarations and affidavits obtained from physicians who have examined his medical records.[1] The district court denied all relief, finding that Bucklew failed to show a sufficiently high likelihood of an unconstitutional level of needless suffering. The district court also determined that Bucklew failed to state a claim because he did not satisfy our circuit's requirement that a death row inmate challenging the method of execution set forth an alternative, more humane method of execution in order to state a claim for cruel and unusual punishment in violation of the Eighth Amendment. See In re Lombardi, 741 F.3d 888, 895–96 (8th Cir. 2014) (en banc) (interpreting Baze v. Rees, 553 U.S. 35, 52 (2008)).

We grant the stay. Bucklew's unrebutted medical evidence demonstrates the requisite sufficient likelihood of unnecessary pain and suffering beyond the constitutionally permissible amount inherent in all executions. Further, the requirement for an inmate to set forth an alternative method for execution does not apply in a case like this involving a specific, medically-based, as-applied, individual challenge to a method of execution. We read our circuit's Lombardi opinion, and the Baze opinion upon which it relied, as applying only to facial challenges to an

[1]As explained below, uncompensated physicians have reviewed limited records and provided affidavits and declarations based on their views. Bucklew's hemangiomas continue to grow and medical imaging has not taken place for over four years. The Missouri Department of Corrections does not deny the underlying facts of his illness, the large nature of these growths, or the frequent bleeding that occurs on a normal and ongoing basis.

execution protocol.[2] Moreover, even if the requirement of Lombardi were otherwise applicable, the state in this case has systematically resisted Bucklew's efforts to obtain medical examinations (and denied and resisted attempts to secure funding for such efforts) which would be necessary to articulate a feasible alternative. It is unrealistic to expect Bucklew to come up with a medically based alternative without full assessment of his medical condition. We grant the requested stay.

## I. Background

In the interests of timeliness (and because the district court dismissed Bucklew's complaint for failure to state a claim) we set forth verbatim portions of the allegations from Bucklew's complaint regarding his medical conditions:

> 26. Mr. Bucklew has suffered from the symptoms of congenital cavernous hemangioma his entire life, including frequent hemorrhaging through his facial orifices, disturbances to his vision and hearing, pain and pressure in his head, constant headaches, dizziness, and episodes of loss of consciousness. He frequently bleeds through his mouth, nose and ears, and has sometimes bled even through his eyes.
> 27. The hemangiomas—which are clumps of weak, malformed vessels—fill Mr. Bucklew’s face, head, neck and throat, displacing healthy tissue and stealing blood flow from normal adjacent tissues, depriving those tissues of necessary oxygen.
> 28. The hemangiomas are vascular tumors, and it is in the nature of such tumors to continuously expand. Although the tumors are classified as benign tumors, their growth is locally invasive and destructive.

[2] Lombardi was a facial challenge raised by a group of inmates and the rule articulated therein was based on the Lombardi majority's interpretation of Baze, which, itself, was a facial challenge raised by two inmates. Neither case involved allegations of insufficient consideration of an individual inmate's medical conditions or as-applied challenges based on such conditions.

29. Over the years, doctors have attempted treatment on many occasions, only to conclude that the available treatments—chemotherapy, sclerotherapy, radiation therapy and surgery—hold no appreciable chance of success.

30. In 1991, a specialist who examined Mr. Bucklew and treated his hemangioma for many years noted that any attempt to remove the vascular tumor "would require extensive surgery which would be mutilating and very risky as far as blood loss."

31. Over the years, attempts at sclerotherapy, chemotherapy and radiation therapy all failed. An April 2012 report notes the minimal success of prior therapies and states: "The large size makes the hemangioma not amenable to sclerotherapy." The report also notes that surgery would result in "large concomitant disability and disfiguration."

