Case No. 4:14-CV-8000-BP

_____

IN THE UNTIED STAES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

_____

RUSSELL BUCKLEW,

Plaintiff,

v.

GEORGE LOMBARDI et al.,

Defendants.

_____

RESPONSE TO DEFENDANT'S MOTION TO DISMISS
THIRD AMENDED COMPLAINT AND SUGGESTIONS IN SUPPORT

_____

Cheryl A. Pilate
Lindsay J. Runnels
Morgan Pilate, LLC
926 Cherry Street
Kansas City, Missouri 64106
Phone:  (816) 471-6694
Fax: (816) 472-3516

Attorneys for Mr. Bucklew

# **TABLE OF CONTENTS**

Table of Authorities ................................................................................................................. 3

Suggestions in Support of Motion ............................................................................................ 5

II. Factual Background ............................................................................................................. 5

II. Mr. Bucklew's Claim is Not Barred by The Statute of Limitations ..................................... 12

III. Doctrine of Claim Preclusion Does Not Apply .................................................................. 18

IV. Mr. Bucklew's Eighth Amendment Claim is Not a Habeas Claim ...................................... 22

V.  The Rooker-Feldman Doctrine Does Not Apply ............................................................... 23

VI. Mr. Bucklew Has Pled a Viable Eighth Amendment Claim .............................................. 23

VII. Mr. Bucklew's Eighth Amendment Claim of Deliberate Indifference to Mr. Bucklew's Medical Needs and His First Amendment Claim Are Not Barred By Issue Preclusion ........................................... 23

Conclusion .............................................................................................................................. 24

Certificate of Service ............................................................................................................. 24

# TABLE OF AUTHORITIES

Cases

*Anyonymous v. Vella*, 2006 WL 1401680 (D. Neb. 2006)........................................................... 12

*Baze v. Rees,* 553 U.S. 35 (2008).............................................................................................. 6

*Bucklew v. Luebbers*, 01-8000-DW ..................................................................................... 16, 19

*Bucklew v. Luebbers*, 14-2020 (8th Cir. 2014) ......................................................................... 16

*Bucklew v. Lombardi,* 783 F.3d 1120 (8th Cir. 2015).................................................... 11, 14, 23

*Bucklew v. Robinson*, 09AC-CC0076 (Circuit Court of Cole County, 2009)...................... 16, 17

*Bucklew v. Robinson*, 72984 (W.D. of Mo. 2010) .................................................................... 16

*Bucklew v. Robinson*, 90198 (Mo. 2009) ................................................................................ 16

*Bucklew v. Robinson*, 90924 (Mo. 2010) ........................................................................... 16, 17

*Bucklew v. Robinson*, 91556 (Mo. 2011) ................................................................................ 16

*Bucklew v. Roper*, 03-3721 (8th Cir. 2008) ............................................................................ 16

*Bucklew v. Steele*, Case No. 01-8000-DW (W.D. Mo. 2014) ............................................. 16, 19

*Buder v. Fiske,* 174 F.2d 260 (8th Cir. 1949)......................................................................... 20

*Chakonas v. City of Chicago*, 42 F.3d 1132 (7th Cir. 1994)............................................... 15, 16

*Comm'r of Internal Revenue v. Sunnen*, 333 U.S. 591 (1948).............................................. 22

*Cotton Schrichte v. Peate*, 2008 WL 32007752 .................................................................... 13

*Dorsey et al., v. Pinnacle Automotive Company*, 278 F.3d 830, 838 (8th Cir. 2002)............... 15

*Dring v. McDonnell Douglas Corp.*, 58 F.3d 1323 (8th Cir. 1995)........................................... 16

*Glossip v. Gross,* 135 S. Ct. 2726 (2015) ....................................................................... 7, 8, 22

*Farmer v. Cook*, 782 F.2d 780 (8th Cir. 1986) ....................................................................... 13

*Green v. Missouri,* 2008 WL 4833020 (E.D. Mo. 2008) .......................................................... 12

*Hill v. McDonough*, 547 U.S. 573 (2006) ............................................................................... 20

*Kriegesmann v. Barry-Wehmiller* Co., 739F.2d 357 (8th Cir. 1994)........................................ 16

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350 (1991) ....................... 16

*Montana v. United States*, 440 U.S. 147 (1979) ................................................................ 18, 22

*McNair v. Allen*, 515 F.3d 1168 (11th Cir. 2008) .................................................................... 14

*Rooker v. Fidelity* Trust Co., 263 U.S. 413 (1923) .................................................................. 23

Case 4:14-cv-08000-BP    Document 50    Filed 07/24/15    Page 3 of 25

*Rosemann v. Roto-Die Inc.* 276 F.3d 393 (8th Cir. 2002) ............................................................ 19

*Southern Pacific R. Co. v. United States,* 168 U.S. 1 (1897) ........................................................ 18

*Snider v. City of Excelsior Springs, Mo.*, 154 F.3d 809 (8th Cir. 1998) .................................... 23

*State v. Bucklew, SC80052* (Mo. 2009) ........................................................................................ 16

*Sulik v. Taney County of Missouri,* 393 F.3d 765 (8th Cir. 2005) .............................................. 13

*Townsend v. E. Chem Waste Sys.*, 234 S.W.3d 452 (Mo. App. 2007) ........................................ 12

*Varner v. Peterson Farms*, 371 F.3d 1011 (8th Cir. 2004) ........................................................ 12

*Wallace v. Kato*, 549 U.S 384 (2007) ........................................................................................... 13

*Wilson v. Garcia*, 471 U.S. 261 (1985) ........................................................................................ 13

*Woodbury v. Porter*, 158 F.2d 194 (8th Cir. 1946) ..................................................................... 20

*Worthington v. State,* 166 S.W.3d 566 (Mo. 2005) ...................................................................... 14

*Zink v. Lombardi*, Case No. 12-4209 ...................................................................................... 5, 18, 23

*Zink v. Lombardi,* Case No. 14-0223 ................................................................................ *in passim*

*Zipes v. TWA*, 455 U.S. 385 (1982) .............................................................................................. 15

Statutes

Mo. Rev. Stat. § 516.120(4) ........................................................................................................... 13

Mo. Rev. Stat. § 546.720.1 .............................................................................................................. 7

Mo. Rev. Stat. § 610.010 ................................................................................................................. 8

Case 4:14-cv-08000-BP   Document 50   Filed 07/24/15   Page 4 of 25

| | | |
|---|---|---|
| **RUSSELL BUCKLEW,** | ) | |
| *Plaintiff,* | ) | |
| **v.** | ) | **Case No. 14-08000** |
| **GEORGE A. LOMBARDI,** | ) | |
| **DAVID A. DORMIRE,** | ) | |
| **And** | ) | |
| **TERRY RUSSELL,** | ) | |
| *Defendants.* | ) | |

## PLAINTIFF RUSSELL BUCKLEW'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT

Plaintiff Russell Bucklew, by and through his counsel, hereby responds in opposition to Defendants' Motion to Dismiss Third Amended Complaint. Defendants' motion should be denied in its entirety.

