Case No. 4:14-CV-8000-BP

_____

IN THE UNTIED STAES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

_____

RUSSELL BUCKLEW,

Plaintiff,

v.

GEORGE LOMBARDI et al.,

Defendants.

_____

RESPONSE TO DEFENDANT'S MOTION TO DISMISS
FOURTH AMENDED COMPLAINT AND SUGGESTIONS IN SUPPORT

_____

Cheryl A. Pilate
Lindsay J. Runnels
Morgan Pilate, LLC
926 Cherry Street
Kansas City, Missouri 64106
Phone: (816) 471-6694
Fax: (816) 472-3516

Attorneys for Mr. Bucklew

## TABLE OF CONTENTS

Table of Authorities ........................................................................................................... 3

Suggestions in Support of Motion ...................................................................................... 5

Introduction ......................................................................................................................... 5

I. Mr. Bucklew has "identified a known and available" Alternative Method of Execution ........................ 5

II. Mr. Bucklew's Claim is Not Barred by The Statute of Limitations ......................................... 14

III. Doctrines of Claim and Issue Preclusion Do Not Apply ...................................................... 25

IV. Mr. Bucklew's Eighth Amendment Claim of Deliberate Indifference to Mr. Bucklew's Medical Needs and His First Amendment Claim Are Not Barred By Issue Preclusion ..................................... 30

V. Conclusion ...................................................................................................................... 32

Certificate of Service ......................................................................................................... 33

## TABLE OF AUTHORITIES

Cases

*Anonymous v. Vella*, 2006 WL 1401680 (D. Neb. 2006).................................................................. 14, 24

*Baze v. Rees,* 553 U.S. 35 (2008)........................................................................................................ 5, 15, 26

*Bucklew v. Luebbers,* 01-8000-DW .................................................................................................... 21

*Bucklew v. Luebbers,* 14-2020 (8th Cir. 2014) .................................................................................. 21, 23

*Bucklew v. Lombardi,* 565 Fed. Appx. 562 (8th Cir. 2014) .............................................................. 22, 23

*Bucklew v. Lombardi,* 783 F.3d 1120 (8th Cir. 2015)........................................................ 17, 27, 30, 31

*Bucklew v. Robinson*, 09AC-CC0076 (Circuit Court of Cole County, 2009).................................. 21, 22

*Bucklew v. Robinson*, 72984 (W.D. of Mo. 2010) ............................................................................. 21

*Bucklew v. Robinson*, 90198 (Mo. 2009) ........................................................................................... 21

*Bucklew v. Robinson*, 90924 (Mo. 2010) ........................................................................................... 21, 22

*Bucklew v. Robinson*, 91556 (Mo. 2011) ........................................................................................... 21

*Bucklew v. Roper,* Case No. 03-3721 (WDMO) ............................................................................... 14

*Bucklew v. Roper*, 03-3721 (8th Cir. 2008) ....................................................................................... 21

*Bucklew v. Steele*, Case No. 01-8000-DW (W.D. Mo. 2014) ........................................................... 21, 23

*Buder v. Fiske,* 174 F.2d 260 (8th Cir. 1949)..................................................................................... 28

*Chakonas v. City of Chicago*, 42 F.3d 1132 (7th Cir. 1994)............................................................. 21

*Comm'r of Internal Revenue v. Sunnen*, 333 U.S. 591 (1948)......................................................... 30

*Dorsey et al., v. Pinnacle Automotive Company*, 278 F.3d 830, 838 (8th Cir. 2002)...................... 20

*Dring v. McDonnell Douglas Corp.*, 58 F.3d 1323 (8th Cir. 1995).................................................. 21

*Glossip v. Gross,* 135 S. Ct. 2726 (2015) ............................................................... 5, 9, 13, 26, 27

*Farmer v. Cook*, 782 F.2d 780 (8th Cir. 1986) .................................................................................. 16

*Green v. Missouri,* 2008 WL 4833020 (E.D. Mo. 2008) ................................................................... 14, 24

*Hill v. McDonough*, 547 U.S. 573 (2006) .......................................................................................... 27

*Johnson v. Lombardi,* 2:15-CV-4237-DGK (W.D. Mo. Oct. 27, 2015) ........................................... 11

*Johnson v. Lombardi,* 15-3420 (8th Cir. Oct. 30, 2015) ................................................................... 12

*Johnson v. Lombardi,* 577 U.S. ____ (Nov. 3, 2015) ........................................................................ 12

*Kammerer v. Wyeth et al.,* 2011 WL 5237754 (D. Neb. 2011) ........................................................ 24

3

*Kriegesmann v. Barry-Wehmiller* Co., 739F.2d 357 (8th Cir. 1994)............................................................21

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350 (1991) ........................................21

*Montana v. United States*, 440 U.S. 147 (1979) .......................................................................26, 29

*McNair v. Allen*, 515 F.3d 1168 (11th Cir. 2008) ...............................................................................17

*Rosemann v. Roto-Die Inc*. 276 F.3d 393 (8th Cir. 2002)...................................................................27

*Siebert v. Allen,* 506 F.3d 1047, 1050 (11th Cir. 2007) ....................................................................27

*Southern Pacific R. Co. v. United States,* 168 U.S. 1 (1897)..............................................................26

*State v. Bucklew, SC80052* (Mo. 2009) ..........................................................................................21

*Strong v. Stryker Corp.,* 2010 WL 4967876 (D. Minn. 2010) ........................................................24, 25

*Sulik v. Taney County of Missouri,* 393 F.3d 765 (8th Cir. 2005) .......................................................16

*Townsend v. E. Chem Waste Sys.*, 234 S.W.3d 452 (Mo. App. 2007)...................................................14

*Varner v. Peterson Farms*, 371 F.3d 1011 (8th Cir. 2004) ............................................................14, 25

*Wallace v. Kato*, 549 U.S 384 (2007) ............................................................................................16

*Wilson v. Garcia*, 471 U.S. 261 (1985)...........................................................................................16

*Woodbury v. Porter*, 158 F.2d 194 (8th Cir. 1946)...........................................................................28

*Worthington v. State,* 166 S.W.3d 566 (Mo. 2005)...........................................................................17

*Zink v. Lombardi*, Case No. 12-4209 ...................................................................................25, 26, 30

*Zink v. Lombardi,* Case No. 14-0223 ...............................................................................*in passim*

*Zipes v. TWA*, 455 U.S. 385 (1982) ...............................................................................................20

Statutes

Mo. Rev. Stat. § 516.120(4)..............................................................................................................16

Mo. Rev. Stat. § 546.720.1 ...............................................................................................................9

Mo. Rev. Stat. § 610.010 ..................................................................................................................8

Case 4:14-cv-08000-BP   Document 61   Filed 12/04/15   Page 4 of 33

| | | |
|---|---|---|
| RUSSELL BUCKLEW, | ) | |
| *Plaintiff,* | ) | |
| v. | ) | **Case No. 14-08000** |
| GEORGE A. LOMBARDI, | ) | |
| DAVID A. DORMIRE, | ) | |
| And | ) | |
| TERRY RUSSELL, | ) | |
| *Defendants.* | ) | |

## PLAINTIFF RUSSELL BUCKLEW'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS FOURTH AMENDED COMPLAINT

Plaintiff Russell Bucklew, by and through his counsel, hereby responds in opposition to Defendants' Motion to Dismiss Fourth Amended Complaint (Doc. 55). Defendants' motion should be denied.

### Introduction

Defendants' argument that Mr. Bucklew has failed to state a claim fails because Defendants wholly ignore the allegations and facts pled by Mr. Bucklew in his *Fourth Amended Complaint* (Doc. 53). Mr. Bucklew complied with the pleading standards set forth in *Glossip v. Gross*, 135 S. Ct. 2726 (2015) by clearly and unequivocally alleging "known and available" alternative methods of execution, that is lethal gas and, alternatively, the firing squad. *Id.*, 2739, *see also* Doc. 53 at 1-3, p. 2 n.1, ¶¶ 29-30, 139, 150.

### I. Mr. Bucklew has "identif[ied] a known and available" alternative method of execution

On June 29, 2015, the Supreme Court of the United States decided in *Glossip v. Gross,* 135 S. Ct. 2726, 2739 (2015), that the Eighth Amendment requires a prisoner to "identify a known and available alternative method of execution that entails a lesser risk of pain, a requirement of all Eighth Amendment method-of-execution claims." *Id.* at 2731, c*iting Baze v. Rees*, 553 U.S. 35, 61 (2008) (plurality opinion).

