IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| RUSSELL BUCKLEW, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 14-08000-CV-W-BP |
| | ) |
| GEORGE A. LOMBARDI, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**<u>ORDER AND OPINION GRANTING IN PART DEFENDANTS' MOTION TO DISMISS</u>**

Pending is Defendants' Motion to Dismiss Plaintiff's Fourth Amended Complaint. Defendants contend all three claims should be dismissed because they fail to state a claim for which relief can be granted, are time-barred, and are barred by claim preclusion principles. For the reasons set forth below, the motion, (Doc. 55), is **GRANTED IN PART** and Counts II and III are **DISMISSED.**

## I. BACKGROUND

Plaintiff Russell Bucklew ("Bucklew") was convicted in state court of first degree murder, kidnapping, burglary, forcible rape, and armed criminal action. He was sentenced to death for the murder and various terms of years on the other crimes. His convictions and sentences were affirmed on direct appeal. *State v. Bucklew,* 973 S.W.2d 83 (Mo. 1998) (en banc), *cert. denied,* 525 U.S. 1082 (1999). He subsequently sought postconviction relief, but his request was denied. *Bucklew v. State,* 38 S.W.3d 395 (Mo.) (en banc), *cert. denied*, 534 U.S. 964 (2001). Plaintiff then sought habeas relief in federal court pursuant to 28 U.S.C. § 2254; this effort was unsuccessful. *Bucklew v. Luebbers*, 436 F.3d 1010 (8th Cir.), *cert. denied,* 549 U.S. 1079 (2006).

In 2012, Bucklew and others filed suit against these same defendants; that suit has been, and in this Order will be, referred to as either "the *Zink* litigation" or simply "*Zink*" because that was the name of the lead plaintiff. For reference sake, *Zink*'s case number was 12-CV-4209-BP.[1] Three counts from *Zink*'s Second Amended Complaint are relevant to this case:

- Count I, which alleged Missouri's lethal injection protocol violated the Eighth Amendment because it utilized drugs obtained from "an undisclosed compounding pharmacy or compounding pharmacist" (*Zink*, Doc. 338, ¶ 401;)

- Count III, which alleged "the delivery of the medication necessary to bring about a rapid death without gratuitous pain and suffering is a serious medical need" and Defendants' use of the protocol constituted deliberate indifference to Plaintiffs' serious medical needs in violation of the Due Process Clause (*Zink*, Doc. 338, ¶¶ 411-15;) and

- Count X, which alleged Defendants' refusal to disclose the identities of health-care professionals, sources for the drugs, and other participants in the execution process denied Plaintiffs their First Amendment right to petition the government for redress of grievances. (*Zink,* Doc. 338, ¶¶ 475, 479.)

In May 2014, while *Zink* was still pending, Bucklew filed a separate suit of his own. Generally, he alleged that administering the lethal injection protocol to him would violate his Eighth Amendment rights because (1) administering lethal injection to a person in his condition would constitute cruel and unusual punishment and (2) Defendants would be deliberately indifferent to his serious medical needs if they executed him under the current protocol. Bucklew's Complaint also asserted a First Amendment claim. The first two claims focused on the fact that Bucklew suffers from a congenital condition known as cavernous hemangioma,

---

[1] "The district court may take judicial notice of public records and may thus consider them on a motion to dismiss." *Stahl v. United States Dep't of Agriculture*, 327 F.3d 697, 700 (8th Cir. 2003).

which raises unique issues regarding the efficacy and risks of intravenous drugs used as part of Missouri's lethal injection protocol. Neither Bucklew's Complaint nor the operative pleading in *Zink* alleged a feasible and available alternative that would significantly reduce the risk of severe pain and suffering; for that reason, in May 2014 the Court dismissed both cases. (*Zink*, Doc. 443; *Bucklew*, Doc. 17.)

