Case No. 4:14-CV-8000-BP
_____

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
_____

RUSSELL BUCKLEW,

Plaintiff,

v.

GEORGE LOMBARDI et al.,

Defendants.
_____

ANSWER TO FOURTH AMENDED COMPLAINT
_____


**CHRIS KOSTER**
Attorney General


**MICHAEL J. SPILLANE**
Assistant Attorney General
Missouri Bar No. 40704
P.O. Box 899
Jefferson City, MO 65102
Telephone: (573)751-1307
Facsimile: (573)751-3825
Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI

RUSSELL BUCKLEW,       )
                       )
        Plaintiff,    )
                       )
        vs.            )     Case No. 4:14-CV-8000-BP
                       )
GEORGE A. LOMBARDI,   )
DAVID A. DORMIRE,     )
And                       )
TERRY RUSSELL,       )
                       )
        Defendants.   )

## ANSWER TO FOURTH AMENDED COMPLAINT

### Introduction

1. Defendants admit.

2. Defendants admit.

3. Defendants admit

4. Defendants deny. This paragraph attributes "excruciating" pain to any execution method. It does not specifically limit the allegation to lethal injection and in that sense goes beyond Bucklew's alleged evidence. And the allegation contradicts Bucklew's later assertions that gas would significantly reduce a risk of pain.

5. Defendants deny. This paragraph attributes a high risk of choking, bleeding, gasping, and coughing to an execution, without specifying the method of execution. It does not limit the claim to execution by

lethal injection. Therefore, this paragraph like the previous paragraph goes beyond Plaintiff's alleged evidence, and contradicts Plaintiff's later assertion that gas would significantly reduce a risk of pain.

6. Defendants admit that there is a risk that a lethal chemical, however introduced into a person who has vascular malformations, may not circulate as it would in a person who does not have vascular malformations. Defendants deny the legal conclusion that execution by lethal injection, particularly by pentobarbital of undisclosed provenance, "is highly likely to violate Mr. Bucklew's rights under the Eighth Amendment." That is a legal conclusion, not a fact that may be admitted or denied in an answer.

7. Defendants deny. This paragraph does not set out facts that may be admitted or denied but instead asserts the legal conclusion that Bucklew's execution under Missouri's protocol would violate the Eighth Amendment.

8. Defendants admit.

9. Defendants admit.

10. Defendants deny due to lack of knowledge of the validity of subjectively reported symptoms.

2

11.    Defendants admit Bucklew has not had a CT scan or MRI in the past five years. Defendants deny the remainder of the paragraph. The remainder of the paragraph also contains a legal conclusion that need not be admitted nor denied.

12.    Defendants admit that Bucklew received an MRI in 2010, and that a treating physician issued a report from which Bucklew quotes. Defendants do not admit the contents of the report are accurate, particularly that Bucklew has a severely compromised airway.

13.    Defendants admit that two of Bucklew's experts have provided sworn statements that Bucklew's vascular malformations will cause a lethal chemical to not circulate properly during an execution. Defendants deny that this creates a great risk of prolonging the execution and causing Bucklew to suffer excruciating pain. This paragraph does not explicitly limit itself to execution by lethal injection. To the extent it does not, Defendants deny the paragraph in its entirety.

14.    Defendants admit both doctors allege in their affidavits that an examination is necessary to evaluate risks specific to Bucklew because of his vascular malformations that would occur during an execution by lethal injection. Defendants deny that an adequate examination would necessarily involve up to date medical imaging.

3

15.   Defendants admit that Dr. Zivot has examined Bucklew in prison, and spoken with Bucklew by phone since the examination. Defendants admit that Dr. Zivot's opinion addresses risks of hemorrhaging and risks from airway obstruction. Defendants do not admit that Bucklew's alleged airway obstruction could readily lead to choking and suffocation during an execution. Defendants also note that Bucklew phrases his paragraph in terms of an execution as opposed to an execution by lethal injection. Insofar as the paragraph refers to an execution in general, Defendants deny the paragraph in its entirety.

