IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| RUSSELL BUCKLEW,<br>    *Plaintiff,* | )<br>)<br>) |
| v. | )   Case No. 14-08000-BP |
| GEORGE A. LOMBARDI,<br>DAVID A. DORMIRE,<br>And<br>TERRY RUSSELL,<br>    *Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S BRIEF ON THE SCOPE OF DISCOVERY**

Plaintiff Russell Bucklew, by and through his counsel, submits the following brief addressing the scope of discovery, as directed by this Court's Order of June 8, 2016. (Doc. 86). The primary factors determining the scope of discovery in this case – and, indeed, in any case – are the applicable legal principles, the nature of the claims asserted and the broad standards of Federal Rule of Civil Procedure 26.

Mr. Bucklew is cognizant of this Court's desire to handle discovery in an efficient manner, with the parties focusing their efforts on relevant issues and the most productive areas of inquiry. At the same time, Mr. Bucklew is also mindful that he shoulders a weighty burden of proof and must satisfy the demanding standards for an Eighth Amendment claim. Due process requires that Bucklew be permitted to discover the facts that are necessary to his claims. To deny him an adequate opportunity to develop his case would give rise to the very real risk that Bucklew's Eighth Amendment claim could be denied solely because he was unable to conduct adequate discovery. For this reason, Mr. Bucklew respectfully requests that this Court allow him to conduct discovery into the areas listed below, in section IV, *infra*, as well as into other relevant areas that are logically connected and whose importance becomes apparent during the course of discovery.

1

## I. *Glossip v. Gross* and Legal Principles Applying to Eighth Amendment Claims

As this Court noted, the Supreme Court issued its decision in *Glossip v. Gross*, 135 S. Ct. 2726 (2015), after Mr. Bucklew filed his Third Amended Complaint, leading to a subsequent amendment and the filing of his Fourth Amended Complaint. (Order of September 21, 2015, Doc. 52 at 7). The *Glossip* decision clarified or extended the holding of the Supreme Court's 2008 decision in *Baze v. Rees*, 553 U.S. 35 (2008), and held that a petitioner challenging a method of execution under the Eighth Amendment must plead and prove two separate but related sets of facts: (1) the great likelihood of serious illness and suffering caused by the *present* method of execution, and (2) the significantly lesser risk posed by an available, *alternative* method of execution. *See Glossip*, 135 S. Ct. at 2737-38. In other words, the Petitioner must develop and prove facts sufficient to shoulder both parts of his burden – the significant risks posed by the current method versus the lesser risks of a proposed or alternative method of execution.

The Supreme Court defined the standards for both parts of an Eighth Amendment claim, stating the Petitioner must show that the current method of execution "presents a risk that is '*sure or very likely to cause serious illness and needless suffering*,' and give[s] rise to 'sufficiently imminent dangers.'" *Glossip*, 135 S. Ct. at 2737 (quoting *Baze*, 553 U.S. at 50) (emphasis added). With respect to the second part of the Eighth Amendment claim, the Petitioner must propose a "*known and available alternative* method of execution" that will "*significantly reduce[] a substantial risk of severe pain.*" *Id*. (citing *Baze*, 553 U.S. at 52) (emphasis added).

This Court discussed the *Glossip* standard in its Order of September 21, 2015, noting that Plaintiff must both plead and prove these elements. (Order of Sept. 21, 2015, Doc. 52 at 7; *see also* Order of January 29, 2016, Doc. 63 at 6). This Court concluded that, in Bucklew's Fourth Amended Complaint, he satisfied the *Glossip* standard with regarding to pleading. This Court

2

rejected Defendants' argument that lethal gas "presents just as much risk of severe pain" as lethal injection, stating that such arguments were "issues of proof, not pleading." (Order of January 29, 2016, Doc. 63 at 9). The Court pointed out that Defendants were "free to allege and attempt to prove that lethal gas will not significantly reduce a substantial risk of severe pain, or that the use of lethal gas is not readily available." (Doc. 63 at 9).

The Court's observations underscore the necessity of discovery in this case. In the same vein, the Court made a similar point in an earlier Order, stating: "If Defendants deny Bucklew's contention that a particular method of execution is available or feasible, *discovery will commence on that issue. And, if such discovery reveals the availability or feasibility of a different, as-yet unpleaded method, there are procedures available to deal with such an eventuality…*" (Order of September 21, 2015, Doc. 52 at 10) (emphasis added). Clearly, adequate discovery is essential for Mr. Bucklew to be able to prove his claims and overcome defenses.

## II. Rule 26 Standards Applying to Discovery

The scope of federal discovery is broad; it encompasses "any matter that bears on, or that reasonably could lead to other matters that bear on, any issue that is or may be in the case." *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978). "Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Mr. Bucklew has challenged the DOC execution protocol, *as applied to him,* as violating the Eighth Amendment protection against cruel and unusual punishment. Federal common law disfavors state privileges in civil rights cases: "There is an especially strong interest in applying federal rules to actions with alleged § 1983 violations because of the significant federal interest in such cases." *Heilman v. Waldron*, 287 F.R.D. 467, 473 (D. Minn. 2012).