32. Doctors have described the hemangiomas as "very massive," "extensive" and a "large complex right facial mass." In March 2003, a doctor who examined Mr. Bucklew wanted him examined immediately by a specialist because of progression of the vascular tumor, which the doctor believed "could be potentially fatal to the patient." In June 2010, an imaging report stated that Mr. Bucklew's airway was "severely compromised." A July 2011 medical report noted there was "difficulty [with] bleeding management." Two months later, another doctor noted the alarming expansion of the lesion, stating it encompassed "the entire soft palate and uvula, which are impossible to visualize due to the expansion of the lesion."

33. Throughout the records, doctors employed or contracted with by the State of Missouri repeatedly warn of the expansion of the vascular tumor, stating in September 2011 "this has been present for 20 plus years, but has increasingly grown larger and larger."

34. The possibility of another attempt at treatment was dismissed in April 2011, when Mr. Bucklew's doctor observed "there was minimal benefit from the previous sclerotherapy" and the "large size" of the hemangioma precluded effective treatment with sclerotherapy.

35. Medical reports in March 2013 describe an episode of severe pain, lightheadedness and loss of consciousness. Doctors ordered narcotic drugs for pain.
36. Periodically, the hemangiomas rupture, and Mr. Bucklew is given gauze and biohazard bags to keep with him to collect bloody discharge. Mr. Bucklew frequently suffers from nausea, dizziness and bouts of excruciating pain. He is treated with anti-epileptic and narcotic pain medication as well as medication to stabilize his mood.

As relevant to Bucklew's arguments in this case and in order to place the expert physician's comments and opinions in context, it is necessary to describe Missouri's execution protocol. Missouri's protocol[3] calls for the injection of a single powerful barbiturate, pentobarbital. In sequence, an IV line is inserted, a saline solution containing a blue dye (methylene blue) is injected to ensure the line is clear, and five grams of pentobarbital are injected into the line. The condemned is alone in an execution room but is observed remotely by execution personnel. If the five grams of pentobarbital do not result in death, an additional five grams are injected into the line.

Bucklew obtained and attached to his complaint a declaration from Dr. Joel Zivot, a professor of surgery and anesthesiology at Emory University in Atlanta, Georgia. Dr. Zivot states that he reviewed Bucklew's medical records for the period of 1986 through February 17, 2014. In most pertinent part, Dr. Zivot stated as follows:

> Based on my review of Mr. Bucklew's medical records, it is my opinion that a substantial risk exists that, during the execution, Mr. Bucklew will suffer from extreme or excruciating pain as a result of hemorrhaging or abnormal circulation of the lethal drug, leading to a prolonged execution.

---

[3]As described by the state prior to changes suggested in response to Bucklew's filings in this case.

Mr. Bucklew also has a partially obstructed airway, which raises a very substantial risk that during an execution he could suffocate. Further, because Mr. Bucklew is prescribed several medications, including medications for pain, there is a substantial risk he will suffer an adverse event from drug interactions.

. . .

Methylene blue is a nitric oxide scavenger which will cause a spike in blood pressure when injected.

. . .

Blood pressure is not monitored during lethal injection. A spike in Mr. Bucklew's blood pressure raises a very substantial risk of hemorrhage. Mr. Bucklew's cavernous hemangiomas are a plexus of blood vessels that are abnormally weak and can easily rupture, even when the blood pressure is normal.

If Mr. Bucklew's blood pressure spikes after the methylene blue injections, the hemangiomas, now further engorged with blood, are likely to rupture, resulting in significant bleeding in the face, mouth and throat. If blood enters Mr. Bucklew's airway, it would likely cause choking and coughing, which Mr. Bucklew will experience as severe pain and suffocation.

There is also a very substantial risk that, because of Mr. Bucklew's vascular malformation, the lethal drug will not circulate as intended. The presence of cavernous hemangiomas creates an alternative low-resistance pathways to injected drugs. It is very likely that this abnormal circulation will inhibit the effectiveness of the pentobarbital, thereby delaying the depression of Mr. Bucklew's central nervous system. The reduced effectiveness of the pentobarbital and the delayed depression of the central nervous system will create a substantial risk of a prolonged and extremely painful execution for Mr. Bucklew.