### I. Factual Background

All of Defendants' arguments necessarily fail because they disregard the *clear and dispositive differences* between Mr. Bucklew's claims, which focus on his severe medical condition, and the claims of the *Zink* plaintiffs, which focus on the risks posed by the lethal drug, compounded pentobarbital. *See Zink v. Lombardi*, Case No. 12-4209 (Doc. 338, 437). Mr. Bucklew's case has virtually no factual overlap with *Zink,* other than both cases necessarily concern Missouri's execution protocol. But while the *Zink* case addresses the potency, purity and safety of the lethal drug (alleged to be compounded pentobarbital), Mr. Bucklew's case is solely concerned with the grave and unique risks faced by him because of his medical condition, irrespective of the particular lethal drug the State chooses to administer. Defendants' misapprehension of the two cases dooms their various arguments, including their asserted defenses of claim preclusion and *res judicata*.

As discussed in detail throughout Mr. Bucklew's complaint, he suffers from a rare congenital condition that has, since birth, caused the growth of unstable, blood-engorged tumors in his head, neck and throat. The condition is progressive and, ultimately, fatal. Mr. Bucklew's disease is at a very advanced stage and has grown worse even in the past twelve months. The blood-filled tumors fill Mr.

Bucklew's nasal passages, sinuses and throat; they also largely obstruct his airway. Recently, they have caused severe pressure to his right eye, and they also block his right nostril. The tumors also interfere with Mr. Bucklew's vision and hearing and impair his ability to chew certain foods. He suffers regularly from severe pain in his jaw and teeth along with hemorrhaging in his throat. He frequently coughs, chokes and strains to breathe.

Because of Mr. Bucklew's condition, cavernous hemangioma, he is at grave risk during any execution by lethal injection of hemorrhaging, choking on his own blood and other secretions and then suffocating to death. Significantly, at *no* point in the Motion to Dismiss do the Defendants attempt to rebut the specific allegations raised by Mr. Bucklew or claim that the specter of a prolonged and excruciating execution does not meet the Eighth Amendment standard of a "substantial risk" of "severe pain" and "serious harm." *Baze v. Rees*, 553 U.S. 35, 49-50, 61 (2008); *see also Glossip v. Gross,* 135 S. Ct. 2726, 2737 (2015). Defendants also do not take issue with the severe nature of Mr. Bucklew's medical condition.

Instead, Defendants raise a series of procedural arguments – concerning the statute of limitations, claim preclusion and *res judicata* – which they suggest defeat Mr. Bucklew's claims. Their arguments quickly crumble, however, because Defendants: (1) fail to recognize that Bucklew's claims are utterly separate and distinct from the *Zink* claims and have virtually no factual overlap with those claims; and (2) fail to recognize that Bucklew's claims involve a progressive condition in which all elements of the Eighth Amendment claim accrued only recently.

The core of Mr. Bucklew's claims focus on the increasing obstruction of his airway and its "friability." Because the airway has deteriorated and become friable, it is prone to tearing or rupturing, and cannot be kept open with standard airway equipment. *See* Third Amended Complaint at 32, ¶¶ 93 - 95. Thus, any adjustments or accommodations for the purpose of execution are not only likely to fail, but possibly may make the situation worse. Further, if the likely complications arise, no medical personnel will be present in the execution room, which would leave Mr. Bucklew to choke, struggle and ultimately suffocate through a prolonged execution.

6

The risks arising from Mr. Bucklew's fragile airway are unique to him and exist regardless of the specific lethal drug administered. Mr. Bucklew's condition is also congenital and exists through no fault of his own. At present, the blood-engorged tumors in his throat continue to grow and have fully encased his uvula, causing regular choking and labored breathing. In the past several months, Mr. Bucklew has been frequently awakened at night by his inability to breathe, requiring him to quickly change his position and take in some fluid to regain air flow.

It is only within approximately the last year that Mr. Bucklew's airway has grown so obstructed that his ability to breathe has become grossly compromised. It is also within the last year that the airway has so degraded that it is considered "friable," and therefore not amenable to being "managed" during an execution with the equipment typically used to maintain an open airway. It is also within the last year that Mr. Bucklew's long-diagnosed anxiety disorder has grown worse, exacerbated in part by coming within hours of execution last year. A prison physician recently diagnosed Bucklew with "stress-induced psychotic reaction," and he is presently on an array of psychotropic drugs aimed at reducing his anxiety and delusional thoughts.

Any increase in Mr. Bucklew's blood pressure – which is likely to occur during the stress of an execution -- is likely to cause hemorrhaging into Bucklew's throat, threatening his airway and setting up a vicious cycle in which more strenuous attempts to breathe only cause greater obstruction and difficulty breathing, ultimately leading to choking and suffocation. *See* Third Amended Complaint at 33, ¶ 97.

Because of the grave threats posed by lethal injection, Mr. Bucklew's counsel have been compelled to investigate other methods of execution. Despite explicit references in the Third Amended Complaint to an alternative method, lethal gas, Defendants claim, incorrectly, that Mr. Bucklew has failed to satisfy the pleading standard prescribed in *Glossip,* 135 S. Ct. at 2739. (2015). Under that standard, as enunciated by the Supreme Court, a plaintiff alleging an Eighth Amendment claim must "plead and prove a known and available alternative" method of execution. *Id*.

To the best of his *present* ability, Mr. Bucklew indeed alleges an "alternative method" of execution – that method being lethal gas, as expressly authorized by Missouri statute, Mo. Rev. Stat.

§546.720.1. *See* Third Amended Complaint at 4, 11, 12 (¶¶ 21, 24). Based on that express statutory authorization, Mr. Bucklew reasonably believes that the State of Missouri is, or should be, prepared to carry out execution by lethal gas.