This Court, on September 21, 2015, ordered Mr. Bucklew to file a Fourth Amended Complaint, alleging a known and available method of execution. Doc. 53. On October 13, 2015, Mr. Bucklew filed his Fourth Amended complaint alleging that execution by lethal gas and firing squad were both known and available alternative methods of executing Mr. Bucklew that would significantly reduce the substantial risk

Case 4:14-cv-08000-BP   Document 61   Filed 12/04/15   Page 5 of 33

of severe pain. Doc. 53 at pp. 1-3, p. 2 n. 1, ¶¶ 29-30, 139, 150. Mr. Bucklew further alleged, in detail, how and why execution by lethal injection poses significantly greater risks of severe pain than execution by either alternative method. *See Id*. at pp. 1-3, ¶¶ 13, 16-17, 29, 61, 68-70, 77-79, 82-88, 90-91, 99-101, 102-103.

**A. Mr. Bucklew pled sufficient facts that execution by lethal gas or firing squad would significantly reduce the risk of severe pain.**

Contrary to Defendants' insistence that Mr. Bucklew made only "naked assertion[s]" that the offered alternative methods would significantly reduce the risk of severe pain, Mr. Bucklew set forth the following facts in his Fourth Amended Complaint, Doc. 53:

- "This alternative method [gas] is specifically authorized under Missouri law…and will significantly reduce the risk of severe pain by avoiding the circulation of the lethal agent through Mr. Bucklew's impaired and abnormal vascular system." *Id*. at 2.

- "The use of lethal gas, for instance, will likely reduce the great risk that Mr. Bucklew will choke and suffocate on his own blood; it is likely to significantly reduce the likelihood of a prolonged and excruciating execution." *Id*.

- Lethal gas is both "known" and "available" method, and that it is also "feasible," *Id*. at 3.

- A Missouri statute states that the DOC is "directed to provide a suitable and efficient room or place…and the necessary appliances for carrying into execution the death penalty…" *Id*., ¶ 30. A gas chamber already exists, if Defendants elect to use it. Mr. Bucklew even provided Defendants with a photograph of Missouri's gas chamber that could be used to conduct the execution. Doc. 53-6.

- Mr. Bucklew discussed methylene blue, which if used during lethal injection, increases the risk of adverse drug interactions and the potential for Mr. Bucklew to hemorrhage, risks not present if Mr. Bucklew is executed by lethal gas or firing squad. Doc. 53 at ¶¶ 17, 61-62, 70, 84, 86, 121, 124, 146.

6

- Mr. Bucklew detailed the risks posed by lethal injection to Mr. Bucklew's obstructed and friable airway, which would not be a concern if Mr. Bucklew were executed by lethal gas or firing squad. *Id.* at 2, ¶¶ 5, 12, 15, 16, 45, 53, 83, 86, 99, 101, 102, 103, 112, 113, 145, 156.

- Mr. Bucklew discussed the risk of a spike in blood pressure as a result of an adverse drug reaction that would not be present if Mr. Bucklew were executed by gas or firing squad. *Id.* at ¶¶ 15-17, 84, 86, 146.

- Mr. Bucklew detailed the unique risks that the lethal injection drug(s) will not circulate as intended because of his gross vascular malformations, risks that are eliminated through an execution by gas or firing squad. *Id.* at p. 2, ¶¶ 6, 13, 19, 65, 69, 87, 125, 145.

- Mr. Bucklew outlined the significant risk of a prolonged and excruciating execution as a result of the decreased effectiveness of the pentobarbital because of his impaired vascular system, risks that would not be present during an execution by gas or firing squad. *Id.* at ¶¶ 87-90.

- Mr. Bucklew detailed the severe risk of his blood-filled tumors hemorrhaging that would not be present if Mr. Bucklew were executed by gas or firing squad. *Id.* at ¶¶ 15-16, 19, 26, 69, 74, 82, 85, 106, 145-147.

- Mr. Bucklew pled that his airway tumors are dynamic in nature, that is they worsen "when he is recumbent, even for only a few moments." This risk would be eliminated by executing a seated or standing Mr. Bucklew in Missouri's gas chamber or by firing squad. *Id.* at p. 2, ¶¶ 45, 102, 128.

Mr. Bucklew did not specify a particular gas, namely because he thought Defendants would want to choose for themselves among the many readily available lethal or inert gases.

Inert gas asphyxiation results from breathing a physiologically inert gas in the absence of oxygen, or a low amount of oxygen, rather than atmospheric air (which is largely composed of oxygen and nitrogen). Examples of physiologically inert gases, which counsel understands can cause relatively painless death, are argon, helium, nitrogen, and methane. The term physiologically inert is used to indicate a gas which has no toxic or anesthetic properties and does not act upon the heart or hemoglobin. Instead, the gas acts as a

7

simple diluent to reduce oxygen concentration to fatally low levels, thereby eventually depriving all cells in the body of oxygen. Defendants state that "Bucklew does not address the fact that a lethal agent, even if it enters the lungs as a gas, makes its way through the bloodstream before causing death. Therefore, the same drawbacks Bucklew assigns to all blood-borne chemicals would necessarily also apply to chemicals introduced through the lungs." Doc. 55 at 3. This statement is false. Death by hypoxia is not caused by any lethal chemical entering into the bloodstream, rather death results from depriving the brain of oxygen. The vascular system is not affected by gas asphyxiation.

Inert gas asphyxia has been advocated by proponents of euthanasia, using a gas-retaining plastic hood device colloquially referred to as a "suicide bag." Nitrogen asphyxiation has been suggested by a number of lawmakers and other advocates as an allegedly more humane way to carry out capital punishment. No functioning gas chamber would be required. In April 2015, the Oklahoma Governor Mary Fallin signed a bill authorizing nitrogen asphyxiation as a secondary form of execution. According to Oklahoma's study, released in March 2015, execution by nitrogen gas is inexpensive, readily available and allegedly painless. *Nitrogen Induced Hypoxia as a Form of Capital Punishment,* available at: https://localtvkfor.files.wordpress.com/2015/03/nitrogen-hypoxia.pdf. The Louisiana Department of Public Safety & Corrections released a study on February 18, 2015, recommending that hypoxia by inhalation of nitrogen gas be offered in Louisiana as an alternative method of administering capital punishment. *Report on Study of Methods of Execution & Recommendations for Procedures*, available at: https://s3.amazonaws.com/s3.documentcloud.org/documents/1678909/hr-142-report-submitted-by-ldoc.pdf. Counsel easily found nitrogen, helium, argon and other inert gases available for purchase on the internet from a wide variety of suppliers, including Wal-Mart. Ex. 1, *Availability of Various Gases*. It is factually inaccurate for Defendants to claim execution by gas is not available as a method of execution in Missouri. Further, if an inert gas is chosen by the DOC, whether or not Missouri's gas chamber is operational will be of little concern. Inert gases are not toxic, and an execution by hypoxia need not occur in a sealed chamber. Lethal gases, such as cyanide, are also readily available on the internet. *Id.* Because

8

Mr. Bucklew is not under warrant, Defendants have plenty of time to make any necessary repairs to Missouri's gas chamber if they so elect.

Because this method is specifically authorized and contemplated by statute, Mr. Bucklew must presume that it is, indeed, feasible and that the State of Missouri has a protocol for lethal gas and the ability to carry out an execution by lethal gas. Defendants' counsel, Attorney General Koster, seemingly believes execution by gas is feasible—what other reason would he have to tell the press that execution by gas is an "option we have to enforce Missouri law" if death by lethal injection is not possible. "Missouri Could Resort to Gas Chamber Attorney General Warns." *St. Louis Post Dispatch*, July 3, 2013, available at: http://www.stltoday.com/news/local/crime-and-courts/missouri-could-resort-to-gas-chamber-attorney-general-warns/article_7470560c-2ae3-5b38-91f5-0c8d77a91c86.html.

It is clear that Missouri legislators have provided for a "known and available alternative" in Mo. Rev. Stat. §546.720.1, and that Mr. Bucklew's allegation suggesting lethal gas as an alternative satisfies pleading requirements for an Eighth Amendment claim. *See Glossip*, 135 S. Ct. at 2739.