The Eighth Circuit affirmed the dismissal in *Zink*. *Zink v. Lombardi,* 783 F.3d 1089 (8th Cir.) (en banc), *cert. denied*, 135 S. Ct. 2941 (2015). However, it vacated the dismissal of Bucklew's Complaint and remanded because "the State's concession that it would alter its procedure . . . brought Bucklew's claim at least potentially within the purview of *Baze* [*v. Rees,* 553 U.S. 35 (2008)] and therefore made pre-answer *sua sponte* dismissal of [Bucklew's] complaint inappropriate." *Bucklew v. Lombardi*, 783 F.3d 1120, 1128 (8th Cir. 2015) (en banc). The Court of Appeals also identified two issues that it declined to address because they had not been addressed by this Court: (1) whether a prior in-camera filing in the Court of Appeals suggested the statute of limitations had expired, *id.* at 1128-29, and (2) whether Bucklew's claim in this case is barred by the preclusive effect of the Eighth Circuit's decision in *Zink*. *Id.* at 1122 n.1.

After the Mandate was issued, Bucklew filed a series of Amended Complaints. The latest – the Fourth Amended Complaint – is the operative pleading, and it contains three counts:

- Count I asserts an Eighth Amendment claim, alleging that executing Bucklew "by lethal injection will cause extreme and needless suffering" due to the effect his medical condition will have on the administration of any lethal injection protocol, which necessarily depends on the circulatory system for proper application of the drugs. (*E.g.,* Doc. 53, ¶¶ 145, 148.)

- Count II asserts another Eighth Amendment claim, contending that Defendants' failure to take necessary steps to assess Bucklew before the execution, and the failure to plan to take necessary steps to assess Bucklew during the execution, both constitute deliberate indifference to Bucklew's serious medical needs. (*E.g.,* Doc. 53, ¶¶ 152-56.)
- Count III alleges Bucklew's First Amendment right to petition the government/courts for redress of grievances has been violated because Defendants "refuse to provide any information whatsoever regarding" the drugs to be used to execute him or the personnel involved in the drugs' preparation. (Doc. 53, ¶ 161-165.)

Defendants have filed a Motion to Dismiss (Doc. 53). They contend that Count I should be dismissed because (1) it fails to plead the existence of a feasible and alternative method of execution that will substantially reduce the risk of pain and suffering, (2) the claim is barred by the statute of limitations, and (3) claim is barred by principles of claim preclusion. Defendants contend Counts II and III should be dismissed because they are also barred by preclusion principles and because they are not legally viable. Bucklew defends Count I by arguing that (1) lethal gas and a firing squad are feasible and available means of execution, (2) the statute of limitations did not accrue until May 2014 when he underwent a physical examination and finally learned the information necessary to advance his as-applied challenge, and (3) his claims are not subject to claim preclusion. Bucklew reiterates these responses with respect to Counts II and III and further contends that these two counts are different from the claims presented in *Zink*, so *Zink*'s rejection of their viability does not foreclose his claims.

## II. DISCUSSION

When considering a motion to dismiss under rule 12(b)(6), the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[ ]." *Stodghill v. Wellston School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if it allows the reasonable inference that the defendant is liable for the conduct alleged. *E.g., Horras v. American Capital Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013). In making this evaluation, the Court is limited to a review of the Fourth Amended Complaint, exhibits attached to the Fourth Amended Complaint, and materials necessarily embraced by the Fourth Amended Complaint. *E.g., Mattes v. ABC Plastics, Inc.,* 323 F.3d 695, 697 n.4 (8th Cir. 2003).

### A. Count I – Cruel and Unusual Punishment

#### *1. Adequacy of the Pleadings*

In *Glossip v. Gross*, the Supreme Court determined "what a prisoner must establish to succeed on an Eighth Amendment method-of-execution claim." 135 S. Ct. 2726, 2737 (2015). "[D]ecisions in this area have been animated in part by the recognition that because it is settled that capital punishment is constitutional, it necessarily follows that there must be a constitutional means of carrying it out." *Id.* at 2732-33. Moreover, "because some risk of pain is inherent in any method of execution, we have held that the Constitution does not require the avoidance of all