16.   Defendants admit that Dr. Zivot's opinion addresses the points the paragraph alleges that the opinion addresses.

17.   Defendants admit that in some previous executions the Department of Corrections has used methylene blue to flush intravenous lines.

18.   Defendants admit that Bucklew is unique and the claims raised in this suit are separate and distinct from the more general claims raised by other offenders. This paragraph refers to executions, as opposed to executions by lethal injection. Defendants deny that Bucklew suffers grave risks of pain and suffering during an execution by lethal injection.

4

19.   Defendants admit that Bucklew bases his claim on his specific and unique medical condition and that he alleges execution with any lethal chemical will create a substantial risk of hemorrhaging, choking, and suffocation amounting to cruel and unusual punishment. Defendants do not admit that *compounded* pentobarbital would be used in an execution of Bucklew or that its affects would be any different than *manufactured* pentobarbital. Defendants deny that a very substantial risk of the harms Bucklew alleges would result from lethal injection. And Defendants deny that executing Bucklew by lethal injection would be cruel and unusual punishment in violation of the Eighth Amendment. That is a legal conclusion.

20.   Defendants admit that Bucklew makes only an Eighth Amendment challenge based on his specific infirmities, not a general Eighth Amendment challenge to Missouri execution procedures. Beyond that, this paragraph consists of legal conclusions that need not be admitted nor denied.

21.   Defendants do not admit nor deny that it is uses manufactured as opposed to compounded pentobarbital in executions. The answer to that question is privileged based on Missouri law that protects the identity of the suppliers of execution chemicals and the federal

5

common law state secrets privilege. The answer is also not relevant to this litigation as Bucklew alleges lethal injection by *any* chemical would be a violation of the Eighth Amendment as applied specifically to him because of his unique medical condition. The allegation that the claims Bucklew raised in the Zink litigation, based on the use of compounded pentobarbital were moot when raised, is a legal conclusion that need not be admitted nor denied.

22. Defendants do not admit allegations as to what access Missouri or other states have to pentobarbital. Missouri cannot know what access other states have, and the extent of Missouri's access is privileged, because it could lead to the identity of suppliers, and is irrelevant because this suit alleges *all* lethal injection chemicals would violate the Eighth Amendment as applied to Bucklew. Because of privilege and lack of relevance Defendants do not admit nor deny they have a large stockpile of pentobarbital, or that the alleged existence of an large stockpile indicates Defendants use manufactured as a opposed to compounded pentobarbital in executions.

23. Defendants do not admit nor deny that Defendants' answers in other litigation, not admitting nor denying that the chemical used in lethal injections is compounded as opposed to manufactured

6

pentobarbital, indicates that manufactured pentobarbital is used. That answer is privileged and not relevant to this litigation.

24. Defendants do not admit nor deny any arguments made by Defendants in this case indicate whether Defendants use compounded or manufactured pentobarbital.

25. Defendants deny. This paragraph contains speculation, and legal analysis about the ways Bucklew thinks Missouri might be obtaining pentobarbital, and irrelevant criticism of the ways Bucklew speculates Missouri may be obtaining pentobarbital.

26. Defendants admit that Bucklew's claim is limited to himself because of his medical condition, and admit that his claim extends to any drug used in execution by lethal injection. Defendants deny that lethal injection by "any drug creates a very substantial risk that Bucklew will suffer a prolonged and tortuous execution in violation of the Eighth Amendment's ban on cruel and unusual punishment." The latter assertion is a legal conclusion.

27. Defendants deny that Bucklew "needs a complete medical exam with appropriate imaging studies" to proceed with his claim.

28. Defendants deny that Bucklew "must be provided a high resolution CT scan of his chest, neck and brain, as well as an angiogram to

assess the vascularity of Mr. Bucklew's hemangiomas" in order to better assess his claim.