3

Mr. Bucklew submits that discovery should progress in this case just as it would in any other section 1983 case, with a focus on permitting both sides a fair opportunity to develop their claims or defenses.  As noted in *Hofer v. Mack Trucks, Inc.,* 981 F.2d 377 (8th Cir. 1992), Rule 26(b) of the Federal Rules of Civil Procedure "is widely recognized as a discovery rule which is liberal in scope and interpretation…." *Id*. at 380.

Mr. Bucklew recognizes that Rule 26(b) has been recently amended, with the amendment injecting a new consideration that the discovery not only be relevant but also "proportional to the needs of the case." Fed. R. Civ. P. 26(b).  Thus, discovery now encompasses any "non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake…." *Id*.  The subsection further states that: "Information within the scope of discovery need not be admissible in evidence to be discoverable." *Id*.

Although the newly amended version of Rule 26(b) has not been widely construed, some district courts have addressed it, finding that the requested discovery was indeed "proportional to the needs" of the particular case." *See, e.g., Krupnikovic v. Sterling Transportation*, 2016 WL 3349226 (D. Neb. 2016).

The focus on the requirement that the discovery be "proportional" is particularly apt here, given the importance of the issues at stake, namely Mr. Bucklew's right to be protected by the Eighth Amendment's prohibition on cruel and unusual punishment.  The issues presented in this case are clearly weighty and of immense importance to both sides. Thus, the emphasis on "proportionality" tends to underscore the need for the parties here to be afforded an adequate opportunity for discovery.  Just like any other litigant, Mr. Bucklew is entitled to the facts that are necessary to prove his claims. *See, e.g., Burns v. Hy-Vee, Inc.,* 2002 WL 31718432 (D. Minn.

4

2002) (plaintiff permitted broad discovery necessary to proving his claims); *Orbovich v. Macalester College*, 119 F.R.D. 411 (D. Minn. 1988) (plaintiff entitled to essential information to establish her claim).

### III. FACTUAL BACKGROUND OF CASE

The Court is very familiar with the facts underlying Plaintiff's claims, and they need not be reiterated here at any length. A couple points should be briefly mentioned, however. Mr. Bucklew's condition is progressive, and the cavernous hemangiomas continue to grow in size. Bucklew's head is filled with unstable, blood-filled tumors that continue to encroach in ever greater degrees on his airway, his eyes (the right eye, in particular), his nasal and sinus cavities and his right ear canal. For the past several weeks, he has suffered from partial paralysis of the right side of his face, and medical treatments to treat the paralysis have not alleviated it. Moreover, it is apparent from recent and repeated notations in Mr. Bucklew's medical records that the hemangiomas in his head have either invaded his cranial space or are otherwise putting pressure on his brain, resulting in recurrent headaches and other symptoms.

Mr. Bucklew's Eighth Amendment claim rests on the great likelihood that execution by lethal injection will inflict prolonged and excruciating pain and suffering, including coughing, choking and feelings of suffocation that result from hemorrhaging. The facial paralysis and the likelihood that the tumors have encroached upon or placed pressure upon Mr. Bucklew's brain are new symptoms that must be explored in discovery. Further, these symptoms underscore the necessity of adequate diagnostic imaging so that the full size, location and extent of tumor growth can be identified. Mr. Bucklew has had no diagnostic imaging whatsoever since 2010. At this point, the imaging is extremely outdated and of little use, particularly given the emergence of Mr. Bucklew's new symptoms.

## IV. SCOPE OF NECESSARY DISCOVERY

In the list below, Mr. Bucklew has identified, as fully as possible at this point, the areas in which he needs discovery. Plaintiff presently lacks any up-to-date information on present execution procedures or the current lethal injection protocol. Plaintiff does not know what lethal chemical (or chemicals) is being used (though Plaintiff suspects it is likely manufactured pentobarbital). Plaintiff also does not know the current composition of the execution team, the type of equipment presently being used or whether any monitors for blood pressure, heart rate or oxygen are available in the execution chamber. Plaintiff's counsel have conducted their own investigation of "alternative methods" of execution, but have been unable to obtain any information about such methods through proper requests under Missouri's Sunshine Law. In general, Defendants have refused to supply any information to Plaintiff for years, and Plaintiff is presently in the dark about almost everything concerning Missouri's present protocol and its ability to carry out an execution using any method other than lethal injection.

Although Plaintiff has alleged that any execution by lethal injection poses unacceptable and unconstitutional risks to him, in the event that Defendants contend that *no method* other than lethal injection is "available" or "feasible," Mr. Bucklew will be prepared to conduct discovery into all aspects of lethal injection, seeking ways that changes or alterations not previously known or contemplated might significantly reduce the risks to Mr. Bucklew and, hence, achieve compliance with the Constitution. Mr. Bucklew further notes that, given the severity of his medical condition, the training and qualifications of the execution team members are especially important, as the risks of a botched or excruciating execution are particularly great in his case.

Plaintiff anticipates seeking discovery into the following areas:

**I. Documents**

6

1. Execution Protocol

(a) documents relating to the development and adoption of the current lethal injection protocol, including each protocol developed since 2013 and all amendments and changes.