. . .

It is important to understand, in the present context, that pentobarbital is not an analgesic and has no effect on reducing pain. Like other

> barbiturates, pentobarbital is antalgesic, that is, it tends to exaggerate or worsen pain.
>
> . . .
>
> Mr. Bucklew's medications may interact with the pentobarbital—an antalgesic—in a manner that increases pain, causing a substantial risk that Mr. Bucklew will experience an extremely painful death.
>
> . . .
>
> Moreover, the passage of time suggests that Mr. Bucklew's hemangiomas may pose significantly greater risk at this time, as it is the nature of hemangiomas to continuously expand. For this reason, a comprehensive examination of Mr. Bucklew is vital to developing a thorough understanding of the substantial risks posed to Mr. Bucklew by lethal injection[.]

Ultimately, Dr. Zivot recommended physical examination and medical imaging to gain a current understanding of the scope and location of all hemangiomas. Dr. Gregory Jamroz, a radiologist with additional certification in neuroradiology, similarly described Mr. Bucklew's condition and concluded:

> [I]t is my opinion to a reasonable degree of scientific certainty that reliance on a blood-borne sedative or other substance to bring about a rapid and painless death in Mr. Bucklew's case is questionable, and that in light of the pre-existing medical condition discussed in this declaration, examination of the vascular malformations is indicated if the goal of the administration of the substance is to bring about a rapid and painless death.

On April 9, 2014, the Missouri Supreme Court ordered that Bucklew be executed on May 21, 2014. Prior to and after April 9, Bucklew was one of several named plaintiffs in a multi-inmate action presenting facial challenges to Missouri's execution protocol. On May 9, Bucklew filed the present action presenting as-applied challenges related to his above-described medical conditions. That same day he filed



Case 4:14-cv-08000-BP Document 22 Filed 05/21/14 Page 7 of 17
Appellate Case: 14-2163 Page: 7 Date Filed: 05/20/2014 Entry ID: 4156128

a motion for a temporary restraining order and a preliminary injunction, and on May 14, he filed a motion for a stay of execution. The state filed arguments in opposition. In its opposition, however, the state acknowledged that Bucklew "appears to have serious medical issues" and that the state "recognizes that [the] Court may consider Bucklew's alleged higher risk when deciding whether to grant the equitable remedy of a stay of execution."

On May 16, Bucklew filed a reply with attachments including a supplemental affidavit from Dr. Zivot, who had traveled to examine Bucklew and reported his observations. In relevant part, Dr. Zivot stated in his affidavit that Bucklew suffered from hypertension and had a "very large vascular mass" inside his mouth and throat. Dr. Zivot stated, "The mass arises through the hard palate, extends into the upper maxilla on the right, and fully encompasses the uvula and distorts the anatomy of Mr. Bucklew's airway." He continued, "Mr. Bucklew's airway is . . . friable, meaning it is weak and could tear or rupture. If you touch it, it bleeds. . . . During an execution, Mr. Bucklew will be at great risk of choking and suffocating because of his partially obstructed airway and complications caused by his hemangiomas." Dr. Zivot concluded Bucklew's execution would carry "substantial risk to Mr. Bucklew of suffering grave adverse events during the execution, including hemorrhaging, suffocating, and experiencing excruciating pain."

On May 19, the district court denied all relief. Bucklew also had filed a motion for discovery of any additional or ongoing changes to the execution protocol and a motion to permit the videotaping of the execution "to preserve evidence." The district court denied these two ancillary motions as moot.

Through these filings, Missouri provided additional details about its execution protocol and described alterations to its protocol. First, Missouri stated that, in light of the allegations concerning methylene blue causing blood pressure to spike, methylene blue would not be used. Instead Missouri would use indigo carmine.