In an effort to comply with *Glossip* and to avoid resting on mere speculation, Mr. Bucklew has attempted to investigate feasible, alternative methods of execution, including lethal gas. He has been unable, however, to obtain any current information regarding the status of Missouri's gas chamber because the State, to date, has refused to provide that information. Mr. Bucklew has made repeated requests to the Department of Corrections' deputy general counsel for information under Missouri's Sunshine Act, Mo. Rev. Stat. 610.010 *et seq.*, including detailed requests on June 3, 2015 regarding lethal gas, firing squad, hanging, electrocution or "any other contemplated or feasible method" of execution. The DOC indicated on June 4, 2015 that it would need three weeks to respond. Seven weeks later, however, no response has yet been received.

Absent Missouri's compliance with the state's Sunshine Law, Mr. Bucklew has no way of determining at present the degree to which lethal gas may be regarded as "feasible" or what other methods of execution may be contemplated. Recognizing that Missouri law only presently authorizes execution by lethal injection and lethal gas, Mr. Bucklew specifically requested research and communications with Missouri legislators regarding lethal gas and "any other contemplated or feasible method of execution." (*See* Exhibit A). Until Missouri responds to Mr. Bucklew's Sunshine Act requests – which are carefully tailored and aimed squarely at discovering the feasibility of alternative methods, including lethal gas – Mr. Bucklew can only assert general allegations, as stated in his Third Amended Complaint. That said, it is clear that Missouri legislators have provided for a "known and available alternative" in Mo. Rev. Stat. §546.720.1, and that Mr. Bucklew's allegation suggesting lethal gas as an alternative satisfies pleading requirements for an Eighth Amendment claim. *See Glossip,* 135 S. Ct. at 2739; *see also* Third Amended Complaint at ¶¶ 21, 24, 137-38.

That caveat aside, *Mr. Bucklew specifically alleges "lethal gas" as a feasible, alternative method,* in conformity with the pleading standard announced in *Glossip*. Because this method is specifically

8

authorized and contemplated by statute, Mr. Bucklew must presume that it is, indeed, feasible and that the State of Missouri has a protocol for lethal gas and the ability to carry out an execution by lethal gas. Defendants have claimed falsely, and in direct contravention of Bucklew's allegations, that Bucklew alleges he "cannot be constitutionally executed by any form of lethal injection or lethal gas." (Motion to Dismiss, Doc. 47 at 8). Given Mr. Bucklew's unstable, blood-filled tumors and constricted airway, lethal gas may indeed be a significantly less painful way to conduct an execution in the case of Mr. Bucklew.

Because of the nature of the issues involved, at least limited discovery is necessary to:

(1) obtain further information regarding the status of Mr. Bucklew's airway and the abnormalities in his circulatory system, thereby permitting him to carry his burden of proof at any hearing on the merits; such information would include appropriate diagnostic imaging and a proper medical examination, as alleged in the Third Amended Complaint;

(2) obtain at least limited discovery as to Missouri's readiness to use lethal gas, or any other feasible method, and the specific protocol or procedures involved; or,

(3) in the event that lethal gas or some other method is not available, obtaining at least limited discovery into the ***current*** lethal injection protocol and procedures to see if a possibility exists that the protocol or procedures may be adjusted in some way to significantly reduce the risks to Mr. Bucklew and thereby comply with the Eighth Amendment.

Mr. Bucklew emphasizes that any discovery as to lethal injection protocol and procedures must focus on what is ***currently*** being used. Contrary to Missouri's past representations, it seems apparent that Missouri is no longer using *compounded* pentobarbital, but is instead using *manufactured* pentobarbital. While the active ingredient in the two drugs is the same, the use of manufactured, as opposed to compounded, pentobarbital is significant, as such use would indicate that Missouri is either: (1) obtaining the drug deceptively through an unwitting supplier, as the sole FDA-approved manufacturer of pentobarbital, Akorn, prohibits its suppliers from selling the drug to prison systems; or (2) the drug has been obtained from a non-FDA approved source, in likely violation of federal law; or (3) the DOC is

9

using the veterinary form of pentobarbital, which is not approved for use in humans and is also a likely violation of federal law.

Mr. Bucklew believes, based on reasonable inferences from the known facts, that Missouri is likely using manufactured pentobarbital from an unknown source. Alone among all of the states, Missouri seems to have a ready pipeline of pentobarbital and is in fact building up a large inventory of the drug (it presently has enough pentobarbital for at least 16 executions). The growing inventory is inconsistent with the use of compounded pentobarbital, as compounded drugs have a short shelf life. Missouri has also hedged in recent pleadings, stating in its brief in opposition to the petition for *writ of certiorari* in *Zink v. Lombardi*, Case No. 14-0223, that it "*does not admit or deny* that the chemical now used is compounded as opposed to manufactured [pentobarbital]." Brief in Opposition (filed April 30, 2015)(emphasis added). Similarly, in the present Motion to Dismiss, Defendants seem to be distancing themselves, curiously, from the notion they are relying on compounded pentobarbital, instead attempting to shift responsibility for the drug's identity to Mr. Bucklew, stating: "Bucklew does not limit his allegations to compounded pentobarbital, *which is the type of drug he alleges will be used in the execution.*" (Motion to Dismiss, Doc. 47 at 8) (emphasis added).

To be clear, Mr. Bucklew is not alleging the use of compounded pentobarbital. Given the State's recent hedging and Missouri's unexplained and growing inventory of pentobarbital, Mr. Bucklew believes it is far more likely that the State is, in fact, using *manufactured* pentobarbital from some unknown source.

At this point, Defendants should cease their semantic gymnastics and file an Answer in this case. They are relying on a battery of flawed arguments to avoid squarely placing at issue the facts of this case. Although the *type* of drug being used is not an issue at the core of Mr. Bucklew's suit, he has alleged potential dangers arising from drug interactions and the increased risks arising from the use of a compounded drug that, unlike a manufactured drug, carries no guarantees of its safety, potency or purity. (*See* Third Amended Complaint at ¶¶ 111-16, 120). Such increased risks make it even more likely that Mr. Bucklew's execution will be a prolonged, gruesome and excruciating event.

As recognized by the Eighth Circuit in *Bucklew v Lombardi,* 783 F.3d 1120 (8th Cir. 2015), the "first step [on remand] should be a timely response by defendants to the complaint or any amended complaint. The parties' respective positions can then be clarified before determining whether discovery and an evidentiary hearing are needed." *Id*. at 1128.