**B.  Alternative Method #2: Execution by Firing Squad is "Known" and "Available"**

Mr. Bucklew alleged that execution by firing squad is known and available, should Missouri choose to adopt it as an alternative method. Doc. 53 at p. 2, n.1. Defendants complain that Mr. Bucklew was not "explicit" enough in his Fourth Amended Complaint. Mr. Bucklew disagrees. Mr. Bucklew pled that execution by firing squad was "known" and "available" as required by *Glossip*. Mr. Bucklew spent considerable time detailing the many intolerable risks of hemorrhaging, bleeding, choking during an execution by lethal injection because of (1) adverse drug reactions; (2) a grossly abnormal circulatory system; (3) Mr. Bucklew's current medication regimen which includes a host of anti-depressants, anti-psychotics and pain medication that substantially increases the risk of adverse drug reactions and Serotonin Syndrome; (4) the severe risk of choking and hemorrhaging as a result of lying flat on a gurney during an execution by lethal injection; and (5) the severe risk of a spike in blood pressure, significantly increasing

9

the risk of hemorrhaging, as a result of the use of methylene blue or indigo carmine. None of these detailed, itemized risks would be present if a seated or standing Mr. Bucklew is executed by lethal or inert gas or firing squad. Mr. Bucklew's Fourth Amended Complaint goes above and beyond the pleading requirements, and clearly details why execution by lethal injection presents substantially more grave risks than execution by gas or firing squad.

Recognizing that Missouri law only presently authorizes execution by lethal injection and lethal gas, Mr. Bucklew specifically requested research and communications with Missouri legislators regarding lethal gas and "any other contemplated or feasible method of execution." *See* Ex. 2, Sunshine Request and Response of June 3, 2015.

On June 3, 2015, counsel for Mr. Bucklew attempted to obtain public information about Missouri's capacity to implement alternative methods of execution, specifically requesting:

> 1. Documents reflecting communications of any type or kind between any employee, expert or consultant of the DOC with any member of the (a) Missouri Legislature[1] or the (b) Missouri Executive[2] branch or (c) any lobbyist or consultant regarding execution by any method, including but not limited to lethal injection, lethal gas, firing squad, hanging, electrocution, or any other contemplated or feasible method. This request encompasses any communications and discussions regarding the current method of lethal injection, or the feasibility of any alternative method(s) of execution.

Defendants responded that the requested information was secret:

> Response: This request seeks records which include closed records pursuant to sections 546.720 and 610.021(1) RSMo. As I understand your request, you are seeking communications regarding the current method of execution or discussions regarding alternative methods of conducting executions. The Department's only open record regarding this request is the open portion of the execution protocol. In case I have misunderstood your request, the Department does also have copies of press

Mr. Bucklew's counsel, also on June 3, 2015, requested the following information:

> 2. Documents pertaining to internal or external research, internal or external communications, internal or external discussions by and/or between any employee of the DOC into execution by any method, including but not limited to execution by lethal injection, lethal gas, firing squad, hanging, electrocution, or any other contemplated or feasible method of execution.

Again, Defendants claimed this information was secret:

> Response: This requests seeks closed records pursuant to sections 546.720 and 610.021(1) RSMo.

10

*Id.* Despite Defendants' persistent violation of Missouri open records laws, Mr. Bucklew continued to pursue all available means of investigating and proving his claims.

Counsel doubts that Defendants would have much trouble pushing through legislation authorizing the use of a firing squad to execute Mr. Bucklew considering the political landscape in the Missouri General Assembly. Further, Mr. Bucklew's current litigation is not proceeding while he is under warrant, and Defendants have time to work with the General Assembly to authorize death by firing squad as an alternative method of execution.

Regardless of Defendants' assertions otherwise, execution by firing squad would require very little of Defendants, and certainly is not any more cumbersome than the lengths they have gone to obtain execution drugs in the current climate of waning public support and international pressure. Execution by firing squad is certainly readily implemented, all that is needed are a few sharp-shooters and firearms. If Mr. Bucklew is executed by firing squad in a standing or seated position, a great many of the grave risks posed to him from hemorrhage or rupture of his hemangiomas are nonexistent. Death by firing squad would likely be rapid, thus further eliminating the risk of a prolonged execution where Mr. Bucklew struggles to breath and chokes because of his severely obstructed airway. Finally, execution by firing squad does not require Defendants to construct any structure, or utilize a reluctant supply chain. Firearms and bullets seem to be in economical and plentiful supply, and counsel doubts that the many potential firearm suppliers and manufacturers would have much, if any, objection to the use of their product to execute Mr. Bucklew. It is difficult to ascertain what objection that Defendants have to a firing squad as an alternative method of execution.

**The Orders of the district court and Eighth Circuit in *Johnson v. Lombardi,* 2:15-CV-4237-DGK (Doc. 12, W.D. Mo. October 27, 201) and *Johnson v. Lombardi,* Slip Op. 15-3420 (8th Cir. October 30, 2015) are moot.**

Defendants spent considerable time in the Motion to Dismiss Fourth Amended Complaint (Doc. 55) arguing that the now-moot order in *Johnson v. Lombardi*, 2:15-CV-4237-DGK, (Doc. 12 at 4-6, W.D. Mo. October 27, 2015) supports their assertion that Mr. Bucklew failed to plead sufficient facts showing

11

that the alternative methods offered by Mr. Bucklew were known and available. Doc. 55 at 3-4. The Eighth

Circuit affirmed the district court's dismissal of Mr. Johnson's complaint, finding in part that Mr. Johnson

failed to adequately plead that lethal gas was known and available. *Johnson v. Lombardi,* Slip. Op. 15-

3420 (8th Cir. October 30, 2015). The United States Supreme Court disagreed, and stayed Johnson's

execution for further proceedings:

> The application for stay of execution of sentence of death presented to Justice Alito and by him referred to the Court is treated as an application for stay pending appeal in the Eighth Circuit. The application is granted pending the disposition of petitioner's appeal. Petitioner's complaint alleges that Missouri's method of execution violates the Eighth Amendment as applied to a person with his particular medical condition. A supporting affidavit by a medical expert states that "[a]s a result of Mr. Johnson's brain tumor, brain defect, and brain scar, a substantial risk of serious harm will occur during his execution as result of a violent seizure that may be induced by [the] Pentobarbital injection." Because petitioner's complaint was dismissed for failure to state a claim, the State was not required to submit any evidence refuting this allegation. In the currently pending appeal, the Court of Appeals will be required to decide whether petitioner's complaint was properly dismissed for failure to state a claim or whether the case should have been permitted to progress to the summary judgment stage.

*Earnest Johnson v. George Lombardi*, Order in a Pending Case, 577 U.S. ___ (November 3, 2015).

Mr. Bucklew has more than met his burden of identifying known and available alternative methods

of execution that will substantially reduce the likelihood of severe pain during an execution. To further

illustrate a comparison among the various methods of execution, Mr. Bucklew offers the following chart:

| | Lethal Injection-Compounded Pentobarbital | Lethal Injection-Manufactured Pentobarbital | Lethal Gas | Firing Squad |
|---|---|---|---|---|
| Utilizes Mr. Bucklew's compromised circulatory system to deliver the lethal drug(s) through the body. Doc. 55 at ¶¶ 6, 13, 19, 65, 69, 87, 125, 145. | X | X | | |
| Risk of severe pain as result of adverse drug reaction. *Id.* at 16, 17, 83, 89, 91, 117. | X | X | | |
| Risk of choking and gasping for air as a result of his cavernous hemangioma. *Id.* at 5, 15-17, 19, 69, 86, 101, 107, 128, 145, 147. | X | X | | |
| Risk of severe pain and or hemorrhage as result of recumbent position. Id. at p. 2, ¶¶ 5, 15, 45, 102, 128. | X | X | | |

12

| | Lethal Injection-Compounded Pentobarbital | Lethal Injection-Manufactured Pentobarbital | Lethal Gas | Firing Squad |
|---|---|---|---|---|
| Risk of hemorrhaging because of drug interaction. *Id.* at ¶¶ 16, 19, 146. | X | X | | |
| Risk of hemorrhaging because of stress. *Id.* at ¶¶ 97, 103, 128. | X | X | X | X |
| Risk of prolonged execution because of impaired circulation, and low resistance pathways created by massive hemangiomas. *Id.* at ¶¶ 87-90. | X | X | | |
| Spike in blood pressure (resulting in hemorrhage) as result of methylene blue. *Id.* at ¶¶ 17, 61, 62, 70, 84, 85, 86, 121, 124, 146. | X | X | | |
| Spike in blood pressure (resulting in hemorrhage) as result of use of Indigo Carmine. *Id.* at ¶¶ 70, 124. | X | X | | |
| Risk of severe pain and prolonged execution as result of Serotonin Syndrome drug interaction. *Id.* at ¶¶ 120-121. | X | X | | |
| Risk of severe pain and prolonged execution because drugs fail to circulate as intended through Mr. Bucklew's grossly impaired vascular system. *Id.* at ¶¶ 6, 13, 19, 65, 69, 87, 125, 145. | X | X | | |
| Risk of severe pain and a prolonged execution because the effectiveness of pentobarbital is diminished because of Mr. Bucklew's impaired vascular system. *Id.* at ¶¶ 87-90. | X | X | | |

Mr. Bucklew has stated a claim upon which relief can be granted, and he has made the required showing of offering a known and available alternative method of execution that will substantially decrease the risk of a constitutionally intolerable execution. Further, Mr. Bucklew makes crystal clear that he is complying with *Glossip*'s standard throughout his Fourth Amended Complaint. *See* Doc. 53 at pp. 1-3, and ¶¶ 29-30, 139, 150.