5

risk of pain." *Id.* at 2733. In light of these observations, a prisoner alleging that a particular form of execution is cruel and unusual within the meaning of the Eight Amendment must first establish that the method to be utilized "presents a risk that is sure or very likely to cause serious illness and needless suffering, and give rise to sufficiently imminent dangers." *Id.* at 2737 (quotations and emphasis deleted). The prisoner must then "identify a known and available alternative method of execution that entails a lesser risk of pain, a requirement of all Eight Amendment method-of-execution claims." *Id*. at 2731. According to *Glossip*, this is not merely a matter of proof: "the Eighth Amendment requires a prisoner to *plead* and *prove* a known and available alternative." *Id.* at 2739 (emphasis supplied).

Defendants do not contend that the Fourth Amended Complaint fails *Glossip*'s first requirement. Instead, they contend it fails to "plead sufficient factual matter, plausible on its face, showing how the State could . . . modify its execution protocol to significantly reduce a substantial risk of severe pain." (Doc. 55, pp. 2-3.) Specifically, they argue that the Fourth Amended Complaint (1) does not actually contend that execution by firing squad is available and (2) presents no reason to believe that execution by lethal gas will significantly reduce the risk of pain and suffering. The Court agrees with Defendants' first contention but disagrees with the second.

### *(a). Firing Squad*

The Fourth Amended Complaint mentions the use of a firing squad only once: in a footnote, Bucklew alleges that "[a] firing squad would similarly [to the use of lethal gas] reduce the risk of severe pain, but it is not authorized under Missouri law." (Doc. 53, p. 2 n.1.) While there can be little dispute that firearms are readily procurable by the State, the footnote actually states that execution by firing squad is not "available" because it is not "authorized," and thus the

6

footnote explains why Bucklew has chosen not to suggest firing squad as an alternative means of execution. "[A]n inmate ultimately must prove that another execution procedure exists that is feasible and readily implemented, and that the alternative method will significantly reduce a substantial risk of severe pain." *Zink*, 783 F.3d at 1103. While little needs to be said to explain why a firing squad is feasible, the Fourth Amended Complaint does not set forth a factual basis establishing that it can be "readily implemented."[2] To the contrary, the footnote explains why a firing squad cannot be "readily implemented."

Bucklew's response to the Motion to Dismiss expands on the footnote, casting "doubts that Defendants would have much trouble pushing through legislation authorizing the use of a firing squad" and that there is "time to work with the General Assembly to authorize death by firing squad as an alternative method of execution." (Doc. 61, p. 11.) These allegations do not appear in the Fourth Amended Complaint,[3] and the Court cannot consider them. Bucklew's response raises what could be an interesting question about whether an execution method that is factually available but not legally permitted is "available" under *Glossip*, *Zink*, and *Baze v. Rees,* 553 U.S. 35 (2008), but the Fourth Amended Complaint does not present the issue. At best, it

---

[2] The Fourth Amended Complaint also does not allege facts that plausibly explain why a firing squad would significantly reduce the risk of severe pain; it merely states the fact in a conclusory manner. This is insufficient under both *Iqbal* and *Glossip*, but Defendants have not raised the point.

[3] The Fourth Amended Complaint's solitary reference to a firing squad should be contrasted with the number and nature of the allegations about lethal gas. For instance, the Fourth Amended Complaint states that "Mr. Bucklew specifically alleges a 'feasible alternative' method of execution, lethal gas. This alternative method is specifically authorized by Missouri law, and will significantly reduce the risk of severe pain by avoiding the circulation of the lethal agent through Mr. Bucklew's impaired and abnormal vascular system." (Doc. 53, pp. 1-2 (citation omitted).) No mention of a firing squad is made here. Elsewhere, it is alleged that lethal gas "is more likely than any other feasible and available alternative method to significantly reduce the risk of severe pain." (Doc. 53, p. 2.) It is here that the footnote mentioning the firing squad is attached, which means the footnote *contrasts* the firing squad from lethal gas based on the fact that it is not authorized by law and, hence, is unavailable. Later still, the Fourth Amended Complaint alleges that "Mr. Bucklew specifically alleges lethal gas as a feasible and available alternative method that will significantly reduce the risk of severe pain to Mr. Bucklew." (Doc. 53, ¶ 150.) Once again, there is no mention of the use of a firing squad, reinforcing the conclusion that the footnote does not proffer a firing squad as an alternative but instead explains why it is not being proffered.