29. Defendants, due to lack of knowledge, do not admit that lethal gas is a feasible alternative method of execution that is highly likely to reduce a significant risk of severe pain as it bypasses Bucklew's circulatory system. Defendants do not necessarily accept that there is a risk of severe pain from executing Bucklew by lethal injection or that lethal gas necessarily somehow bypasses Bucklew's circulatory system.

30. Defendants admit that lethal injection is authorized by Missouri Statute. Presumably Bucklew meant to write lethal gas here, which is also authorized by Missouri Statute. Defendants deny that they have an execution chamber available for the use of lethal gas. Bucklew has enclosed a photograph of a gas chamber that is used as a museum exhibit and has not been used in an execution since 1965, as support of his claim that Missouri has a gas chamber available for use. Defendants admit that Bucklew quotes from a speech by the Missouri Attorney General saying that a gas chamber is an option to enforce Missouri law. Defendants deny that the speech claims or establishes that execution by gas is a feasible and readily available method of execution at this time.

## Jurisdiction and Venue

31.    Defendants admit.

32.    Defendants admit.

## Parties

33.    Defendants admit.

34.    Defendants admit.

35.    Defendants admit.

36.    Defendants admit.

37.    Defendants admit.

38.    Defendants deny. Terry Russell is no longer the Warden at ERDCC.

39.    Defendants deny. Terry Russell is no longer the Warden at ERDCC.

40.    Defendants admit.

# FACTUAL BACKGROUND

## Russell Bucklew's Medical Condition

41.    Defendants admit that Bucklew has had problems with hemangioma throughout his life. Defendants do not admit the veracity of all his alleged subjective symptoms.

42.    Defendants admit.

43.    Defendants admit.

44.    Defendants admit.

45. Defendants admit only that the quoted material is a quotation of a doctor's finding. And Defendants deny, due to lack of knowledge, that Bucklew cannot sleep lying flat as the tumor then completely obstructs his airway.

46. Defendants admit this is consistent with a doctor's report, not that the report is necessarily accurate.

47. Defendants admit.

48. Defendants admit this is the contents of a doctor's report, not that the report is necessarily accurate.

49. Defendants admit this is consistent with a doctor's report, not that the report is necessarily accurate.

50. Defendants admit this is consistent with a doctor's report, not that the report is necessarily accurate.

51. Defendants admit this is consistent with a doctor's report, not that the report is necessarily accurate.

52. Defendants admit this is consistent with a doctor's report, not that the report is necessarily accurate.

53. Defendants admit this paragraph is consistent with medical reports.

54. Defendants admit this is consistent with medical reports.

55. Defendants do not admit the veracity of subjectively reported symptoms.

56. Defendants do not admit the veracity of subjectively reported symptoms.

57. Defendants do not admit the veracity of subjectively reported symptoms.

58. Defendants deny. Defendants do not have sufficient information to conclude that Bucklew's alleged anxiety and mood swings have "grown dramatically worse since May, 2014."

59. Defendants deny as to Bucklew's alleged recent symptoms. Those symptoms, such as hallucinations, flashbacks, insomnia, and uncontrollable crying are subjective symptoms that rely on Bucklew's reporting.

## **Missouri's Lethal Injection Protocol**

60. Defendants admit with the exception of the characterization "No medical personnel are close at hand." Defendants deny that phrase.

61. Defendants admit.

62. Defendants admit with the exception that methylene blue would not be used in executing Mr. Bucklew.

63. Defendants admit.

64. Defendants admit with the exception of the characterization that "No medical personnel are at hand."

65. Defendants admit.

66.  Defendants admit.

67.  Defendants deny. This is a legal conclusion.

68.  Defendants deny assertions about an Oklahoma execution due to lack of knowledge. Defendants deny that the alleged problems in Oklahoma could occur in Missouri with respect to Bucklew or any other Missouri offender.

69.  Defendants deny. It is speculation that Bucklew's execution would not be rapid and painless like all other Missouri executions using pentobarbital.