(b) documents relating to research conducted or consulted by the DOC or any person in their role as a member of the execution team or the protocol team regarding the chemicals to be used, the effects of those chemicals on the human body, the interactions of those chemicals with other chemicals or prescribed medications, or any other related research or information obtained by the Department of Corrections (DOC).

(c) documents concerning proposed, "feasible" or "alternative" lethal injection protocols that were researched, studied, or in any way considered as possible execution protocols by the DOC or any of its agents between November 1, 2013 and the present.

(d) documents concerning the complete execution protocol, including all phases of the execution, from the arrival of the team at the facility to the documentation and disposal of the lethal chemicals.

2. Lethal Chemicals

(a) complete and accurate list of lethal chemicals currently utilized by the State of Missouri to execute inmates.

(b) documents relating to the purchase and procurement of the lethal chemicals from November 1, 2013 to the present.

(c) documents relating to or containing the prescriptions written or obtained for the use or administration of any lethal chemical, and any requests for prescriptions or other documents reflecting attempts to obtain prescriptions of any lethal chemical from November 1, 2013 to the present.

7

(d) documents relating to the DOC inventory and expiration date of any lethal chemical from November 1, 2013 to the present.

(e) documents relating to the maintenance, storage, and security of any lethal chemical utilized by the State of Missouri in executions from November 1, 2013 to the present.

(g) copies of the packaging, labeling and inserts for any lethal chemical utilized in the current lethal injection protocol.

<u>3. Execution and Protocol Teams (Medical and Non Medical)</u>

(a) documents containing an accurate, current, and complete list of execution team members identified by role and moniker.

(b) documents relating to any disciplinary proceeding by any medical or academic board or court of law relating to any member of the execution or protocol team, with identifying information redacted.

(c) documents relating to any correspondence between the DOC and its agents and any members of the execution team or protocol team regarding the service agreement, application, qualification, and selection to serve as a member of the team, with identifying information redacted.

(d) documents relating to any legal claim involving any member of the execution or lethal injection team, with identifying information redacted.

(e) documents relating to or containing licenses or other documents permitting or forbidding any member of the lethal or execution team, DOC employee or agent to obtain, administer, or issue a prescription of any lethal chemical, with identifying information redacted.

(f) copies of any professional licenses, degrees, certifications, certificates, in the fields of medicine, pharmacology, pharmacy, or other similar discipline issued to any member of the execution and/or lethal injection team, with identifying information redacted.

(g) documents relating to the efforts to recruit, engage, contract with medical professionals to engage in carrying out executions in Missouri, including job descriptions, list of qualifications, salary/pay, benefits, expense reimbursements, remuneration, resumes/CVs of any candidates considered, with identifying information redacted.

(h) documents relating to or containing any communication from any drug manufacturer, wholesaler, pharmacy, or other supplier relating to any lethal chemical used by the State of Missouri in executions from November 1, 2013 to the present.

4. <u>Alternative Methods of Execution</u>

(a) documents reflecting or containing communication, research, regarding the feasibility of alternative methods of execution, including, but not limited to, lethal gas

(b) documents reflecting or containing communication, research, or information regarding the implementation of alternative methods of execution, including, but not limited to, lethal gas.

(c) documents reflecting or containing communications between DOC staff and/or agents and state officials in other states regarding the feasibility or implementation of alternative methods of execution, including, but not limited to, lethal gas.

(d) documents reflecting efforts to draft a protocol for an alternative method of execution, including, but not limited to, lethal gas.

5. <u>DOC Policies and Procedures</u>

9

(a) documents relating to or containing any internal DOC policies, procedures, rules, guidelines, or directives for the purchase, procurement, prescribing, administering, or using of any of the lethal chemicals from November 1, 2013 to the present.

(b) documents relating to training for execution team members, including the frequency of training, proficiency testing, and curriculum.

6. Fact and/or Expert Witnesses

(a) any findings, factual conclusions, and/or reports from any fact or expert witness utilized or endorsed by Defendants.

(b) any documents reflecting or containing contract, payment, services agreement, resume/CV, of any fact or expert witness utilized or endorsed by Defendants.

## II. Interrogatories

Mr. Bucklew will request to serve interrogatories on all Defendants, inquiring into the areas addressed in the documents and listed above, as necessary.

## III. Depositions

Mr. Bucklew will request to depose all medical members of the execution team and the protocol team, any fact or expert witness endorsed by Defendants, Director George Lombardi, David Dormire, Warden Troy Steele, and Matt Briesacher, assistant general counsel of the DOC.

## IV. Inspection

Counsel may request the opportunity to inspect the execution chamber, consistent with Federal Rule of Civil Procedure 34.

Respectfully submitted,

/s/ Cheryl A. Pilate
Cheryl A. Pilate MO 42266
Lindsay J. Runnels
MORGAN PILATE, LLC
926 Cherry Street
Kansas City, Missouri 64106
Telephone (816) 471-6694

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing document was served electronically on all counsel of record via the Court's ECF filing system on July 18, 2016.

/s/ Cheryl A. Pilate