Bucklew objected to the use of indigo carmine, a substance his counsel represents is worse than methylene blue. The state responded that no dye would be used to verify if IV lines were open and functioning.[4] Missouri also asserted that an anesthesiologist would be present and could position Bucklew on the gurney to prevent choking. Bucklew argued that there is incomplete and insufficient current medical information available concerning his hemangiomas to know if this assistance may be effective. He also argued that, at any rate, he will be alone in the execution chamber during the execution such that any "positioning" assistance provided in advance of the actual execution is unlikely to be effective.

In denying the stay, the district court first recited in substantial detail the history of the separate litigation brought by Bucklew and others involving facial challenges to Missouri's execution protocol. The court emphasized that in the separate litigation, all claims other than Eighth Amendment claims had been dismissed, but that the court granted the plaintiffs leave to refile their Eighth Amendment claims in compliance with Lombardi, effectively requiring that the plaintiffs suggest a method of execution they would find acceptable. There, the plaintiffs collectively refused, stating they disagreed with the district court's assertion that such a suggestion was required. The plaintiffs in that case asked the court to enter a final order so they could seek appellate review. The district court dismissed their case. In Bucklew's present case, the district court stated that it interpreted the plaintiffs' position in the multi-plaintiff suit as asserting that no permissible form of
execution existed.

After addressing the separate, multi-plaintiff case involving facial challenges, the district court emphasized concerns with timeliness in Bucklew's present case, stating that "[w]hen assessing unnecessary delay, the Court considers the fact that a

---

[4]The state did not indicate what methodology will be used to verify the IV lines are opening and functioning.

stay of execution is an equitable remedy. As such, there is a 'strong equitable presumption against the grant of a stay where a claim could have been brought at such time as to allow consideration of the merits without requiring entry of a stay.'" (quoting Nooner v. Norris, 491 F.3d 804, 808 (8th Cir. 2007)). The court emphasized that an inmate may challenge a state's lethal injection protocol "'as long as the lethal injection is the established method of execution, the protocol is known, and no state administrative remedies are available.'" (quoting id.). It is not clear how this commentary on timeliness factored into the district court's analysis other than to set a general tone of disfavor toward last-minute motions for stays.[5]

The court then addressed Bucklew's Eighth Amendment claim. The court held that Bucklew failed to demonstrate the requisite showing of a sufficiently high likelihood of an unacceptably high level of pain and suffering as needed to make out a viable Eighth Amendment claim. The court also held that Bucklew failed to proffer an available and more humane alternative method of execution as expressly demanded by our court. We address these two separate issues below. First, however, it is necessary to address what we perceive as a disconnect between Bucklew's arguments on the one hand, and the arguments of the state and discussion of the district court on the other.

---

[5]The district court did not hold that Bucklew's motion was untimely, nor did the court explain how, in its view, the timing of Bucklew's motion related to the court's actual holdings. For the reasons set forth herein, the absence of more recent medical testing or examination while in the state's custody (coupled with the state's resistance to Bucklew's attempts to secure the same) explain any delay and refute the general characterization of Bucklew's efforts in this case as untimely or tardy. Simply put, he has consistently sought information concerning not only the method of execution, but testing to assess the current condition of his hemangiomas and the likely effect of an execution protocol on his unique physiology. We therefore reject the state's arguments and the district court's suggestion that the propriety of a stay in this case is skewed against Bucklew due to concerns of timeliness. Rather, a stay is required precisely because the state has thwarted Bucklew's efforts to obtain the medical information necessary to support his claims.