Throughout their motion to dismiss, Defendants have avoided discussion of the merits of Mr. Bucklew's claims, despite the fact that his case is clearly distinguishable from that of all other Missouri prisoners who have sought stays of execution on lethal injection grounds. Alone among all of the death-sentenced petitioners, Mr. Bucklew was granted a stay of execution based on lethal injection claims. As observed by the Eighth Circuit, sitting *en banc*, case law exists to "support[] Bucklew's assertion that his as-applied challenge to Missouri's method of execution distinguishes his claim from the facial challenge in *Zink*." *Id*. at 1127.

During oral argument, on September 9, 2014, the Eighth Circuit made clear that the State of Missouri should respond to Mr. Bucklew's claims, which, given the nature of his as-applied challenge are clearly distinguishable from the *Zink* claims:

> Court: [S]o he's [Bucklew] made a showing that the Supreme Court says avoided a 12(b)(6) dismissal. And the question is where do we go from here. It seems to me that this is not a question of he has to propose an alternative. At least not until the State responds to whether the existing constitutional persistently upheld protocol as it applies to him would cause him unnecessary pain.

And again the Court makes its position known at 38:50:

> State: …[I]t is the case that Mr. Bucklew alleges problems that are unique to him and yes he does. But it's uncertain especially if this court-

> Court: It's uncertain because you have not in any way been required to respond to those affidavits. [Bucklew's uncontroverted expert affidavits].

And finally, at 41:15 the Court states:

> COURT: I don't see the risk of endless litigation. Certainly his condition doesn't translate into the universe of death row inmates and with respect to Mr. Bucklew, it seems to me, *if there were a remand procedure, it would start with the State responding.*

*See* Exh. 2, *Bucklew v. Lombardi,* transcript of excerpts from oral argument (emphasis added).

To date, Defendants have never responded to the substance of Mr. Bucklew's claims or provided any information regarding "known and available alternative" methods of execution.

## II. Mr. Bucklew's Claim is Not Barred by the Statute of Limitations

### *Defendants Have Failed To Meet Their Burden*

The statute of limitations is an affirmative defense and must be pled through facts. The defense may be claimed under a Rule 12(b)(6) motion "when it is clear from the face of the complaint that the limitations period has run." *Varner v. Peterson Farms*, 371 F.3d 1011, 1016 (8th Cir. 2004). Under Missouri law "[t]he bar of the running of the applicable statute of limitations is an affirmative defense, requiring the party asserting it not only to plead it,…but also to prove it, as a matter of law." *Townsend v. E. Chem. Waste Sys*., 234 S.W.3d 452, 462 (Mo. App. 2007). If there is any issue of fact relating to the statute of limitations, then the issue must be decided by the finder of fact. *Green v. Missouri*, 2008 WL 4833020, 5 (E.D. Mo. 2008). When there is dispute about when a statute has run, or whether the statute was tolled, a question of material fact exists and a trial is required on the statute of limitations question. *Anonymous v. Vella*, 2006 WL 1401680, 8 (D. of Neb. 2006).

Mr. Bucklew cannot discern from Defendants' Motion to Dismiss whether Defendants claim that the statute began to run in 1991 or 2003, since both dates are seemingly important to Defendants. However, neither date controls the statute of limitations legal analysis. In 1991, Mr. Bucklew was living and working in Troy, Missouri, and it would not be for another five years, in 1996, when Mr. Bucklew would be charged with the crime underlying his conviction. The second date in Defendants' Motion to Dismiss, 2003, is also irrelevant. Defendants also refer to a 2008 federal court action which they claim indicates Mr. Bucklew was aware of his claims at that time. That action was an *ex parte* request for expert funds to the Eighth Circuit so that Mr. Bucklew and counsel could be advised about his condition as it related to Missouri's lethal injection protocol. That request for funding did not claim that Mr. Bucklew's airway was severely compromised nor that his airway was friable.

In 1991, 2003, and in 2008, Mr. Bucklew certainly knew he suffered from cavernous hemangioma because his serious medical condition has been present from birth. Mr. Bucklew, however,

did not know, as he does now, that the blood-filled tumors in his face, head, throat and nose are extremely unstable and that his airway is friable, nor did he know that stress and some drugs can cause a spike in his blood pressure, making the rupture of his tumors likely. This information, necessarily, was obtained from a medical expert who reviewed Mr. Bucklew's medical records and examined him in person in 2014. Defendants do not state what they believe the triggering date is and they offer no argument for any period in time. What they do say is that the statute has run because the statute has run. Their pleading fails to meet the required burden of proof.

### *The Applicable Limitation Period is Five Years*

Missouri's five-year statute of limitations for personal injury actions, Mo. Rev. Stat. 516.120(4), applies to Mr. Bucklew's claims, brought under 42 U.S.C. § 1983. *See Wilson v. Garcia*, 471 U.S. 261, 276 (§ 1983 actions should be characterized as personal injury claims for purpose of applying the correct statute of limitations); *Sulik v. Taney County of Missouri*, 393 F.3d 765, 767 (8th Cir. 2005); *Farmer v. Cook*, 782 F.2d 780, 780 (8th Cir. 1986) (*per curiam*) (§ 1983 claims brought in Missouri subject to 5 year statute of limitations). Defendants cite *Cotton-Schrichte v. Peate*, 2008 WL 3200775, but the case relates to state law tort claims of assault and battery, and is wholly inapplicable to Mr. Bucklew's claim.

Furthermore, even if the Court determines, contrary to authority, that the limitations period is one year, as argued by Defendants, Mr. Bucklew still has timely filed this action. Mr. Bucklew's claims are not time barred because his claims did not accrue until May of 2014, as discussed below.

### *Mr. Bucklew's Claims Accrued in 2014*

Although the § 1983 statute of limitations is to be determined by examining state limitations for personal injury actions, the "accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). A claim accrues "when the [prisoner] has a complete and present cause of action that is when the [prisoner] can file suit and obtain relief." *Id.*

Some courts have held that the limitations period on method-of-execution claims accrues shortly after conviction, and resets if the state makes a substantial change to its execution procedure. *See e.g.*

*McNair v. Allen*, 515 F.3d 1168 (11th Cir. 2008). *McNair* is not controlling authority, nor is it applicable in this case. Moreover, the State of Missouri has rejected this approach: "As it is unknown what method, if any, of lethal injection may be utilized by the State of Missouri at such future time, if any, as Mr. Worthington's right to seek relief in state and federal courts is concluded **and his execution date and method are set**, it is premature for this Court to consider whether a particular method of lethal injection violates the Eighth Amendment because it causes lingering, conscious infliction of unnecessary pain." *Worthington v. State*, 166 S.W.3d 566, 583 n.3 (Mo. 2005) (emphasis added).