13

## II. Mr. Bucklew's Claim is Not Barred by the Statute of Limitations

### _Defendants Have Failed To Meet Their Burden_

The statute of limitations is an affirmative defense and must be pled through facts. The defense may be claimed under a Rule 12(b)(6) motion "when it is clear from the face of the complaint that the limitations period has run." _Varner v. Peterson Farms_, 371 F.3d 1011, 1016 (8th Cir. 2004). Under Missouri law "[t]he bar of the running of the applicable statute of limitations is an affirmative defense, requiring the party asserting it not only to plead it,…but also to prove it, as a matter of law." _Townsend v. E. Chem. Waste Sys_., 234 S.W.3d 452, 462 (Mo. App. 2007). If there is any issue of fact relating to the statute of limitations, then the issue must be decided by the finder of fact. _Green v. Missouri_, 2008 WL 4833020, 5 (E.D. Mo. 2008). When there is dispute about when a statute has run, or whether the statute was tolled, a question of material fact exists and a trial is required on the statute of limitations question. _Anonymous v. Vella_, 2006 WL 1401680, 8 (D. of Neb. 2006).

In Defendants' Motion to Dismiss Third Amended Complaint (Doc. 47), Defendants argued that Mr. Bucklew's claim accrued in 1991 or 2003. _Id._ at 4. In 1991, Mr. Bucklew was living and working in Troy, Missouri, and it would not be for another five years, in 1996, when Mr. Bucklew would be charged with the crime underlying his conviction. Now Defendants argue Mr. Bucklew's claim accrued in 2001 or 2003 or 2008 and in support of this allegation Defendants attached an exhibit that refers a 2008 federal court action (which they do not attach) and which they claim indicates Mr. Bucklew was aware of his claims at that time. Doc. 55 at 6-7.

The court action was an _ex parte_ request for expert funds to the Eighth Circuit so that Mr. Bucklew and counsel could "determine whether petitioner's execution by lethal injection constitutes cruel and unusual punishment…[and] seeks the appointment of an expert to examine the severity of such complications arising from his cavernous hemangioma." Ex. 4, _Ex Parte and Sealed Motion to Appoint Medical Expert to Evaluate Whether Petitioner's Execution by Lethal Injection Constitutes Cruel and Unusual Punishment_, _Bucklew v. Roper_, Case No. 03-3721-WMKC. Counsel, at that time, was seeking an expert to determine "whether" Mr. Bucklew had a viable Eighth Amendment Claim. That request for funds

14

was denied, as were requests before and requests after that date.   That 2008 request for funding did not claim, nor did any other funding request, that Mr. Bucklew's airway was so severely obstructed that he risked choking or suffocating or that his airway was friable.

In Defendants' Motion to Dismiss Fourth Amended Complaint, they attach several of Mr. Bucklew's prior pleadings, none of which state what Defendants claim.  The Petition for Writ of Mandamus (Doc. 55-1) actually states, on the very first page, that Mr. Bucklew is seeking "funding so that counsel can obtain expert services to assess Mr. Bucklew's present medical condition _to determine whether_ execution by the state's three-chemical lethal injection protocol would be cruel and unusual punishment in light of _Baze v. Rees_, 128 S. Ct. 1250 (2008)."   Doc. 55-1 at 9 (emphasis added). Defendants next cite Mr. Bucklew's Suggestions in Support of his Writ of Mandamus claiming that in this filing Mr. Bucklew concludes that his execution would violate the Eighth Amendment when what the pleading really says is that Mr. Bucklew requests that the writ issue so that he can have access to the expert funds necessary to determine whether he has a viable claim:

- "In order to establish the existence of a foreseeable likelihood that his execution will violate the prohibition against cruel and unusual punishment, Mr. Bucklew needs the assistance of a medical expert." Doc. 55-2, pp. 1-2.

- Counsel has consulted with "an expert who would be willing to examine Mr. Bucklew and conduct a detailed medical literature review to determine _whether_ lethal injection pursuant to Missouri's execution protocol would cause a substantial risk of pain to Mr. Bucklew."  _Id._, p. 8 (emphasis added).

- Requesting an expert "to evaluate if provided expert assistance necessary to developing a factual record." _Id._  p. 11.

Defendants cite to a grievance filed by Mr. Bucklew in April of 2008, and fail to inform the Court what that grievance was actually about—that Mr. Bucklew feared he would be insufficiently anesthetized by the first drug in the then three-drug protocol.  The filed grievance says nothing about

15

Mr. Bucklew's risks of hemorrhage, suffocating or choking during an execution by lethal injection. Doc. 55-1 at pp. 75-76.

In 2003, 2008, and 2009, Mr. Bucklew certainly knew he suffered from cavernous hemangioma because his serious medical condition has been present from birth. Mr. Bucklew, however, did not know, as he does now, that the blood-filled tumors in his face, head, throat and nose are extremely unstable and that his airway is friable, nor did he know that stress and some drugs now used by Missouri can cause a spike in his blood pressure, making the rupture of his tumors very likely. Mr. Bucklew also was not aware of the great likelihood of coughing, choking and suffocating to death during an execution by lethal injection. This information, necessarily, was obtained from a medical expert who reviewed Mr. Bucklew's medical records and examined him in person in 2014.

### *The Applicable Limitation Period is Five Years*

Missouri's five-year statute of limitations for personal injury actions, Mo. Rev. Stat. 516.120(4), applies to Mr. Bucklew's claims, brought under 42 U.S.C. § 1983. *See Wilson v. Garcia*, 471 U.S. 261, 276 (§ 1983 actions should be characterized as personal injury claims for purpose of applying the correct statute of limitations); *Sulik v. Taney County of Missouri*, 393 F.3d 765, 767 (8th Cir. 2005); *Farmer v. Cook*, 782 F.2d 780, 780 (8th Cir. 1986) (*per curiam*) (§ 1983 claims brought in Missouri subject to 5 year statute of limitations). Defendants "upon reflection [] agree that a five-year statute of limitations as opposed to a one-year statute of limitations" applies. Doc. 55, p. 2.

Mr. Bucklew's claims are not time barred because his claims did not accrue until May of 2014, as discussed below.

### *Mr. Bucklew's Claims Accrued in 2014*

Although the § 1983 statute of limitations is to be determined by examining state limitations for personal injury actions, the "accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). A claim accrues "when the [prisoner] has a complete and present cause of action that is when the [prisoner] can file suit and obtain relief." *Id.*

16

Some courts have held that the limitations period on method-of-execution claims accrues shortly after conviction, and resets if the state makes a substantial change to its execution procedure. *See e.g. McNair v. Allen*, 515 F.3d 1168 (11th Cir. 2008). *McNair* is not controlling authority, nor is it applicable in this case. Moreover, the State of Missouri has rejected this approach: "As it is unknown what method, if any, of lethal injection may be utilized by the State of Missouri at such future time, if any, as Mr. Worthington's right to seek relief in state and federal courts is concluded **and his execution date and method are set**, it is premature for this Court to consider whether a particular method of lethal injection violates the Eighth Amendment because it causes lingering, conscious infliction of unnecessary pain." *Worthington v. State*, 166 S.W.3d 566, 583 n.3 (Mo. 2005) (emphasis added). Moreover, prior to 2013, Missouri employed a three-drug protocol, (of sodium thiopental, pancuronium bromide and potassium chloride) that gave rise to entirely different risks, notably that the first drug would not bring about sufficient anesthesia, thus creating a grave risk of pain from the administration of the second and third drugs.

On March 6, 2015, the Eighth Circuit Court of Appeals reversed this Court's Order dismissing Mr. Bucklew's complaint and remanded this case for further proceedings. In a concurring opinion, those judges made clear their position that Mr. Bucklew has timely filed:

> Bucklew has put forth substantial evidence to show the claim was brought in a timely manner. This evidence includes: Missouri has changed its protocol many times since imposing a sentence of death on Bucklew; Bucklew's condition has become worse over time; and, because of Missouri's opposition, Bucklew has struggled for years to obtain sufficient scans to fully understand the extent of his health condition.