7

insinuates the potential issue, but insinuation is insufficient. Accordingly, the Court concludes the Fourth Amended Complaint does not allege that the use of a firing squad is "available" within the meaning of *Glossip, Baze,* and *Zink*.

### *(b) Lethal Gas*

The Court reaches a different conclusion with respect to Bucklew's allegations about the use of lethal gas as an alternative to lethal injection. Defendants first contend Bucklew has made only a "naked assertion that execution by unspecified lethal gas would significantly reduce a substantial risk of severe pain from execution by lethal injection. . . . And his pleading is itself facially implausible." (Doc. 55, p. 2.) However, reading the Fourth Amended Complaint as a whole, Bucklew alleges that his vascular system has deteriorated to the point that it cannot be relied upon to circulate the drugs used in *any* lethal injection protocol, and that doing so creates a substantial risk of severe pain. (*E.g.,* Doc. 53 pp. 1-2; Doc. 53-1, ¶ 19; Doc. 53-2, ¶ 23; Doc. 53-5, ¶ 11.) Moreover, the use of some of the drugs used in the process will increase Bucklew's blood pressure to the point that it increases the risk of hemorrhaging and corresponding pain. (*E.g.*, Doc. 53, ¶ 84; Doc. 53-3, ¶¶ 8-9; Doc. 53-5, ¶ 11.) Therefore, a method of execution that does not rely on Bucklew's circulatory system will reduce or eliminate this risk. (*E.g.,* Doc. 53, pp. 2-3; Doc. 53, ¶ 29.) The fact that Bucklew has not specified a particular gas to be used is irrelevant because the point of Bucklew's claim is not the chemical/drug being used, but the delivery method and the system of the body being utilized.

Defendants suggest lethal gas presents just as much risk of severe pain, but this argument is premature. The question is whether Bucklew's allegations are plausible, and in resolving this question the Court is limited to a review of the Fourth Amended Complaint. Bucklew has alleged facts that plausibly demonstrate lethal gas will not pose the same risks as lethal injection;

8

Defendants are free to argue that the risk of pain is just as great under both methods, but that is a factual dispute the Court cannot resolve under Rule 12(b)(6).

Defendants also contend Bucklew has not sufficiently alleged "facts showing that lethal gas is a feasible and readily available alternative method of execution." (Doc. 55, p. 3.) However, in addition to alleging that the use of lethal gas is permitted by state law, the Fourth Amended Complaint describes comments by the Missouri Attorney General indicating that the State could use the gas chamber for execution and attaches pictures of the gas chamber. (Doc. 55, ¶ 30.) Read in the light most favorable to Bucklew, the allegations demonstrate that execution by lethal gas is an available method of execution.

In summary, the issues Defendants raise regarding lethal gas are issues of proof, not pleading. Defendants are free to allege and attempt to prove that lethal gas will not significantly reduce a substantial risk of severe pain, or that the use of lethal gas is not readily available. Presently, however, the only issue before the Court is whether the Fourth Amended Complaint – read in the light most favorable to Bucklew – adequately alleges that lethal gas is a readily available alternative that will significantly reduce a substantial risk of pain. The Court concludes that it does, and for that reason the motion to dismiss must be denied and Defendants will be required to submit an Answer.

### 2. Statute of Limitations

Defendants contend Count I is barred by the statute of limitations. The Court concludes the procedural posture and Record do not presently allow for resolution of this argument, so Defendants' request to dismiss on this ground is denied and Defendants may assert it as an affirmative defense.