70.  Defendants deny that the non-use of dye to flush an execution line increases the risk of pain to an offender during an execution. Bucklew alleges that the Department of Corrections has not possessed dye to aid in flushing lines during executions since February 2015. But Missouri has performed rapid and painless executions since February 2015.

71.  Defendants deny. Specific adjustments in Missouri's execution protocol to address Bucklew's concerns have not been adopted at this time. Defendants deny that speaking to Bucklew's counsel about Bucklew's concerns before the scheduled May 2014 execution "actually increased the risk of an extended, excruciating procedure

12

that will be visually horrifying to witnesses and tortuous for Mr. Bucklew."

72. Defendants admit.

73. Defendants admit only that the medical history form is as described, not that no other consideration is or will be given to Bucklew's condition.

74. Defendants deny the alleged inadequacy of the Missouri protocol as applied to Bucklew.

75. Defendants admit medical personnel will be observing from the support room, but deny that they will not be "at hand."

## Affidavit of Dr. Jamroz

76. Defendants admit.

77. Defendants admit the paragraph reflects Dr. Jamroz's opinion, not that the opinion is necessarily accurate.

78. Defendants admit the paragraph reflects Dr. Jamroz's opinion, not that the opinion is necessarily accurate.

79. Defendants admit the paragraph reflects Dr. Jamroz's opinion, not that the opinion is necessarily accurate.

## Affidavit of Dr. Joel Zivot

80. Defendants admit.

81. Defendants admit Dr. Zivot examined Bucklew and studied his medical records. Defendants do not admit lighting or facilities for the examination were inadequate.

82. Defendants admit that this paragraph is consistent with Dr. Zivot's opinion, not that the opinion is necessarily accurate.

83. Defendants admit that insofar as this paragraph recites the opinion of Dr. Zivot it accurately recites that opinion. Defendants do not admit Bucklew has an increased risk of drug interactions.

84. Defendants deny. Bucklew asserts that the Department of Corrections has not even possessed methylene blue since February 2015. Therefore, methylene blue could not pose a risk of increasing Bucklew's blood pressure during an execution.

85. Defendants deny that *any* rise in blood pressure raises a *great* risk of hemorrhaging.

86. Defendants deny. Bucklew lists a speculative chain of events he alleges might happen if methylene blue is used. But Bucklew earlier alleged the Department of Corrections has not possessed methylene blue since February 2015.

87. Defendants deny. It is speculative, as opposed to highly likely that Bucklew's vascular malformations will inhibit the effectiveness of pentobarbital.

14

88.     Defendants deny. It is speculation that the effectiveness of pentobarbital will be reduced or delayed, and that these alleged events would create a substantial risk of a prolonged and extremely painful execution.

89.     Defendants deny. The alleged risk of an adverse drug interaction is speculative, as is the conclusion that the alleged risk has greatly increased in the last year.

90.     Defendants deny that there is a substantial risk that Bucklew will suffer an extremely painful death from lethal injection by pentobarbital. That is speculation.

91.     Defendants deny. It is speculation that a compounded drug is less safe, potent, or pure, than a manufactured drug. This assertion is also irrelevant as Bucklew asserts the use of any lethal chemical would be unacceptable to him.

92.     Defendants deny.

93.     Defendants admit.

94.     Defendants admit.

95.     Defendants deny insofar as this paragraph characterizes the conduct of the Department of Corrections as "indifferent" and alleges Bucklew's counsel were hindered by lack of resources and

alleged inability of Dr. Zivot to examine Bucklew in a "proper" medical setting.

96.    Defendants admit.

97.    Defendants admit Dr. Zivot recorded Bucklew's blood pressure as 140/100. Defendants do not admit that such a reading shows "severe hypertension" or that the blood pressure reading was caused by the stress of a scheduled execution.

98.    Defendants admit this paragraph conforms to Dr. Zivot's opinion, not that the opinion is necessarily accurate.

99.    Defendants admit this paragraph conforms to Dr. Zivot's opinion, not that the opinion is necessarily accurate.

100.   Defendants admit that this paragraph conforms to Dr. Zivot's opinion, not that the opinion is necessarily accurate.