Case 4:14-cv-08000-BP Document 22 Filed 05/21/14 Page 10 of 17
Appellate Case: 14-2163 Page: 10 Date Filed: 05/20/2014 Entry ID: 4156128

II. Discussion

"[A] stay of execution is an equitable remedy [and] inmates seeking time to challenge the manner in which the State plans to execute them must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits." Hill v. McDonough, 547 U.S. 573, 584 (2006). Here, the strong and unrebutted medical evidence offered by Bucklew demonstrates a significant possibility of success on the merits. Further, success is not foreclosed by a failure to plead an alternative form of execution because the requirement to proffer an alternative method as set forth in Lombardi does not apply in this situation or, in the alternative, is excused by the state's resistance to funding and access for medical investigation. Finally, the balance of harms weighs in favor of a stay and the timeliness concerns typically attendant to such stays favor Bucklew's request because the state's long-standing resistance to medical review has delayed development of Bucklew's position.

Bucklew's description of his medical condition, as set forth by Drs. Zivot and Jamroz is *uncontested*. Although Bucklew's vascular deformities continue to grow, medical imaging has not occurred in four years, and Bucklew has not received funding for experts. Notwithstanding the absence of funds, counsel obtained the medical opinions set forth herein, including the recent examination by Dr. Zivot, and the physicians' opinions are strong and clear. These opinions were not subjected to the back and forth of litigation or tested by the opinions of competing experts for the state. Rather, based on the information actually available to them, these experts opined in a reasonable and clear manner what was likely to occur in the event Missouri's execution protocol is carried out on Bucklew: there is a substantial and serious risk of excruciating pain if Bucklew were to be subjected to Missouri's execution protocol.

The state does not seriously contend that the execution drug will circulate through Bucklew's body as it might generally be expected to do on an otherwise

generally healthy person. The state does not deny a likely enhanced level of pain associated with Bucklew's execution as compared with a condemned prisoner in possession of a normally functioning circulatory system. Similarly, the state does not suggest any inaccuracies with Bucklew's assertion that the state has resisted his efforts to obtain funding for experts, physical examinations, or current medical imaging. Given this context, it is not appropriate or permissible to reject the uncontested affidavits and declarations of Bucklew's experts due to their failure to contain greater specificity regarding possible drug interactions, or more precise predictions of how quickly, effectively, or painfully the pentobarbital might circulate throughout Bucklew's body.

The experts' opinions stated, in short, (1) there is a serious medical condition in play in this case, (2) more up to date medical information and diagnoses are needed to fully understand the degree of pain and trauma likely to occur during Bucklew's execution, and (3) the execution as planned is highly likely to result in bleeding, choking, and suffocation due to rupture of the weak and friable vascular deformities. Specifically, Bucklew's evidence demonstrated that he will:

> (1) suffer hemorrhaging in his face, mouth, or throat, resulting in bleeding through his facial orifices and/or bleeding into his airway and subsequent suffocation;
> (2) experience a spike in blood pressure, as a result of stress or as a side effect of methylene blue administered with the IV fluid, thus further heightening the risk of a vascular rupture and additional bleeding;
> (3) suffer adverse medication interactions, which may have the effect of increasing pain; and
> (4) suffer a prolonged, excruciating execution because of the failure of the lethal drugs to properly enter or circulate in Bucklew's body, due to the vascular malformations.

The district court, in rejecting Bucklew's arguments and his experts' opinions, did not indicate how or why Bucklew's experts might have provided more precise information in the absence of imaging or why they would have provided different descriptions in the absence of any countervailing evidence or medical opinions from the state that might have prompted such additional detail.