On March 6, 2015, the Eighth Circuit Court of Appeals reversed this Court's Order dismissing Mr. Bucklew's complaint and remanded this case for further proceedings. In a concurring opinion, those judges made clear their position that Mr. Bucklew has timely filed:

> Bucklew has put forth substantial evidence to show the claim was brought in a timely manner. This evidence includes: Missouri has changed its protocol many times since imposing a sentence of death on Bucklew; Bucklew's condition has become worse over time; and, because of Missouri's opposition, Bucklew has struggled for years to obtain sufficient scans to fully understand the extent of his health condition.

*Bucklew v. Lombardi,* 783 F.3d 1120, 1130 (8th Cir. 2015).

Unquestionably, counsel have known since the day that they began representing Mr. Bucklew that he is afflicted by a very serious congenital condition. One cannot look at Mr. Bucklew without noticing the malformation of his face due to the blood-filled tumors occupying his mouth and nose. Mr. Bucklew was born with the condition and it has worsened dramatically and progressively throughout his life. However, counsel are trained lawyers, not trained medical doctors. Counsel knew they needed an expert, and Mr. Bucklew, an indigent person, has been denied access to an expert at every turn. Counsel believed that Mr. Bucklew's medical condition could provide a basis for a legal challenge to his execution, but the facts, knowledge, understanding of his vulnerable veins, his compromised and blocked airway, and the incredibly delicate nature of his hemangiomas are critical facts that they did not know, and could not know, without medical imaging, access to Mr. Bucklew for an examination, and an expert to evaluate Mr. Bucklew's medical condition. Mr. Bucklew's claim accrued in May of 2014, when Dr.

14

Zivot was able to examine Mr. Bucklew's medical records and examine him in person. In May of 2014, Dr. Joel Zivot examined Mr. Bucklew and as a result of that examination, and Dr. Zivot's review of Mr. Bucklew's medical records, counsel learned for the first time that:

- Mr. Bucklew's airway is **friable**, meaning that it is weak and could tear or rupture. If it is touched, it bleeds.
- Mr. Bucklew's airway has grown progressively more obstructed and could likely cause him to suffocate during an execution.
- The risks of suffocation to Mr. Bucklew are greater when he is lying flat, because his airway is much more obstructed in that position. Mr. Bucklew has trouble breathing even when recumbent for a few moments.
- Any increase in Mr. Bucklew's blood pressure—such as from stress, or the injection of certain drugs, such as methylene blue or indigo carmine, among others--will only aggravate his vascular tumors and cause an even greater threat to his airway. If any secretions or blood enter his airway, or his breathing becomes labored, from any cause, his airway will become even more constricted, resulting in coughing, choking and suffocation.

Doc. 1, Ex. 4, Supplemental Affidavit of Dr. Zivot, May 14, 2014.

Mr. Bucklew's condition has progressively worsened over time, and it was impossible for Mr. Bucklew or his counsel to ascertain the state of his medical condition without access to expert services. Furthermore, Mr. Bucklew remains without funding to acquire necessary imaging, and the DOC has failed in its obligation to conduct any recent imaging of Mr. Bucklew. With regard to the accrual of the statute of limitations, it is the present, grave degree of airway obstruction along with the inability to use standard equipment to maintain an open airway that poses the greatest threat of suffocation and which gives rise to Mr. Bucklew's present Eighth Amendment claim. That claim did not accrue until, at the earliest, May of 2014.

### _Defendants' Conduct Requires Equitable Tolling of the Statute of Limitations_

Alternatively, if this Court determines that the statute of limitations has run, then Mr. Bucklew is entitled to equitable tolling. A statue of limitations is a requirement that is subject to waiver, estoppel and equitable tolling. _Zipes v. TWA_, 455 U.S. 385, 393 (1982).

The doctrine of equitable tolling is applied "when plaintiff, despite all due diligence, is unable to obtain vital information bearing on the existence of his claim." _Dorsey et al. v. Pinnacle Automation Company_, 278 F.3d 830, 838 (8th Cir. 2002) (_quoting Chakonas v. City of Chicago_, 42 F.3d 1132, 1135

(7th Cir. 1994)).  When a plaintiff remains ignorant of his claim "without any fault or want of diligence or care on his part" the statute does not begin to run until the facts upon which the claim is based are discovered.  *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991).

The doctrine of equitable estoppel "comes into play when a defendant takes active steps to prevent the plaintiff from suing on time."  *Dring v. McDonnell Douglas Corp.*, 58 F.3d 1323, 1329 (8th Cir. 1995) (quoting *Chakonas*, 42 F.3d at 1136).  The equitable estoppel inquiry focuses on the defendant's conduct.  A statute of limitations period will be modified on the basis of equitable estoppel if the "failure to file in a timely fashion is the consequence of either a deliberate design" by the defendant or of acts that the defendant "should have understood" would cause the plaintiff to delay in filing his case.  *Kriegesmann v. Barry-Wehmiller Co.*, 739 F.2d 357, 358-59 (8th Cir. 1984).

Both the doctrine of equitable tolling and equitable estoppel are implicated in this case.  Since 2008, Mr. Bucklew has attempted to obtain funding to investigate the degeneration and worsening of his medical condition a total of _ten[1] times in both state and federal court._  When Mr. Bucklew's counsel litigated their request in Missouri state courts, the State through the Attorney General's Office, actively opposed Mr. Bucklew's requests for medical expert services.  Defendants misstate the extensive record that establishes that Mr. Bucklew's counsel have repeatedly attempted to obtain experts and funding to litigate Mr. Bucklew's claims.  Defendants continue to fail to inform the Court that they have actively opposed Mr. Bucklew's motions for funding in Missouri state courts.  The Missouri State Public Defender System—represented by the Attorney General's Office—has repeatedly opposed Mr. Bucklew's efforts to obtain critical funding for medical consultation and expert services.