*Bucklew v. Lombardi,* 783 F.3d 1120, 1130 (8th Cir. 2015).

Unquestionably, counsel have known since the day that they began representing Mr. Bucklew that he is afflicted by a very serious congenital condition. One cannot look at Mr. Bucklew without noticing the malformation of his face due to the blood-filled tumors occupying his mouth and nose. Mr. Bucklew was born with the condition and it has worsened dramatically and progressively throughout his life. However, counsel are trained lawyers, not trained medical doctors. Counsel knew they needed an expert,

17

and Mr. Bucklew, an indigent person, has been denied access to an expert at every turn. Counsel believed that Mr. Bucklew's medical condition could provide a basis for a legal challenge to his execution, but the facts, knowledge, understanding of his vulnerable veins, his compromised and blocked airway, and the incredibly delicate nature of his hemangiomas are critical facts that they did not know, and could not know, without medical imaging, access to Mr. Bucklew for an examination, and an expert to evaluate Mr. Bucklew's medical condition. Mr. Bucklew's claim accrued in May of 2014, when Dr. Zivot was able to examine Mr. Bucklew's medical records and examine him in person. Prior to that date, counsel had no means to conduct the required good faith investigation in support of any potential claims.

In May of 2014, Dr. Joel Zivot examined Mr. Bucklew and as a result of that examination, counsel learned for the first time that:

- Mr. Bucklew's airway is **_friable_**, meaning that it is weak and could tear or rupture. If it is touched, it bleeds. The use of any tube or other equipment typically used to maintain an open airway will only create more problems by causing instant bleeding.
- Mr. Bucklew's airway has grown progressively more obstructed and could likely cause him to suffocate during an execution.
- The risks of suffocation to Mr. Bucklew are greater when he is lying flat, because his airway is much more obstructed in that position. Mr. Bucklew has trouble breathing even when recumbent for a few moments. When Mr. Bucklew is lying completely recumbent, he panics because he cannot breathe.
- Any increase in Mr. Bucklew's blood pressure—such as from stress, or the injection of certain drugs, such as methylene blue or indigo carmine, among others—will only aggravate his vascular tumors and cause an even greater threat to his airway. If any secretions or blood enter his airway, or his breathing becomes labored, from any cause, his airway will become even more constricted, resulting in coughing, choking and suffocation.

Doc. 53-1, Doc. 53-4, Doc. 53-3, Zivot Declarations, attached to Fourth Amended Complaint.

At present, the blood-engorged tumors in Mr. Bucklew's throat continue to grow and have fully encased his uvula, causing regular choking and labored breathing. In the past several months, Mr. Bucklew has been frequently awakened at night by his inability to breathe, requiring him to quickly change his position and take in some fluid to regain air flow.

It is only within approximately the past year that Mr. Bucklew's airway has grown so obstructed that his ability to breathe has become grossly compromised. It is also within the past year that the airway has so degraded that it is considered "friable," and therefore not amenable to being "managed" during an

execution with the equipment typically used to maintain an open airway. It is also within the past year that Mr. Bucklew's long-diagnosed anxiety disorder has grown worse, exacerbated in part by coming within hours of execution last year. A prison physician recently diagnosed Bucklew with "stress-induced psychotic reaction," and he is presently on an array of psychotropic drugs aimed at reducing his anxiety and delusional thoughts.

Mr. Bucklew's condition has progressively worsened over time, and it was impossible for Mr. Bucklew or his counsel to ascertain the state of his medical condition without access to expert services. Furthermore, Mr. Bucklew remains without funding to acquire necessary medical imaging, and the DOC has failed in its obligation to conduct any recent imaging of Mr. Bucklew. With regard to the accrual of the statute of limitations, it is the _present, grave degree of airway obstruction_ along with the _recently discovered friability of Mr. Bucklew's airway_, the _inability to use standard equipment to maintain an open airway_ and _the risk of spike in blood pressure (making hemorrhage of the blood filled tumors likely) because of adverse medication reactions_ that pose the greatest threat of suffocation and which gives rise to Mr. Bucklew's present Eighth Amendment claim. That claim did not accrue until, at the earliest, May of 2014 when the significant degree of obstruction and friability of Mr. Bucklew's airway and medication interaction between Mr. Bucklew's current medication and the DOC's current (yet ever changing) execution protocol were discovered by Dr. Zivot.

Moreover, the fact that Mr. Bucklew's condition is _progressive_ underscores the necessity of relying on Dr. Zivot's May 2014 examination and discovery of the severe obstruction of the airway and its friability – and the resultant risk of choking and suffocation -- as the time when the claim accrued. Prior to May 2014, Mr. Bucklew had never been examined by any medical professional for the purpose of identifying any risks involved with conducting lethal injection on him, and no one had ever noted that the unstable tumor obstructing his airway and his airway's friability created a grave risk of choking and suffocation. Ex. 3, ¶16.

As Dr. Zivot states in a supplemental declaration dated December 4, 2015, Mr. Bucklew's vascular tumors have grown continuously, and assessing how much or at what rate the tumors have progressed over a particular time period would require a comparison of current medical imaging – which does not exist – with past imaging studies, which are few and far between. *See* Exh. 3 at ¶¶ 16-21. Consequently, any medical expert's ability to opine about the degree and extent of tumor progression at a particular point in time is severely limited, if not totally undermined, by the DOC's failure to obtain regular medical imaging.

The progressive nature of Mr. Bucklew's condition means that the current risks posed by lethal injection may not have existed to the same degree in prior years. *Id.* at ¶¶16-21. In the event this Court rejects May 2014 as the time when Mr. Bucklew's claim accrued (the date Dr. Zivot's exam was May 12, 2014), then a factual issue necessarily exists as to the point in time when Mr. Bucklew's airway was sufficiently obstructed and sufficiently friable that the current risks identified by Dr. Zivot first existed. Since no medical provider prior to Dr. Zivot ever documented those risks, the factual dispute would appear to be complex and necessary to explore through further investigation and discovery. At a minimum, it would require the use of extensive expert evidence and testimony under oath.

### *Defendants' Conduct Requires Equitable Tolling of the Statute of Limitations*

Alternatively, if this Court determines that the statute of limitations has run, and that Mr. Bucklew is imputed with medical knowledge that he had no way of obtaining despite perpetually diligent efforts, then Mr. Bucklew is entitled to equitable tolling. A statute of limitations is a requirement that is subject to waiver, estoppel and equitable tolling. *Zipes v. TWA*, 455 U.S. 385, 393 (1982).

The doctrine of equitable tolling is applied "when plaintiff, despite all due diligence, is unable to obtain vital information bearing on the existence of his claim." *Dorsey et al. v. Pinnacle Automation*

*Company*, 278 F.3d 830, 838 (8ᵗʰ Cir. 2002) (*quoting Chakonas v. City of Chicago*, 42 F.3d 1132, 1135 (7ᵗʰ Cir. 1994)).  When a plaintiff remains ignorant of his claim "without any fault or want of diligence or care on his part" the statute does not begin to run until the facts upon which the claim is based are discovered. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991).

The doctrine of equitable estoppel "comes into play when a defendant takes active steps to prevent the plaintiff from suing on time."  *Dring v. McDonnell Douglas Corp.*, 58 F.3d 1323, 1329 (8ᵗʰ Cir. 1995) (quoting *Chakonas*, 42 F.3d at 1136). The equitable estoppel inquiry focuses on the defendant's conduct. A statute of limitations period will be modified on the basis of equitable estoppel if the "failure to file in a timely fashion is the consequence of either a deliberate design" by the defendant or of acts that the defendant "should have understood" would cause the plaintiff to delay in filing his case.  *Kriegesmann v. Barry-Wehmiller Co.*, 739 F.2d 357, 358-59 (8ᵗʰ Cir. 1984).