9

"Bar by a statute of limitation is typically an affirmative defense, which the defendant must plead and prove. A defendant does not render a complaint defective by pleading an affirmative defense, and therefore the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense." *Jessie v. Potter*, 516 F.3d 709, 713 (8th Cir. 2008) (citations omitted). In evaluating the issue at this early stage, the Court may also consider materials that could ordinarily be considered under Rule 12(b)(6). *See Noble Sys. Corp. v. Alorica Central, LLC,* 543 F.3d 978, 982-83 (8th Cir. 2008).

The parties agree that the limitation period for Count I is five years. The question then becomes: when did Plaintiff's claim under Count I accrue? "[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law," and the standard rule is that accrual occurs "when the plaintiff has a complete and present cause of action." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (quotations omitted). Defendants point to court filings demonstrating Bucklew was aware that he suffered from cavernous hemangioma or that his condition had deteriorated, but his claim did not necessarily accrue at these points in time. The critical question is: when did Bucklew become aware that lethal injection administered to a person in his then-present condition supported a claim that all uses of lethal injection would violate his Eighth Amendment rights?

Defendants first suggest Bucklew's claim accrued in June 2009, when he asked the Missouri Supreme Court to order the Missouri Public Defender System to fund an expert to assist him in presenting an Eighth Amendment claim. Defendants find this action significant because, in their view, it demonstrates Bucklew knew enough then to allege (as he does now) that utilization of any lethal injection procedure violated his Eighth Amendment rights.

10

Defendants point to the Suggestions in Support Bucklew filed with the Missouri Supreme Court, but a significant portion of that document's rationale rests on the particular drugs being utilized and did not generally challenge the use of all lethal injection applications. (Doc. 55-2, pp. 5-6.) Moreover, the factual basis for the information contained in the Fourth Amended Complaint is derived from medical examinations conducted in 2014. Nothing in the materials filed with the Missouri Supreme Court establishes when Bucklew had the information necessary to allege that all applications of lethal injection to a person with his medical condition presented a serious risk of substantial pain.

Defendants next suggest that Bucklew's claim accrued in early 1999, when direct review of his conviction and sentence were completed. (Doc. 55, p. 7.) The Court rejects this theory, as the Record does not establish that Plaintiff's medical condition in 1999 was such that he *could* assert such a claim. In other words, his claim may have been premature (i.e., not ripe) in 1999. A similar reasoning applies to Defendants' charge that "[t]here is no good reason he could not have brought the claim in 2008, or as part of the *Zink* litigation in which he was a plaintiff in 2009." (Doc. 55, p. 8.) The Fourth Amended Complaint and the court documents Defendants have submitted do not conclusively establish when Bucklew's claim accrued.

Determining the date of accrual is inherently fact-bound, and the necessary facts are not before the Court. The materials the Court is permitted to review under Rule 12(b)(6) do not permit the Court to conclude when Bucklew had the information necessary to present his Eighth Amendment claim that lethal injection, as a method of execution regardless of the drugs utilized, constitutes cruel and unusual punishment when administered to a person in his condition. The materials the Court is permitted to review do not even establish when Bucklew's condition deteriorated to the point that his claim was possible. The Court is thus unable to conclude that he

11

had this information more than five years before he filed this lawsuit. When Defendants file their Answer, they can assert the statute of limitations as an affirmative defense and discovery will commence on the issue. This will also allow Bucklew an opportunity to garner evidence to support his claim that the statute of limitations should be tolled in light of the State's opposition to his efforts to obtain medical information necessary to present his claim.[4] But, for the present, the request to dismiss the case based on the statute of limitations is denied.