101.   Defendants admit that this is Dr. Zivot's opinion. Defendants deny the opinion is necessarily accurate. It is speculative to conclude that Bucklew would be at great risk of choking and suffocating during an execution. And it is speculative to conclude measures to protect his airway would cause instant bleeding and make matters worse.

102.   Defendants admit that this is Dr. Zivot's opinion, not that the opinion is necessarily correct.

103.  Defendants admit that this is Dr. Zivot's opinion, not that the opinion is necessarily correct.

104.  Defendants admit that this is Dr. Zivot's opinion, not that the opinion is necessarily correct.

105.  Defendants admit.

106.  Defendants admit that this is Dr. Zivot's opinion, not that the opinion is necessarily correct.

107.  Defendants deny. This conclusion is based on speculation.

108.  Defendants deny insofar as the paragraph alleges Bucklew's execution by lethal injection would be cruel and unusual punishment in violation of the Eighth Amendment. That is a legal conclusion, not a fact. The conclusion is also based on speculation.

## Nature of Bucklew's Claims, Separate and Distinct from Zink

109.  Defendants admit.

110.  Defendants admit.

111.  Defendants admit with the exception of the legal conclusion that the decision of the Court of Appeals clearly suggests that "Mr. Bucklew's situation is entirely different than the other prisoners challenging execution procedures."

112.  Defendants admit that Bucklew, unlike all other offenders so far, except Ernest Johnson, bases his challenge on a unique medical

condition and that Bucklew's challenge extends to any drug used in lethal injection. Defendants do not admit that there is a great likelihood Bucklew will suffer extreme and tortuous pain during an execution or that there is a grave risk of that happening.

## Mr. Bucklew's Conditioning Worsening in the Past 12 Months

113. Defendants deny. Dr. Zivot's statement does not say that Mr. Bucklew's hemangioma is causing stridor, but rather that stridor is common when a mass narrows or obstructs the airway. Dr. Zivot does not say that the hemangioma has increasingly obstructed the airway, but says that without an examination it is impossible to determine if that has happened. Dr. Zivot does not say that Bucklew frequently has trouble speaking because of the growth of the hemangioma, but instead says that counsel informed Dr. Zivot that in their opinion Bucklew's speech is often muddled and he sometimes has difficulty speaking clearly. Dr. Zivot stated that Bucklew's speech is impaired and that it is almost certainly the result of the hemangioma.

114. Defendants admit.

115. Defendants deny. Defendants do not admit that Bucklew's psychiatric condition has markedly deteriorated.

116. Defendants deny. Defendants do not admit the truth of Bucklew's self-reported symptoms.

117. Defendants deny. Defendants do not admit the alleged risk of adverse drug reactions during an execution.

118. Defendants deny. Defendants admit that Bucklew is listing drugs in a medical report made some time before filing the complaint. Defendants do not admit the specific purpose alleged for each drug as it applies to Bucklew.

119. Defendants deny. Defendants do not admit the truthfulness of Bucklew's reported hallucinations, or intrusive thoughts, or that he has post-traumatic stress disorder.

120. Defendants deny. Defendants do not admit that Bucklew suffers from troubling side effects from medications, including Serotonin Syndrome.

121. Defendants deny. Bucklew alleges the Department of Corrections has not possessed methylene blue since February 2015. Therefore, it could not interact with any of the drugs Bucklew alleges it would.

122. Defendants deny.

**Missouri's On-the-Fly Adjustments to Protocol Insufficient**

123. Defendants deny. Proposed changes were not hasty or ill-considered and did not increase the risk to Bucklew.

19

124. Defendants admit with the exception of the claim that the execution team is trained only to carry out executions with the use of medical dye in the execution lines. Missouri has conducted rapid and painless executions that do not use dye since February 2015.

125. Defendants deny. Dye is not essential to the execution procedure and Missouri has carried out rapid and painless executions that do not use dye since February 2015.