Baze, 553 U.S. 35, requires a death row petitioner to present a significant likelihood of a constitutionally unacceptable level of pain and suffering. The evidence in this case clearly asserts such a qualifying risk. The participating justices in the Baze plurality agreed that the purposeful enhancement of an execution with torture or efforts to make the execution more painful would violate the Eighth Amendment. These justices also held that an execution may violate the Eighth Amendment where there is "an 'objectively intolerable risk of harm' that officials may not ignore." 553 U.S. at 50 (quoting Farmer v. Brennan, 511 U.S. 825, 846 and n.9 (1994)). The "objectively intolerable risk of harm" was described follows:

> Our cases recognize that subjecting individuals to a risk of future harm—not simply actually inflicting pain—can qualify as cruel and unusual punishment. To establish that such exposure violates the Eighth Amendment, however, the conditions presenting the risk must be *sure or very likely* to cause serious illness and needless suffering, and give rise to sufficiently *imminent* dangers. We have explained that to prevail on such a claim there must be a substantial risk of serious harm, an objectively intolerable risk of harm that prevents prison officials from pleading that they were subjectively blameless for purposes of the Eighth Amendment.

Id. at 49–50 (internal citations and quotation marks omitted). This standard and the subject matter it deals with necessarily require reliance on evidence that will, by its nature, be imprecise and address levels or gradation of risk or pain. It appears that the district court, perhaps, found the physicians' assertions to be akin to naked legal conclusions or speculation. This, however, is not the case. And, in our adversarial

system, parties typically need not adjust and refine the wording of assertions or obtain additional affidavits or testimony in the absence of actual challenges to that evidence. In this context, it was clear error to reject the unrebutted medical evidence.

The district court also found that Bucklew had improperly pleaded his claims, stating, "Even if the Court were to conclude that this evidence establishes a substantial risk that Bucklew will suffer severe and needless pain, the Court concludes that Bucklew does not properly plead his claim." The district court based this conclusion on Lombardi, 741 F.3d at 895–96, in which our court interpreted the plurality opinion from Baze, 553 U.S. at 52, as requiring death row inmates and their attorneys to identify and argue in favor of an alternative form of execution that would not be in violation of the Eighth Amendment.

This pleading requirement from Baze as interpreted by our court in Lombardi, however, finds no application in the face of a prisoner's *as-applied* challenge asserting unusual and severe medical conditions that cannot constitutionally be ignored when assessing the likely effect of an execution protocol. Baze and Lombardi involved facial challenges to the general constitutionality of a state's execution protocol. Neither involved an inmate's arguments that his unique medical conditions would substantially enhance the likelihood and severity of a painful death. Such as-applied and medical-condition-contingent claims are not unique. In Siebert v. Allen, 506 F.3d 1047, 1049–50 (11th Cir. 2007), for example, the Eleventh Circuit distinguished between these different types of claims. There, the court reversed the denial of an injunction as to an as-applied challenge relating to a condemned prisoner's pancreatic cancer, but affirmed as to more general, facial challenges that focused only on a state's drug protocol.

It is true that our court has interpreted the Supreme Court's plurality opinion in Baze, 553 U.S. at 51–53, as imposing on death row petitioners asserting Eighth Amendment claims an obligation to articulate an alternative method for execution that



Case 4:14-cv-08000-BP Document 22 Filed 05/21/14 Page 14 of 17
Appellate Case: 14-2163 Page: 14 Date Filed: 05/20/2014 Entry ID: 4156128

will "significantly" reduce an otherwise substantial risk of unconstitutionally excessive pain and suffering. See Lombardi, 741 F.3d at 896 ("Without a plausible allegation of a feasible and more humane alternative method of execution, or a purposeful design by the State to inflict unnecessary pain, the plaintiffs have not stated an Eighth Amendment claim based on the use of compounded pentobarbital."). Judge Bye has dissented repeatedly to express his disagreement with our circuit's interpretation of Baze. See Zink v. Lombardi, No. 14-1919, Nicklasson v. Lombardi, No. 13–3664, In re Lombardi, 741 F.3d at 898, Smulls v. Lombardi, No. 14–1193, and Taylor v. Lombardi, No. 14–1388. In particular, he has noted that Baze itself addressed in no way the pleading standards for Eighth Amendment method-of-execution claims. See, e.g., Lombardi, 741 F.3d at 898–99 (noting that Baze was an appeal coming after the conclusion of a trial and emphasizing that the Court referred to alternative methods because the trial record at issue had involved a discussion and comparison of such methods). Regardless, until our court sitting en banc revisits the issue, Lombardi remains the law.