Now that Defendants have utterly failed in their obligation to provide appropriate medical care, including diagnostic care, they claim---disingenuously—that it is Mr. Bucklew's counsel who should

---

[1] *Bucklew v. Roper*, Case No. 03-3721 (8th Cir. 2008); *Bucklew v. Robinson*, Case No. 09AC-CC0076, Circuit Court of Cole County (December 2009); *Bucklew v. Robinson*, Case No. 72984, (W. Dist. Mo. 2010); *Bucklew v. Robinson,* Case No. 90198, (Mo. 2009); *Bucklew v. Robinso*n, Case No. 90924 (Mo. 2010); *Bucklew v. Robinson*, Case No. 91556 (Mo. 2011); *State v. Bucklew*, SC-80052 (Mo. 2009); *Bucklew v. Luebber*s, Case No. 01-8000-DW (W. Dist. Mo. 2011); *Bucklew v. Steele*, Case No. 01-8000-DW (W. Dist. Of Mo. 2014); *Bucklew v. Luebbers*, Case No. 14-2020 (8th Cir. 2014).

16

have obtained these facts and raised these issues, without money, without an expert and without recent imaging studies of their medically fragile client. Defendants only acknowledge that Mr. Bucklew has "serious medical issues." (Doc. 8 at 1).

Again, Defendants are disingenuous in their pleadings in this Court. In their Motion to Dismiss Third Amended Complaint, (Doc. 47), Defendants attempt to feign surprise, offense even, that Mr. Bucklew would suggest that the State of Missouri, the DOC Defendants and their counsel actively opposed Mr. Bucklew's requests for expert funding. Yet, in truth, Attorney General Koster and Assistant Attorney Generals signed those pleadings opposing Mr. Bucklew's requests for funding, just as they have signed the pleadings in this case. Defense counsel represents the State of Missouri, and opposed Mr. Bucklew's funding requests brought in mandamus actions:

> [Bucklew] asserts in the present case that he needs an expert to demonstrate that he has a medical condition that would make lethal injection painful, therefore violating the Eighth Amendment's prohibition on cruel and unusual punishment. However, [Bucklew] has not disclosed what, exactly, his proposed expert would testify to, or in what forum his testimony would be used...[Respondent] presum[es] [Mr. Bucklew] intends this expert to be used in a civil rights case brought under 42 U.S.C. § 1983, the most likely forum to prosecute the claims he raises in his petition...

Ex. 4, *Bucklew v. Robinson,* Circuit Court of Cole County, Case No. 09AC-CC0076, Suggestions in Opposition, Feb. 19, 2010. Again, on June 24, 2010, the Attorney General filed similar suggestions in opposition to Mr. Bucklew's plea for funding and experts to investigate and litigate his claims. *State ex rel. Bucklew v. Robinson,* No. SC90924 (Mo. 2010).

Mr. Bucklew's inability to obtain funding has placed him at a constitutionally intolerable disadvantage. With the ability to assign four attorneys to this case, and the ability to pay for any medical testing or the services of an expert, the State has not been similarly burdened. After repeatedly opposing counsel's efforts to obtain necessary funding from a medical expert, Defendants now assert that counsel should somehow have conjured up free experts willing to spend hours reviewing records, providing opinions, and traveling to examine Mr. Bucklew. Given its active opposition to Mr. Bucklew's efforts to obtain funding, the State should be estopped from making this factually inaccurate argument. The experts

that counsel have persuaded to assist did so after the Missouri Supreme Court set an execution date. They agreed to work with counsel under the imminence of the execution date and the urgency it imposes. It is not Mr. Bucklew, nor the experts, nor counsel who have been the laggards here. Indeed, the State of Missouri still has not obtained-up-to-date imaging studies of Mr. Bucklew; the most recent imaging occurred in 2010. This Court should reject Defendants' unsupported argument that the statute of limitations bars Mr. Bucklew's claims.

### III. The Doctrine of Claim Preclusion Does Not Apply

In the Motion to Dismiss, Defendants suggest that Mr. Bucklew should have brought his claims in the *Zink* action, as they merely involve "new issues about his personal health problems" and there "was no good reason Bucklew could not have presented the as-applied variation" of his claim in *Zink*.

Defendants' argument suffers from numerous fatal flaws, chief among them that Defendants have failed to recognize the clear and distinct differences between the *Zink* litigation and the *Bucklew* litigation. As discussed at length above, *there is virtually no factual overlap between the claims in the two cases, and the core issues in the two cases are distinctly different.*

Before delving into that analysis, however, Mr. Bucklew points out that, at the time he filed the present case, *Zink* was still pending before this Court and his case could have been easily consolidated with that action, had the Court felt it was appropriate to do so. Indeed, the Court could have consolidated, then dismissed both cases at the same time.

Mr. Bucklew filed his complaint in the Western District of Missouri on May 9, 2014, a full week *before* this Court issued the final order in *Zink* on May 16, 2014. The *Zink* case, thus, had not yet been fully adjudicated. *Res judicata* comes into play only when a "right, question or fact [is] distinctly put in issue and directly determined by a court of competent jurisdiction," and it is only upon a *final judgment* on the merits that further claims are barred. *Montana v. United States*, 440 U.S. 147, 153 (1979)(quoting *Southern Pacific R. Co. v. United States*, 168 U.S. 1, 48-49 (1897))(emphasis added).

At the point that Mr. Bucklew filed his initial complaint, no final judgment had yet been rendered in *Zink v. Lombardi*, Case No. 12-4209, and no "right, question or fact" pertaining specifically to Mr.

18

Bucklew's case had been "directly determined." Indeed, *none* of the allegations in *Zink* had anything to do with the physical condition or infirmities of *any* prisoner, or the likelihood that any of them would choke or suffocate during the execution.

In addition, the timing of Mr. Bucklew's filing was largely determined by factors completely outside of his control, as he had been repeatedly denied funding by state and federal courts for expert services (10 times between 2006 and 2014), and it was only under the press of an execution date that his counsel were able to secure the services of an expert, Dr. Joel Zivot, who agreed to review the case based only on the tenuous hope of future payment.[2]

In any case, it is clear that Mr. Bucklew's case is factually distinct from all other lethal injection cases arising from Missouri since 2013. In that period of time, 17 prisoners have been executed, and *only one*, Mr. Bucklew, has obtained a stay of execution based on claims concerning lethal injection. Alone among all Missouri litigants, Mr. Bucklew raised an *as applied* challenge to lethal injection, alleging that the protocol, because of his unique and severe medical condition, would constitute cruel and unusual punishment. *The facts that apply to Mr. Bucklew's claims do not support the claims raised by any other Missouri prisoner*. If the claims are not the "same," then the doctrine of claim preclusion does not apply. *See Rosemann v. Roto-Die, Inc.,* 276 F.3d 393, 397 (8th Cir. 2002).