Both the doctrine of equitable tolling and equitable estoppel are implicated in this case.  Since 2008, Mr. Bucklew has attempted to obtain funding to investigate the degeneration and worsening of his medical condition a total of <u>ten[1] times in both state and federal court</u>.  When Mr. Bucklew's counsel litigated their request in Missouri state courts, the State through the Attorney General's Office, actively opposed Mr. Bucklew's requests for medical expert services.  Defendants misstate the extensive record that establishes that Mr. Bucklew's counsel have repeatedly attempted to obtain experts and funding to litigate Mr. Bucklew's claims.  Defendants continue to fail to inform the Court that they have actively opposed Mr. Bucklew's motions for funding in Missouri state courts.  The Attorney General's Office has repeatedly opposed Mr. Bucklew's efforts to obtain critical funding for medical consultation and expert services— efforts a panel of the Eighth Circuit Court of Appeals described as the "state's long-standing resistance to

---

[1] *Bucklew v. Roper*, Case No. 03-3721 (8ᵗʰ Cir. 2008); *Bucklew v. Robinson*, Case No. 09AC-CC0076, Circuit Court of Cole County (December 2009); *Bucklew v. Robinson*, Case No. 72984, (W. Dist. Mo. 2010); *Bucklew v. Robinson,* Case No. 90198, (Mo. 2009); *Bucklew v. Robinso*n, Case No. 90924 (Mo. 2010); *Bucklew v. Robinson*, Case No. 91556 (Mo. 2011); *State v. Bucklew*, SC-80052 (Mo. 2009); *Bucklew v. Luebber*s, Case No. 01-8000-DW (W. Dist. Mo. 2011); *Bucklew v. Steele*, Case No. 01-8000-DW (W. Dist. Of Mo. 2014); *Bucklew v. Luebbers*, Case No. 14-2020 (8ᵗʰ Cir. 2014).

21

medical review has delayed the development of Bucklew's position." *Bucklew v. Lombardi*, 565 Fed. Appx. 562 (8th Cir. May 20, 2014).

Now that Defendants have also utterly failed in their obligation to provide appropriate medical care, including diagnostic care, they claim---disingenuously---that it is Mr. Bucklew's counsel who should have obtained these facts and raised these issues, without money, without an expert and without recent imaging studies of their medically fragile client. Defendants only acknowledge that Mr. Bucklew has "serious medical issues." Doc. 8 at 1.

The Defendants and their counsel actively opposed Mr. Bucklew's requests for expert funding. In truth, Attorney General Koster and Assistant Attorney Generals signed those pleadings opposing Mr. Bucklew's requests for funding, just as they have signed the pleadings in this case. Defense counsel represents the State of Missouri, and opposed Mr. Bucklew's funding requests brought in mandamus actions:

> [Bucklew] asserts in the present case that he needs an expert to demonstrate that he has a medical condition that would make lethal injection painful, therefore violating the Eighth Amendment's prohibition on cruel and unusual punishment. However, [Bucklew] has not disclosed what, exactly, his proposed expert would testify to, or in what forum his testimony would be used…[Respondent] presum[es] [Mr. Bucklew] intends this expert to be used in a civil rights case brought under 42 U.S.C. § 1983, the most likely forum to prosecute the claims he raises in his petition…

Ex. 5, *Bucklew v. Robinson,* Circuit Court of Cole County, Case No. 09AC-CC0076, Suggestions in Opposition, Feb. 19, 2010. Again, on June 24, 2010, the Attorney General filed similar suggestions in opposition to Mr. Bucklew's plea for funding and experts to investigate and litigate his claims. *State ex rel. Bucklew v. Robinson,* No. SC90924 (Mo. 2010).

In May 2014, Defendants attempted to make the same argument rather than answer Mr. Bucklew's Complaint filed in this Court on May 9, 2014. Doc. 1. A panel of the Eighth Circuit disagreed when it issued a stay:

> [T]he absence of more recent medical testing or examination while in the state's custody, (coupled with the state's resistance to Bucklew's attempts to secure the same) explain any delay and refute the general characterization of Bucklew's efforts in this

> case as untimely or tardy. Simply put, [Mr. Bucklew] has consistently sought
> information concerning not only the method of execution, but testing to assess the
> current condition of his hemangiomas and the likely effect of an execution protocol on
> his unique physiology. We therefore reject the state's arguments and the district
> court's suggestion that the propriety of a stay in this case is skewed against Bucklew
> due to concerns of timeliness. Rather, a stay is required precisely because the state
> thwarted Bucklew's efforts to obtain the medical information necessary to support his
> claim."

*Bucklew v. Lombardi*, 565 Fed. Appx. 562, 15, n. 5 (May 20, 2014).

Mr. Bucklew's claim did not accrue until Dr. Zivot examined Mr. Bucklew on May 12, 2014 and informed counsel that his airway was *severely compromised and friable* and that the friability and compromised passage made the possibility that Mr. Bucklew would experience severe pain, suffocation, hemorrhage and choking very likely.

In addition, the timing of Mr. Bucklew's filing was largely determined by factors completely outside of his control, as he had been repeatedly denied funding by state and federal courts for expert services (10 times between 2006 and 2014), and it was only under the press of an execution date that his counsel were able to secure the services of an expert, Dr. Joel Zivot, who agreed to review the case based only on the tenuous hope of future payment.[2] Defendants make light of this critical fact, suggesting that Mr. Bucklew should have been able to persuade experts to review records, examine him and incur unreimbursed travel expenses with no execution warrant set. Such an assertion is false and naïve--experts do not (and should not) work for free, and often counsel for prisoners, including Mr. Bucklew, are forced to compensate experts personally. An execution warrant, where a life hangs in the balance, is often the only thing that will persuade helpful attorneys and experts with expertise and knowledge about a client's condition to lend *pro bono* assistance to a case that requires services and opinions in order to plead the viable claims that exist. Defendants have automatic and unconstrained access to experts without having to

---

[2] Mr. Bucklew's counsel had specifically requested funding for Dr. Zivot's expert services and was denied in an order issued by Judge Whipple on April 30, 2014. *Bucklew v. Steele*, Case No. 01-8000-DW (order of April 30, 2014). Despite that setback, Mr. Bucklew's counsel were nonetheless able to file Mr. Bucklew's complaint with supporting affidavits on May 9, 2014, *Bucklew v. Lombardi*, Case No. 14-8000-BP (Doc. 1). To date, Dr. Zivot has been paid nothing by any court for his services. His out-of-pocket expenses have been funded by counsel, and Mr. Bucklew's family pulled together a small sum of money for his expert services.

23

seek and obtain funding from the courts. These requests, when made on behalf of death row inmates, are denied more often than not. In Mr. Bucklew's case, where it is difficult to imagine a more clear-cut showing of a medically compromised client, detailed requests for funds to obtain an expert to consult and advise counsel about Mr. Bucklew's condition and the unique risks lethal injection posed to him were denied ten times. Mr. Bucklew has to abide by those funding decisions.

After repeatedly opposing counsel's efforts to obtain necessary funding from a medical expert, Defendants assert that counsel should somehow have conjured up free experts willing to spend hours reviewing records, providing opinions, and traveling to examine Mr. Bucklew. Given its active opposition to Mr. Bucklew's efforts to obtain funding, the State should be estopped from making this factually inaccurate argument. The experts that counsel have persuaded to assist did so after the Missouri Supreme Court set an execution date. They agreed to work with counsel under the imminence of the execution date and the urgency it imposes. It is not Mr. Bucklew, nor the experts, nor counsel who have been the laggards here. Indeed, the State of Missouri *still* has not obtained up-to-date imaging studies of Mr. Bucklew; the most recent imaging occurred in 2010. This Court should reject Defendants' unsupported argument that the statute of limitations bars Mr. Bucklew's claims.

In the event that this Court determines that a factual dispute exists about when Mr. Bucklew's claim accrued, then a trial on the statute of limitations should ensue. If there is any issue of fact relating to the statute of limitations, then the issue must be decided by the finder of fact. *Green v. Missouri*, 2008 WL 4833020, 5 (E.D. Mo. 2008). When there is dispute about when a statute has run, or whether the statute was tolled, a question of material fact exists and a trial is required on the statute of limitations question. *Anonymous v. Vella*, 2006 WL 1401680, *8 (D. Neb. 2006). Similarly, the district court stated in *Kammerer v. Wyeth et al.,* 2011 WL 5237754 (D. Neb. 2011), that when there are disputed issues of fact as to when the statute of limitations began to run, then the issue is "a question for the jury." *Id*. at *6. In the same vein, the district court observed in *Strong v. Stryker Corp.,* 2010 WL 4967876 (D. Minn. 2010) that:

When the statute of limitations is at issue, dismissal is proper only if appears from the face of the complaint that the limitation period has run and the complaint contains no facts to toll that running. *Varner v. Peterson Farms*, 371 F.3d 1011, 1016 *8th Cir. 2004).

*Strong*, 2010 WL 4967876 at *4.