### 3. Claim Preclusion

Res judicata is also an affirmative defense that must be pleaded, but it can also be resolved on a motion to dismiss if the defense is apparent from the Complaint or if it can be established through the use of public records (such as decisions from other courts). *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 763-64 (8th Cir. 2012). Pointing out that Bucklew was a co-plaintiff in *Zink*, Defendants contend Bucklew's claim is barred by the final judgment in *Zink* because Bucklew could have asserted the same as-applied challenge he presents here in that case. The Eighth Circuit acknowledged this issue arises in an "unusual situation," *Bucklew*, 783 F.3d at 1122 n.1, and Defendants have not adequately addressed the unique issues raised by the differences between the claims raised in *Zink* and this case.[5]

---

[4] In this regard, the Court notes that both *Zink* and *Glossip* require a plaintiff in Bucklew's position to plead that the State's chosen method of execution creates a demonstrated and substantial risk of severe pain in light of their medical condition and that an alternative method of execution will significantly reduce that risk. Defendants suggest the mere fact that Bucklew raised any challenges to the use of lethal injection demonstrates that Bucklew knew enough to advance his present claim. Bucklew argues that the State should not be able to deprive a prisoner of the information necessary to plead such allegations while at the same time permitting the State to seek dismissal of the claim because the information is not pleaded or contending the effort to obtain necessary evidence/confirmation means the limitation period has commenced. The novelty of these issues presents an additional reason for the Court to address them on a more complete Record.

[5] The Court also notes that Defendants have relied in part on the dissenting opinions from two Supreme Court cases without advising the Court that they were relying on dissents. (*See* Doc. 55, p. 9 (citing *Elgin v. Department of the Treasury*, 132 S. Ct. 2126, 2147 (2012) (Alito, J., dissenting) and *Magwood v. Patterson*, 561 U.S. 320, 345-46 (2010) (Kennedy, J., dissenting).)

"The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). A claim is precluded by a final judgment in another case if "(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action." *Yankton Sioux Tribe v. United States Dep't of Health & Human Servs.*, 533 U.S. 634, 639 (8th Cir. 2008) (quotation omitted). With respect to the fourth component, "'whether a second lawsuit is precluded turns on whether its clams arise out of the same nucleus of operative facts as the prior claim.'" *Magee v. Hamline Univ.*, 775 F.3d 1057, 1059 (8th Cir. 2015) (per curiam) (quoting *Costner v. URS Consultants, Inc.*, 153 F.3d 667, 673 (8th Cir. 1998)). The second lawsuit need not assert the same legal theory: the question is whether the same wrong is to be redressed by both actions. *Costner*, 153 F.3d at 674. Moreover, "'claim preclusion does not apply to claims that did not arise until *after* the first suit was filed . . . .'" *Magee*, 775 F.3d at 1059 (quoting *Baker Grp., L.C. v. Burlington N. Santa Fe Ry. Co.*, 228 F.3d 883, 886 (8th Cir. 2000)). As set forth earlier in connection with Defendants' statute of limitations arguments the Record does not conclusively establish when Bucklew's as-applied challenge accrued, so the Court cannot presently determine whether the as-applied challenge is barred by the final judgment in *Zink*.[6]

---

[6] Bucklew's intimation that Count I is not barred because it was filed before *Zink* was final, (Doc. 61, pp. 26-27), must be rejected. "The general rule is that, as between actions pending at the same time, the first judgment to become final is conclusive in the other action as *res judicata*, even if the first judgment was not final when the second action was filed." *Bucklew*, 783 F.3d at 1122 n.1.

## B. Count II – Deliberate Indifference to Bucklew's Serious Medical Needs[7]

The gravamen of Count II is that Bucklew will experience pain and suffering unless certain changes are made in the lethal injection protocol, and the failure to make these changes constitutes a deliberate indifference to his serious medical needs in violation of the Eighth Amendment. Defendants contend this Court's prior decision in *Zink* – which was affirmed on appeal – forecloses Bucklew's claim. Bucklew insists his present claim is different from the one he presented in *Zink*. The Court agrees with Bucklew that the claim is different in that he presents it as an as-applied claim, but also agrees with Defendants that he has failed to state a claim.