126. Defendants deny. Defendants do not admit nor deny currently using compounded pentobarbital. But the three executions in which Missouri has admitted using compounded pentobarbital in November 2013, December 2013, and January 2014, were like all Missouri executions using pentobarbital, rapid and painless.

127. Defendants deny. Any information about the source of pentobarbital is privileged. Such information is also irrelevant as Bucklew alleges the use of any chemical in his execution by lethal injection would be unconstitutional.

128. Defendants admit that the Defendants offered to have the anesthesiologist position the angle of the gurney in a proper position. Defendants deny that no adjustment would be sufficient "as the stress of the execution may unavoidably cause Mr. Bucklew's hematoma's to rupture, leading to hemorrhaging, bleeding in his

throat and through his facial orifices, and coughing and choking on his own blood."

### Diagnostic Imaging Studies Essential
### to Evaluate and Establish Risks

129. Defendants deny.

130. Defendants admit.

131. Defendants deny.

132. Defendants deny.

133. Defendants deny. An execution is not a medical procedure.

134. Defendants deny. An execution is not a medical procedure.

135. Defendants deny. An execution is not a medical procedure.

136. Defendants admit that they plan to carry out an execution to its conclusion, not to resuscitate Bucklew part of the way through the execution.

137. This paragraph contains several different allegations. Insofar as Bucklew alleges that Defendants are not prepared to deal with unanticipated events during an execution, Defendants deny. Insofar as Bucklew alleges his execution is made more risky because of the use compounded pentobarbital Defendants neither admit nor deny the use of compounded pentobarbital in current Missouri executions, but defendants assert all Missouri executions using pentobarbital

have been rapid and painless, and it is speculative to conclude Bucklew's would not also be rapid and painless. Defendants will not provide information that could lead to the identity of a supplier, but Defendant's deny any form of pentobarbital used in a Missouri execution has been, or will be, anything but safe, potent, and pure.

138. Defendants deny. Bucklew is not at an extreme risk of, nor is he highly likely to experience a prolonged, excruciating, and tortuous execution.

139. Defendants deny that Bucklew has complied with pleading requirements or this Court's directive merely by proposing lethal gas as an alternative method of execution. Defendants deny that Bucklew's paraphrasing of a newspaper article about a speech by the Attorney General establishes that the Department of Corrections is prepared to implement execution by lethal gas.

140. Defendants deny. All Missouri executions using pentobarbital have been rapid and painless, and a Board certified Anesthesiologist has participated in the process. It is speculation to argue that Bucklew's execution would not also be rapid and painless.

141. Defendants admit that Dr. Dershwitz has indicated he will no longer act as an expert witness in challenges to death penalty protocols, and that at this moment Defendants have not retained

another expert witness. Defendants admit that Bucklew does not at this time have an appointed expert. Defendants do not admit experts are "essential" to the parties in the case.

142. Defendants deny.

143. Defendants have no knowledge of Dr. Zivot's expenses or fees, or their payment, or Bucklew's intention to have him appointed.

144. Defendants deny. Bucklew has not complied with the pleading requirements in *Glossip* and the stay of execution does not imply that he has.

145. Defendants deny. The claim accrued many years ago. He could have raised it many years ago. But he chose not to raise it until after a date was set for his execution.

146. Defendants deny. Bucklew is responsible for his failure to bring this suit in a timely manner.

147. Defendants admit Bucklew quotes a 2010 report that a complex facial mass existed. Defendants do not admit that Bucklew's airway was severely compromised in 2010. But if that is so, it makes the case that Bucklew's claim accrued years ago.

148. Defendants deny that they have failed to assess or monitor Bucklew's tumors since 2010.

149. Defendants deny. Bucklew's complaint accrued years ago. He filed a grievance based on his hemangiomas allegedly making his execution violate the Eighth Amendment in 2008, and a suit in the Missouri Supreme Court trying to force the public defender system to fund experts for such litigation in 2009. He could have filed in this Court in a timely manner and asked for funding for experts as he does now.