That does not, however, finish the inquiry. The scope of the pleading requirement that our court articulated in Lombardi remains unclear in the context of an "as-applied" challenge to an execution protocol. It should not be expanded to reach settings not envisioned by Lombardi or to excuse a state's failure to take into account a particular inmate's existing medical conditions that are likely to interfere with, or enhance the suffering associated with, an execution method. Neither our court nor the Supreme Court has characterized a pleading requirement as having been intended to shield a state from the obligation to take into account each particular prisoner's actual medical conditions when assessing the propriety of an execution method. Here, although the state now claims to be adjusting its execution protocol on the fly to eliminate the use of dyes or to position Bucklew in an attempt to prevent choking, these responses to Bucklew's challenges simply ignore the substance of his assertions. The state appears to have conducted no meaningful assessment of the likely interaction of Bucklew's unique physiology with the execution protocol.

Based on the foregoing, we conclude that there is a substantial likelihood that Bucklew will succeed on his claim that the current execution protocol as applied to him presents an "objectively intolerable risk of harm" in that it is "sure or very likely to cause . . . needless suffering," Baze, 553 U.S. at 49–50. In accordance with the balance of the factors referenced in Hill, 547 U.S. at 584, we also conclude that the irreparable harm to Bucklew is great in comparison to the harm to the state from staying the execution. Finally concerns over timeliness in this case do not weigh strongly against the grant of a stay due to the state's longstanding resistance to Bucklew's persistent efforts to secure medical review.

LOKEN, Circuit Judge.

I respectfully dissent.

In Brewer v. Landrigan, 131 S. Ct. 445 (2010), the Supreme Court summarily reversed the grant of a temporary restraining order because "speculation cannot substitute for evidence that the use of the drug is '*sure or very likely* to cause serious illness and needless suffering.' Baze v. Rees, 553 U.S. 35, 50 (2008) (quoting Helling v. McKinney, 509 U.S. 25, 33 (1993)." Russell Bucklew argues that he is entitled to a last-minute stay of execution because he has presented medical evidence that Missouri's lethal injection execution protocol, if applied to him, would violate the Eighth Amendment because of his unique, untreatable, decades-long suffering from cavernous hemangioma. But his supporting medical evidence simply does not satisfy the Supreme Court's rigorous standard. Dr. Zivot opined that there is a "substantial risk," a "very substantial risk," and a "great risk" that various complications may arise during the execution. Dr. Jamroz more conservatively opined that "reliance on a blood-borne sedative or other substance to bring about a rapid and painless death in Mr. Bucklew's case is *questionable*" (emphasis added). Consistent with these qualified opinions, the Motion for Stay of Execution alleges he has shown "a very



Case 4:14-cv-08000-BP Document 22 Filed 05/21/14 Page 16 of 17
Appellate Case: 14-2163 Page: 16 Date Filed: 05/20/2014 Entry ID: 4156128

substantial risk." As these opinions and allegations fall well short of what the Supreme Court requires, I would deny the Motion for Stay of Execution.

I also conclude that the grant of a stay of execution is contrary to our controlling en banc decision in In re Lombardi, 741 F.3d 888, 895-96 (8th Cir.), cert. denied, 134 S. Ct. 1790 (2014), which the majority unpersuasively attempts to distinguish. I reject Bucklew's contention that *he may not be executed* because there is no lethal injection protocol that his unique medical condition could tolerate without serious illness and needless suffering. Finally, given Bucklew's long history of hemangioma and the long delay before initiating these last-minute proceedings, I would deny the Motion for Stay of Execution as untimely.

---

Order Entered at the Direction of the Court:
Clerk, U.S. Court of Appeals, Eighth Circuit

______________________________________
/s/ Michael E. Gans