Although the Eighth Circuit observed that the issues of *res judicata* or claim preclusion had not been raised in the district court at the outset and could therefore be raised during the remand proceedings, the appellate court's own observations establish why the doctrine of claim preclusion does not apply. Noting that case law supports the availability of an as-applied challenge,[3] the Eighth Circuit added that

---

[2]  Mr. Bucklew's counsel had specifically requested funding for Dr. Zivot's expert services and was denied in an order issued by Judge Whipple on April 30, 2014. *Bucklew v. Steele*, Case No. 01-8000-DW (order of April 30, 2014) Despite that setback, Mr. Bucklew's counsel were nonetheless able to file Mr. Bucklew's complaint with supporting affidavits on May 9, 2014, *Bucklew v. Lombardi*, Case No. 14-8000-BP (Doc. 1).  To date, Dr. Zivot has been paid nothing by any court for his services.  His out-of-pocket expenses have been funded by counsel, and Mr. Bucklew's family pulled together a small sum of money for his expert services.

[3]  The Eighth Circuit noted that *Siebert v. Allen*, 506 F.3d 1047, 1050 (11th Cir. 2007) concerns an as-applied challenge to a lethal injection protocol by a prisoner.  (The prisoner had pancreatic cancer and was terminally ill)  In a recent, post-*Glossip* case, the Supreme Court of Florida remanded a lethal

the "detailed allegations in Bucklew's complaint of a substantial risk of serious and imminent harm…" are "far more specific than the allegations" in the second amended complaint in *Zink*. *Bucklew*, 783 F.3d at 1127. As we now know, the *Zink* allegations failed, and the clearly distinguishable *Bucklew* allegations persuaded the Supreme Court to issue a stay of execution. The stay order implicitly establishes that Mr. Bucklew had satisfied the standard of *Hill v. McDonough*, 547 U.S. 573, 584 (2006) of showing a "significant possibility of success on the merits." No other Missouri prisoner was able to make such a showing in their facial challenges to Missouri's protocol, all of which focused on the provenance, quality and safety of the lethal drug.

Although a litigant is able, in appropriate circumstances, to join facial and as-applied challenges, he is not required to do so. The doctrine prohibiting the splitting of claims or causes of action "does not apply where the two causes of action are separate, even though they might have been joined in a single action." *Buder v. Fiske*, 174 F.2d 260, 268 (8th Cir. 1949)(citation omitted). As the Eighth Circuit has explained, "one of the tests for determining whether the cause of action asserted in a suit is the same as that prosecuted in a prior suit is whether or not proof of the same facts will support both actions." *Id.* (quoting *Woodbury v. Porter*, 158 F.2d 194, 195 (8th Cir. 1946))(internal quotation marks omitted).

As one of the *Zink* plaintiffs, Mr. Bucklew was *permitted* under Fed. R. Civ. P. 18(a) to join his individual claims against the Defendants, but he was *not required to do so*. There was not sufficient commonality in the cases to justify grafting a unique and intensely fact-bound set of claims onto the *Zink* litigation. Indeed, that would have served no party's best interest.

Proof of the <u>same</u> facts does not support both the *Zink* and *Bucklew* actions, nor is the outcome of one determinative of the other, definitively demonstrating that preclusion does not apply. The facts set forth in Mr. Bucklew's complaint – which draws upon years of medical treatment and thousands of pages of medical records in the Department of Corrections' possession, as well as affidavits from multiple

---

injection action for an evidentiary hearing following the prisoner's assertion that the use of midazolam was unconstitutional as applied to him because it would result in a paradoxical reaction, in light of his prior alleged brain damage and history of chemical dependency. (*See* Exh. 3, *Correll v. State*, Case No. 481985CF003550).

medical experts – detail his severe, congenital cavernous hemangioma, its symptoms, and the risks, unique to him alone, of adverse events and torturous, constitutionally intolerable suffering if he is executed using Missouri's current execution protocol,

Facts at the core of Mr. Bucklew's case – which have no relevance whatsoever to the claims in *Zink* – include the following:

- That Mr. Bucklew's head, neck, throat, and sinus cavities are all filled with unstable, blood-engorged tumors could easily rupture under stress or any spike in blood pressure;

- That Mr. Bucklew's airway is "severely compromised," meaning that it is largely obstructed by a cavernous hemangioma, leaving him at risk of coughing, choking and suffocating upon any stress to the hemangioma or any hemorrhage of blood or release of other secretions into the throat;

- That Mr. Bucklew's airway is "friable," meaning that it is weak and prone to tear or rupture; for this reason, standard equipment used to maintain an open airway would only cause further obstruction of the airway;

- That Mr. Bucklew suffers near-constant pain and hemorrhages on a daily basis even under non-stressful conditions; sometimes, he bleeds from his facial orifices, including his eyes;

- That Mr. Bucklew also suffers from severe vascular abnormalities as part of his congenital condition, making it likely that the lethal drug will not circulate as intended, thereby prolonging the execution;

- That any coughing or choking experienced by Mr. Bucklew will likely cause him to struggle for air, and that, paradoxically, any struggle to breathe will increase the degree of obstruction, making it harder for him to breathe, likely leading to an execution that is both prolonged and in which death is caused by suffocation.

- That Mr. Bucklew's condition is lifelong and treatable only through pain management, as surgery would be too risky.

(*See* Third Amended Complaint, Doc. 46 at ¶¶ 1-15, 74-102, 139-143, and attached affidavits, Exhs. 1-4)

These factual allegations concerning Mr. Bucklew have *no relevance whatsoever* to any of the *Zink* plaintiffs' claims. Conversely, facts relevant to proving or disproving the *Zink* claims – that Defendants have concealed the identities of manufacturers and suppliers of the lethal pentobarbital, that they are violating federal and Missouri statutes, or that the prescriptions Defendants use to obtain the pentobarbital are invalid and ineffective would not significantly aid any fact-finder in resolving the core

of Mr. Bucklew's claims. Further, Mr. Bucklew, while seeking more information about and adjustments to the protocol, argues that due process entitles him to information about the drug with which he will be executed because of the unique risks of drug interactions that he faces. Again, the issue of drug interactions concerns Missouri's protocol *as applied* to Mr. Bucklew.