### III. Claim and Issue Preclusion Do Not Apply

Clear and dispositive differences exist between Mr. Bucklew's claims, which focus on his severe medical condition, and the claims of the *Zink* plaintiffs, which focused on the risks posed by the lethal drug, compounded pentobarbital. *See Zink v. Lombardi*, Case No. 12-4209 (Doc. 338, 437). Mr. Bucklew's case has virtually no factual overlap with *Zink,* other than both cases necessarily concern Missouri's execution protocol. But while the *Zink* case addressed the potency, purity and safety of the lethal drug (alleged to be compounded pentobarbital), Mr. Bucklew's case is solely concerned with the grave and unique risks faced by him because of his medical condition, irrespective of the particular lethal drug the State chooses to administer. Defendants' misapprehension of the two cases dooms their various arguments, including their asserted defenses of claim preclusion and *res judicata*.

As discussed in detail throughout Mr. Bucklew's Fourth Amended Complaint, he suffers from a rare congenital condition that has, since birth, caused the growth of unstable, blood-engorged tumors in his head, neck and throat. The condition is progressive and, ultimately, fatal. Mr. Bucklew's disease is at a very advanced stage and has grown worse even in the past twelve months. The blood-filled tumors fill Mr. Bucklew's nasal passages, sinuses and throat; they also largely obstruct his airway. Recently, they have caused severe pressure to his right eye, and they also block his right nostril. The tumors also interfere with Mr. Bucklew's vision and hearing and impair his ability to chew certain foods. He suffers regularly from severe pain in his jaw and teeth along with hemorrhaging in his throat. He frequently coughs, chokes and strains to breathe.

Because of Mr. Bucklew's condition, cavernous hemangioma, he is at grave risk during any execution by lethal injection of hemorrhaging, choking on his own blood and other secretions and then suffocating to death. Significantly, at *no* point in the Motion to Dismiss Fourth Amended Complaint do

25

the Defendants attempt to rebut the specific allegations raised by Mr. Bucklew or claim that the specter of a prolonged and excruciating execution does not meet the Eighth Amendment standard of a "substantial risk" of "severe pain" and "serious harm."   *Baze v. Rees*, 553 U.S. 35, 49-50, 61 (2008); *see also Glossip v. Gross,* 135 S. Ct. 2726, 2737 (2015).   Defendants do not take issue with the severe nature of Mr. Bucklew's medical condition.

In the Motion to Dismiss Fourth Amended Complaint, Defendants suggest that Mr. Bucklew should have brought his claims in the *Zink* action, as they merely involve "new issues about his personal health problems" and there "was no good reason Bucklew could not have presented the as-applied variation" of his claim in *Zink*.  Doc. 55 at 9.

Defendants' argument suffers from numerous fatal flaws, chief among them that Defendants have failed to recognize the clear and distinct differences between the *Zink* litigation and the *Bucklew* litigation. As discussed at length above, *there is virtually no factual overlap between the claims in the two cases, and the core issues in the two cases are distinctly different.*

Before delving into that analysis, however, Mr. Bucklew points out that, at the time he filed the present case, *Zink* was still pending before this Court and his case could have been easily consolidated with that action, had the Court felt it was appropriate to do so.  Indeed, the Court could have consolidated, then dismissed both cases at the same time.

Mr. Bucklew filed his complaint in the Western District of Missouri on May 9, 2014, a full week *before* this Court issued the final order in *Zink* on May 16, 2014.  The *Zink* case, thus, had not yet been fully adjudicated.  *Res judicata* comes into play only when a "right, question or fact [is] distinctly put in issue and directly determined by a court of competent jurisdiction," and it is only upon a *final judgment* on the merits that further claims are barred.  *Montana v. United States*, 440 U.S. 147, 153 (1979)(quoting *Southern Pacific R. Co. v. United States*, 168 U.S. 1, 48-49 (1897))(emphasis added).

At the point that Mr. Bucklew filed his initial complaint, no final judgment had yet been rendered in *Zink v. Lombardi*, Case No. 12-4209, and no "right, question or fact" pertaining specifically to Mr. Bucklew's case had been "directly determined."  Indeed, *none* of the allegations in *Zink* had anything to do

with the physical condition or infirmities of *any* prisoner, or the likelihood that any of them would choke or suffocate during the lethal injection.

In any case, it is clear that Mr. Bucklew's case is factually distinct from all other lethal injection cases arising from Missouri since 2013. In that period of time, 18 prisoners have been executed, and *only two*, Mr. Bucklew and Mr. Ernest Johnson, have obtained a stay of execution based on claims concerning lethal injection. Prior to Ernest Johnson's case, just last month, Mr. Bucklew was the only Missouri prisoner to raise an *as applied* challenge to lethal injection, alleging that the protocol, because of his unique and severe medical condition, would cause the infliction of cruel and unusual punishment on him. *The facts that apply to Mr. Bucklew's claims do not support the claims raised by any other Missouri prisoner*. If the claims are not the "same," then the doctrine of claim preclusion does not apply. *See Rosemann v. Roto-Die*, *Inc.,* 276 F.3d 393, 397 (8th Cir. 2002).

Although the Eighth Circuit observed that the issues of *res judicata* or claim preclusion had not been raised in the district court at the outset and could therefore be raised during the remand proceedings, the appellate court's own observations establish why the doctrine of claim preclusion does not apply. Noting that case law supports the availability of an as-applied challenge,[3] the Eighth Circuit added that the "detailed allegations in Bucklew's complaint of a substantial risk of serious and imminent harm…" are "far more specific than the allegations" in the second amended complaint in *Zink*. *Bucklew*, 783 F.3d at 1127. As we now know, the *Zink* allegations failed, and the clearly distinguishable *Bucklew* allegations persuaded the Supreme Court to issue a stay of execution. The stay order implicitly establishes that Mr. Bucklew had satisfied the standard of *Hill v. McDonough*, 547 U.S. 573, 584 (2006) of showing a "significant possibility of success on the merits."

---

[3] The Eighth Circuit noted that *Siebert v. Allen*, 506 F.3d 1047, 1050 (11th Cir. 2007) concerns an as-applied challenge to a lethal injection protocol by a prisoner. (The prisoner had pancreatic cancer and was terminally ill). In a recent, post-*Glossip* case, the Supreme Court of Florida remanded a lethal injection action for an evidentiary hearing following the prisoner's assertion that the use of midazolam was unconstitutional as applied to him because it would result in a paradoxical reaction, in light of his prior alleged brain damage and history of chemical dependency. *See* Exh. 6, *Correll v. State*, Case No. 481985CF003550).

27

Although a litigant is able, in appropriate circumstances, to join facial and as-applied challenges, he is not required to do so. The doctrine prohibiting the splitting of claims or causes of action "does not apply where the two causes of action are separate, even though they might have been joined in a single action." *Buder v. Fiske*, 174 F.2d 260, 268 (8th Cir. 1949)(citation omitted). As the Eighth Circuit has explained, "one of the tests for determining whether the cause of action asserted in a suit is the same as that prosecuted in a prior suit is whether or not proof of the same facts will support both actions." *Id.* (quoting *Woodbury v. Porter*, 158 F.2d 194, 195 (8th Cir. 1946))(internal quotation marks omitted).

As one of the *Zink* plaintiffs, Mr. Bucklew was *permitted* under Fed. R. Civ. P. 18(a) to join his individual claims against the Defendants, but he was *not required to do so.* There was not sufficient commonality in the cases to justify grafting a unique and intensely fact-bound set of claims onto the *Zink* litigation. Indeed, that would have served no party's best interest.

Proof of the <u>same</u> facts does not support both the *Zink* and *Bucklew* actions, nor is the outcome of one determinative of the other, definitively demonstrating that preclusion does not apply. The facts set forth in Mr. Bucklew's complaint – which draw upon years of medical treatment and thousands of pages of medical records in the Department of Corrections' possession, as well as affidavits from multiple medical experts – detail his severe, congenital cavernous hemangioma, its symptoms, and the risks, unique to him alone, of adverse events and torturous, constitutionally intolerable suffering if he is executed using Missouri's current execution protocol,

Facts at the core of Mr. Bucklew's case – that no relevance whatsoever to the claims in *Zink* include the following:

- That Mr. Bucklew's head, neck, throat, and sinus cavities are all filled with unstable, blood-engorged tumors could easily rupture under stress or any spike in blood pressure;

- That Mr. Bucklew's airway is "severely compromised," meaning that it is largely obstructed by a cavernous hemangioma, leaving him at risk of coughing, choking and suffocating upon any stress to the hemangioma or any hemorrhage of blood or release of other secretions into the throat;

28

- That Mr. Bucklew's airway is "friable," meaning that it is weak and prone to tear or rupture; for this reason, standard equipment used to maintain an open airway would only cause further obstruction of the airway;

- That Mr. Bucklew suffers near-constant pain and hemorrhages on a daily basis even under non-stressful conditions; sometimes, he bleeds from his facial orifices, including his eyes;

- That Mr. Bucklew also suffers from severe vascular abnormalities as part of his congenital condition, making it likely that the lethal drug will not circulate as intended, thereby prolonging the execution;

- That any coughing or choking experienced by Mr. Bucklew will likely cause him to struggle for air, and that, paradoxically, any struggle to breathe will increase the degree of obstruction, making it harder for him to breathe, likely leading to an execution that is both prolonged and in which death is caused by suffocation; and,

- That Mr. Bucklew's condition is lifelong and treatable only through pain management, as surgery would be too risky.