Count II contends Defendants have not taken what he characterizes as reasonable and necessary steps to assess and address the risks Bucklew faces in light of his medical condition, (Doc. 53, ¶¶ 152-53), and do not have a contingency plan in the event something goes awry during the execution. (Doc. 53, ¶ 155.) Bucklew alleges these facts "constitute deliberate indifference to [his] serious medical needs, in violation of the Eighth Amendment" and will cause him to suffer "needless harm and extreme suffering . . . ." (Doc. 53, ¶¶ 158-59.) Count II thus challenges the lethal injection protocol, and must satisfy the pleading requirements set forth in *Zink* and *Glossip*. This point is best demonstrated in *Zink*, where the Court of Appeals ruled that the deliberate indifference claim was not legally viable for the same reasons that the cruel and unusual punishment claim had not been stated. *Zink*, 783 F.3d at 1107.

This means that Bucklew must allege sufficient facts to indicate that the staffing and planning procedures Defendants intend to utilize will create a substantial risk of serious harm;

---

[7] The Suggestions in Support incorporate Defendants' arguments presented in support of their Motion to Dismiss the Third Amended Complaint, and adds little to them. (Doc. 55, p. 2.) Bucklew has followed suit in his Suggestions in Opposition. The Court has thus relied on the parties' arguments advanced in connection with the Motion to Dismiss the Third Amended Complaint.

14

that is, Bucklew must "plead more than just a hypothetical possibility that [his] execution *could* go wrong, resulting in severe pain to [him]." *Id*. at 1098-99. Instead, he must allege facts that these aspects of the protocol are "sure or very likely to cause serious illness and needless suffering." *Id*. at 1099 (quotation omitted); *see also Glossip*, 135 S. Ct. at 2737. The Fourth Amended Complaint does not do this; all that is alleged is that the procedures employed are insufficient, but it does not allege what procedures should be employed (other than not performing an execution). Count II simply states, in a conclusory manner, that the State's procedures violate the Eighth Amendment – but conclusory allegations are insufficient to satisfy the pleading standard.

## C. Count III – First Amendment

Defendants contend *Zink* also establishes that Bucklew has failed to state a First Amendment claim. Bucklew again insists his claim is different from the one he presented in *Zink*, but even if he is correct this observation does not change the rationale employed by the Eighth Circuit in holding that a claim of this type is not cognizable.

Bucklew alleges Defendants' refuse to provide him information about "the purported pharmacist or the pharmacy that prepares the drug, or how or when the drug is prepared, or where or when the active pharmaceutical ingredient is obtained, or whether the pharmacy is registered with or has even been inspected by the [FDA] or even whether the drug has been subjected to any testing for safety, potency or purity." (Doc. 53, ¶ 161.) He further alleges that his First Amendment rights are violated if he is not given "access to information about the safety, purity, potency and origins of the drug." (Doc. 53, ¶ 164.) *Zink* involved virtually the same claim. *Zink*, 783 F.3d at 1111 ("The prisoners also argue that they stated a claim that the First Amendment entitles them to information regarding the source of the drug to be used in their

15

executions."). Bucklew suggests his claims are different from those presented in *Zink*; the Court is not convinced,[8] but even if Bucklew is correct he does not explain why this difference justifies a different outcome, and the Court discerns no reason that it should. There is no need to repeat the Eighth Circuit's rationale: it is enough to note that the Eighth Circuit rejected the claim in *Zink*, 783 F.3d at 1111-13, and the differences in the type of information sought do not distinguish the rationale or justify a different result. *Zink* establishes that Bucklew's First Amendment claim is not cognizable, and for that reason Count III must be dismissed.

### III. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss, (Doc. 55), is **GRANTED IN PART** and **DENIED IN PART**. Counts II and III are dismissed for failure to state a claim. Defendants shall file an Answer to Count I within twenty-eight days of this Order.

**IT IS SO ORDERED**.

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
DATE: January 29, 2016    UNITED STATES DISTRICT COURT

---

[8] Bucklew contends that "[t]he *Zink* plaintiffs complained of secrecy surrounding the execution team members" while he is complaining about "the secrecy surrounding the compounded drug posed a special risk to him . . . and that such secrecy prevented him from petitioning the government for redress of grievances." (Doc. 50, p. 24.) As outlined in the text, there is at least significant overlap between the First Amendment claim asserted in *Zink* and the First Amendment claim asserted in this case.