## Count 1

**Claims Against all Defendants Under the Cruel and Unusual Punishment Clause of the Eighth Amendment Based on the Use of Missouri's Lethal Injection Protocol on Mr. Bucklew**

150. Defendants deny.

145. (Bucklew starts numbering paragraphs at 145, after paragraph 150). Defendants deny. It is more likely the execution will be rapid and painless like all other Missouri executions using pentobarbital.

146. Defendants deny. There is no reason to believe Bucklew's psychiatric condition will prevent his execution from being rapid and painless.

147. Defendants deny. Bucklew's execution will be a lawful execution, not an unregulated experiment.

148. Defendants deny. Bucklew's execution will likely be rapid and painless.

149.   Defendants deny.

150.   Defendants deny. Bucklew does not meet the pleading requirements of *Glossip* or *Zink* by making a conclusory assertion that lethal gas is feasible and available, and will significantly reduce a risk of severe pain to Bucklew.

151.   Defendants deny. This is a legal conclusion.

## Count II and Count III

152-166. Defendants object based on relevance. Paragraphs 152-166 are offered in support of claims this Court has already dismissed from this suit.

152.   Defendants deny with the exception that Defendants have not conducted recent imaging studies on Bucklew as those would have no value.

153.   Defendants deny. This paragraph is a legal conclusion.

154.   Defendants admit in general that they must provide for Bucklew's medical needs, but deny that Bucklew's execution is a medical procedure or that it should be treated like one.

155.   Defendants deny the paragraph with the exception of the claim that there is no plan or protocol to resuscitate Bucklew during the execution. Defendants plan to execute Bucklew, not begin the process then resuscitate him.

156. Defendants plan to execute Bucklew, not resuscitate him during the execution. Defendants deny this is improper.

157. Defendants deny. Difficulties with an execution in another state that uses a different protocol with different personnel does not change the fact that all Missouri executions using pentobarbital have been rapid and painless, and there is no real reason to believe Bucklew's execution would not also be rapid and painless.

158. Defendants deny. There have been no "failures and omissions" and an execution is not a medical procedure which can give rise to a deliberate indifference to a medical needs claim.

159. Defendants deny. Defendants have not and will not cause needless and extreme suffering to Bucklew by carrying out his lawful execution.

160. Defendants deny.

161. Defendants do not provide information on the supplier or suppliers of pentobarbital or the specific type of pentobarbital used. Such information is privileged and its disclosure is barred by law.

162. Defendants deny. This paragraph is an erroneous legal conclusion.

163. Plaintiffs' claims are speculation and would be speculation regardless of whether Bucklew receives privileged and confidential information that would lead to the identity of suppliers.

164.     Defendants deny. Bucklew has no First Amendment right or Fourteenth Amendment right to force the Defendants to disclose information about execution chemicals to him.

165.     Defendants deny. Bucklew has no First Amendment right or Fourteenth Amendment right to force the Defendants to disclose information about execution chemicals to him.

166.     Defendants deny. This paragraph is a statement of erroneous legal conclusions.

## **PRAYER FOR RELIEF**

1.     Defendants deny. Bucklew is entitled to no relief.

2.     Defendants deny. Bucklew is entitled to no relief.

3.     Defendants deny. Bucklew is entitled to no relief.

4.     Defendants deny. Bucklew is entitled to no relief.

Respectfully submitted,
**CHRIS KOSTER**
Attorney General

/s/ Michael Spillane
MICHAEL SPILLANE
Assistant Attorney General
Missouri Bar # 40704
P.O. Box 899
Jefferson City, MO 65102
(573) 751-1307
(573) 751-2096 Fax
mike.spillane@ago.mo.gov
Attorneys for Defendants

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed electronically on this 11th day of April, 2016. This Court's electronic filing system should serve counsel for Mr. Bucklew.

/s/ Michael Spillane
Assistant Attorney General