Mr. Bucklew's present lawsuit bears no resemblance to the kind of repetitious, judicially wasteful or vexatious litigation that the doctrines of *res judicata*, estoppel, and claim or issue preclusion are designed to prevent. *Montana*, 440 U.S. at 153-154. To avoid injustice, the doctrine of estoppel, or *res judicata*, "must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged." *Comm'r of Internal Revenue v. Sunnen*, 333 U.S. 591, 599-600 (1948). Mr. Bucklew's present claim is not identical in all respects – or indeed even in *any* respect – to those in *Zink*, and is thus not precluded.

**IV. Bucklew's Eighth Amendment Claim is Not a Habeas Claim**

Defendants next argue, without basis, that Mr. Bucklew's claim is really a habeas claim. They cite no authority, and are apparently resting on the argument that Mr. Bucklew's Eighth Amendment claim, brought under 42 U.S.C. §1983, "is not really a method of execution claim." Defendants state, incorrectly, that Bucklew has claimed he "cannot be constitutionally executed by any form of lethal injection *or lethal gas*." (Motion to Dismiss, Doc. 47 at 8). At no point in his Third Amended Complaint does Bucklew allege he cannot be executed by lethal gas. In fact, he acknowledges that method as the statutorily authorized and available. *See* Third Amended Complaint at pages 4, 11-12, ¶¶ 21, 24. Further, in the present pleading, Mr. Bucklew *explicitly* alleges "lethal gas" as a feasible, alternative method, in conformity with *Glossip*'s pleading standard. *See infra*.

Because Mr. Bucklew has alleged an available alternative, Defendants' argument fails.

22

## V. The *Rooker-Feldman* Doctrine Does Not Apply

The Defendants' attempt to cast Mr. Bucklew's claims as a federal review of his state court claims is preposterous. Previous state court litigation concerned only requests for expert funding so that potential claims could be investigated.

The *Rooker–Feldman* doctrine precludes federal subject matter jurisdiction if the relief requested in the federal action would effectively reverse the state court decision or void its holding. *Snider v. City of Excelsior Springs, Mo.*, 154 F.3d 809, 811 (8th Cir. 1998)(*citing Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416, 44 S.Ct. 149, 68 L.Ed. 362 (1923). The *Rooker-Feldman* doctrine has not application here because there is no state court decision to be reversed or affected.

## VI. Bucklew Has Pled a Viable Eighth Amendment Claim

Defendants allege, incorrectly, that Bucklew has claimed "there is no way to ever execute [him] in light of his physical infirmities. They further allege, incorrectly, that Bucklew has failed to allege a feasible, alternative method of execution.

To the contrary, as noted above, Mr. Bucklew has alleged the "known…available alternative" of lethal gas. *See* Third Amended Complaint 4, 11-12, ¶¶ 21, 24; *see also infra*.

## VII. Bucklew's Eighth Amendment Claim of "Deliberate Indifference" and First Amendment Claim are not Barred by Issue Preclusion or by the Eighth Circuit Decision in *Zink*

Defendants next claim that Mr. Bucklew's claims under Count II and Count III of his Third Amended Complaint are barred by the doctrine of claim preclusion and by the Eighth Circuit's decision in *Zink v. Lombardi*, 783 F.3d 1089 (8th Cir. 2015)(*en banc*). Again, Defendants' arguments fail.

Mr. Bucklew's Eighth Amendment claim of "deliberate indifference," stated in Count II, is far different than the claim litigated in *Zink*. The *Zink* plaintiffs' "deliberate indifference" claim concerned the use of compounded and outdated drugs. (*See Zink v. Lombardi*, Case No. 12-4209, Order of May 2, 2014, at 11.

In contrast, Mr. Bucklew's Eighth Amendment claim focuses specifically on Mr. Bucklew's medical condition and the failure to obtain up-to-date imaging studies and otherwise provide appropriate

care in advance of and in preparation for an execution. In addition to the failure to obtain imaging studies, Defendants have also taken no steps to address the risks posed by Mr. Bucklew's severely obstructed airway.

There is no factual overlap whatsoever between Mr. Bucklew's Eighth Amendment "deliberate indifference" claim and the "deliberate indifference" claim raised in *Zink*. Therefore, the doctrine of claim preclusion does not apply, and the Eighth Circuit's decision in *Zink* does not control the determination of this claim.

With regard to Mr. Bucklew's First Amendment claim, again, there is little to no overlap between the claims the of *Zink* plaintiffs and the claims of Mr. Bucklew in Count III. The *Zink* plaintiffs complained of secrecy surrounding the execution team members. Mr. Bucklew did not address the execution team, but rather alleged that the secrecy surrounding the compounded drug posed a special risk to him as an individual with "vessels that are abnormally weak and prone to rupture" and that such secrecy prevented him from petitioning the government for redress of grievances. More significantly, Mr. Bucklew also asserted that his ability to properly allege an available, alternative method of execution has been hindered by the State of Missouri's failure to provide "essential information about the method presently being used or what methods may be regarded as "feasible" or "readily implemented" by the State. *See* Third Amended Complaint at ¶ 165.

Because there is little or no factual overlap between the *Zink* plaintiffs' claims under the First Amendment and Mr. Bucklew's claims, the doctrine of claim preclusion does not apply and the Eighth Circuit's decision in *Zink* does not control the determination of this claim.

Case 4:14-cv-08000-BP   Document 50   Filed 07/24/15   Page 24 of 25

**Conclusion**

Based on the arguments and authorities stated above, Mr. Bucklew respectfully requests that this Court deny Defendants' Motion to Dismiss (Doc. 47) in its entirety.

Respectfully Submitted,

MORGAN PILATE, LLC
/s/ Cheryl A. Pilate
Cheryl A. Pilate Mo. # 42266
Lindsay J. Runnels       #62075
926 Cherry Street
Kansas City, MO 64106
Telephone: 816-471-6694
Facsimile: 816-472-3516
cpilate@morganpilate.com
lrunnels@morganpilate.com

**Certificate of Service**

I, Cheryl A. Pilate, hereby certify that the above and foregoing pleading was served on all counsel of record via the ECF system on July 24, 2015.

/s/ Cheryl A. Pilate