Doc. 53 at ¶¶ 1-17, 41-59, 69-74, 76-108, 113-3974-102, 139-143, and attached Exhs. 1-5 to the Fourth Amended Complaint.

These factual allegations concerning Mr. Bucklew have *no relevance whatsoever* to any of the *Zink* plaintiffs' claims. Conversely, facts relevant to proving or disproving the *Zink* claims – that Defendants have concealed the identities of manufacturers and suppliers of the lethal pentobarbital, that they are violating federal and Missouri statutes, or that the prescriptions Defendants use to obtain the pentobarbital are invalid and ineffective would not significantly aid any fact-finder in resolving the core of Mr. Bucklew's claims. Further, Mr. Bucklew, while seeking more information about and adjustments to the protocol, argues that due process entitles him to information about the drug with which he will be executed because of the unique risks of drug interactions that he faces. Again, the issue of drug interactions concerns Missouri's protocol *as applied* to Mr. Bucklew.

Mr. Bucklew's present lawsuit bears no resemblance to the kind of repetitious, judicially wasteful or vexatious litigation that the doctrines of *res judicata*, estoppel, and claim or issue preclusion are designed to prevent. *Montana*, 440 U.S. at 153-154. To avoid injustice, the doctrine of estoppel, or *res judicata*, "must be confined to situations where the matter raised in the second suit is identical in all respects with

29

that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged." *Comm'r of Internal Revenue v. Sunnen*, 333 U.S. 591, 599-600 (1948). Mr. Bucklew's present claim is not identical in all respects – or indeed even in *any* respect – to those in *Zink*, and is thus not precluded. The Court should reject Defendants' argument that Mr. Bucklew's claims are barred by the procedural doctrines of issue and claim preclusion.

## IV. Bucklew's Eighth Amendment Claim of "Deliberate Indifference" and First Amendment Claim are not Barred by Issue Preclusion or by the Eighth Circuit Decision in *Zink*

Defendants next claim that Mr. Bucklew's claims under Count II and Count III of his Fourth Amended Complaint are barred by the doctrine of claim preclusion and by the Eighth Circuit's decision in *Zink v. Lombardi*, 783 F.3d 1089 (8th Cir. 2015)(*en banc*). Again, Defendants' arguments fail.

Mr. Bucklew's Eighth Amendment claim of "deliberate indifference," stated in Count II, is far different from the claim litigated in *Zink*. The *Zink* plaintiffs' "deliberate indifference" claim concerned the use of compounded and outdated drugs. (*See Zink v. Lombardi*, Case No. 12-4209, Order of May 2, 2014, at 11.

In contrast, Mr. Bucklew's Eighth Amendment claim focuses specifically on Mr. Bucklew's medical condition and the State's failure to obtain up-to-date medical imaging studies and otherwise provide appropriate health care in advance of and in preparation for an execution. In addition to the failure to obtain imaging studies, Defendants have also taken no steps to address the risks posed by Mr. Bucklew's severely obstructed airway.

There is no factual overlap whatsoever between Mr. Bucklew's Eighth Amendment "deliberate indifference" claim and the "deliberate indifference" claim raised in *Zink*. Therefore, the doctrine of claim preclusion does not apply, and the Eighth Circuit's decision in *Zink* does not control the determination of this claim.

With regard to Mr. Bucklew's First Amendment claim, again, there is little to no overlap between the claims the of *Zink* plaintiffs and the claims of Mr. Bucklew in Count III. The *Zink* plaintiffs complained of secrecy surrounding the identity of the execution team members. Mr. Bucklew did not address the

execution team, but rather alleged that the secrecy surrounding the compounded drug posed a special risk to him as an individual with "vessels that are abnormally weak and prone to rupture" and that such secrecy prevented him from petitioning the government for redress of grievances. *See* Fourth Amended Complaint at ¶ 160-166.

Because there is little or no factual overlap between the *Zink* plaintiffs' claims under the First Amendment and Mr. Bucklew's claims, the doctrine of claim preclusion does not apply and the Eighth Circuit's decision in *Zink* does not control the determination of this claim.

**The Time Has Come for Defendants to File an Answer.**

To date, Defendants have never contested Mr. Bucklew's allegations that the lethal injection drug will not circulate through Mr. Bucklew's body as it would in an otherwise healthy person, nor has the State ever claimed any inaccuracies in the description of Mr. Bucklew's DOC medical records offered in this Court, the Court of Appeals and the United States Supreme Court. Defendants have never offered opinions contrary to those of Drs. Zivot, Jamroz or Sasich regarding the unique and severe risks to Mr. Bucklew during an execution by lethal injection because of his medication regimen, grossly impaired vascular system, and his cavernous hemangioma, nor have Defendants taken issue with any of the opinions offered by Mr. Bucklew's completely unchallenged experts. Mr. Bucklew's medical evidence is unconverted. Yet, despite their argument that Mr. Bucklew failed to state a claim having been rejected by a panel of the Eighth Circuit Court of Appeals and the United States Supreme Court, Mr. Bucklew is now responding to the same pleading filed by Defendants, virtually verbatim, for the third time. Mr. Bucklew has met his burden, and the Defendants Motion to Dismiss (Doc. 55) should be dismissed.

As recognized by the Eighth Circuit in *Bucklew v Lombardi,* 783 F.3d 1120 (8th Cir. 2015), the "first step [on remand] should be a timely response by defendants to the complaint or any amended complaint. The parties' respective positions can then be clarified before determining whether discovery and an evidentiary hearing are needed." *Id.* at 1128.

During oral argument, on September 9, 2014, the Eighth Circuit made clear that the State of Missouri should respond to Mr. Bucklew's claims, which, given the nature of his as-applied challenge are clearly distinguishable from the *Zink* claims:

> Court: [S]o he's [Bucklew] made a showing that the Supreme Court says avoided a 12(b)(6) dismissal. And the question is where do we go from here. It seems to me that this is not a question of he has to propose an alternative. At least not until the State responds to whether the existing constitutional persistently upheld protocol as it applies to him would cause him unnecessary pain.

And again the Court makes its position known at 38:50:

> State: …[I]t is the case that Mr. Bucklew alleges problems that are unique to him and yes he does. But it's uncertain especially if this court-
>
> Court: It's uncertain because you have not in any way been required to respond to those affidavits. [Bucklew's uncontroverted expert affidavits].

And finally, at 41:15 the Court states:

> COURT: I don't see the risk of endless litigation. Certainly his condition doesn't translate into the universe of death row inmates and with respect to Mr. Bucklew, it seems to me, *if there were a remand procedure, it would start with the State responding.*

Ex. 7, *Bucklew v. Lombardi,* transcript of excerpts from oral argument (emphasis added).

To date, Defendants have never responded to the substance of Mr. Bucklew's claims or provided any information regarding "known and available alternative" methods of execution. This Court, on September 21, 2015, advised "Bucklew can identify as many or as few alternatives as his experts might suggest. If he does so, Defendants will be required to file an Answer, at which time they can contest Bucklew's allegations or adopt one of Bucklew's alternatives." Doc. 52 at 10. "If Defendants deny Bucklew's contention that a particular method of execution is available or feasible, discovery will commence on that that issue." *Id*.

## V. Conclusion

Counsel respectfully suggests that the Motion to Dismiss Fourth Amended Complaint should be denied, and discovery should proceed in the normal course. Based on the arguments and authorities stated

above, Mr. Bucklew respectfully requests that this Court deny Defendants' Motion to Dismiss Fourth Amended Complaint (Doc. 55) in its entirety.

Respectfully Submitted,

MORGAN PILATE, LLC
 /s/   Cheryl A. Pilate
Cheryl A. Pilate Mo. # 42266
Lindsay J. Runnels Mo. #62075
926 Cherry Street
Kansas City, MO 64106
Telephone: 816-471-6694
Facsimile: 816-472-3516
cpilate@morganpilate.com
lrunnels@morganpilate.com

## Certificate of Service

I, Cheryl A. Pilate, hereby certify that the above and foregoing pleading was served on all counsel of record via the ECF system on December 4, 2015.

/s/ Cheryl A. Pilate

33