IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| RUSSELL BUCKLEW, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 14-08000-CV-W-BP |
| ) | |
| GEORGE A. LOMBARDI, ) | |
| DAVID DORMIRE, and TROY STEELE,[1] ) | |
| ) | |
| Defendants. ) | |

## ORDER REGARDING SCOPE OF DISCOVERY

Plaintiff was convicted in state court of kidnaping, rape and murder, and was sentenced to death. He challenges Missouri's planned method of execution as applied to him, contending that the current lethal injection protocol will cause him needless suffering and pain in violation of the Eighth Amendment. At the Court's direction the parties filed briefs regarding the scope of discovery, and the parties' positions conflict in certain respects.

The Court will confine the scope of discovery to the matters alleged in Count I of the Fourth Amended Complaint. This Order is intended to provide guidance regarding the proper scope of discovery.

### I. BACKGROUND

### A.

The scope of discovery is informed by the issues involved in the case, so the Court begins by describing Plaintiff's claim and the governing law. Plaintiff's remaining claim is Count I of the Fourth Amended Complaint. (Doc. 53; *see also* Doc. 63 (dismissing Counts II and III of the

---

[1] Troy Steele has succeeded Terry Russell as the Warden of the Eastern Reception, Diagnostic, and Correctional Center. Accordingly, Troy Steele is substituted as a Defendant in place of Terry Russell. Fed. R. Civ. P. 25(d). The Clerk of Court is directed to amend the Docket Sheet accordingly.

Fourth Amended Complaint).) As has been described in various orders, Plaintiff suffers from cavernous hemangioma, which is a congenital condition that causes clumps of weak, malformed blood vessels and tumors to grow throughout his body, including his head, face, neck and throat. These tumors are very susceptible to rupture. Plaintiff alleges that execution by lethal injection is likely to cause the tumors to rupture because lethal injection depends on the circulatory system, and that the ruptures can increase his pain and suffering because (1) the chemicals will not travel through his body in the manner intended and (2) ruptured tumors in his throat can cause him to choke. The Fourth Amended Complaint does not allege that changing the lethal injection protocol will alleviate these risks; to the contrary, the allegations broadly relate to any method of lethal injection. The Fourth Amended Complaint alleges that execution by lethal gas will significantly reduce the risk that tumors will rupture and will not cause the needless suffering associated with an execution method that relies on his compromised circulatory system.

In declining to dismiss this claim, the Court held that Plaintiff's allegations satisfied the pleading requirements set forth in *Glossip v. Gross*, 135 S. Ct. 2726 (2015). There, the Supreme Court described its prior holdings as establishing that a plaintiff must establish "a substantial risk of serious harm, an objectively intolerable risk of harm that prevents prison officials from pleading that they were subjectively blameless for purposes of the Eighth Amendment." 135 S. Ct. at 2737 (quotations omitted). A plaintiff must then "identify an alternative that is feasible, readily implemented, and in fact significantly reduces a substantial risk of severe pain." *Id*. (quotation omitted). *Glossip*'s holding is similar to the Eighth Circuit's prior decision in *Zink v. Lombardi*, where the Court of Appeals held that "to establish a constitutional violation, an inmate ultimately must prove that another execution procedure exists that is feasible and readily

2

implemented, and that the alternative method will significantly reduce a substantial risk of severe pain." 783 F.3d 1089, 1103 (8th Cir.) (en banc), *cert. denied*, 135 S. Ct. 2941 (2015).

**B.**

Plaintiff has proposed discovery be conducted in six broad categories: the execution protocol, the lethal chemicals utilized, the execution team, alternative methods of execution, DOC policies and procedures, and "Fact and/or Expert Witnesses." Specific topics are set forth within each category. In addition, Plaintiff intends to "depose all medical members of the execution team and the protocol team" as well as all fact and expert witnesses (among others). Plaintiff also indicates he "may request" an opportunity inspect the execution chamber.

Defendants contend that discovery should be conducted in phases. They propose that the first phase be limited to the feasibility of lethal gas as a method of execution, the likelihood that lethal gas will decrease the risk of pain, and matters related to Defendants' statute of limitations defense. Defendants intimate there would then be an opportunity for them to seek summary judgment, reasoning that if Plaintiff cannot prevail on the issues involved in the first discovery phase there is no need to conduct further discovery. Should Plaintiff demonstrate at least a triable issue that his claim is not time-barred and that lethal gas is feasible and will significantly decrease the risk of pain and suffering, discovery can proceed to the second phase. At that time, discovery regarding Plaintiff's medical condition and the effects of lethal injection can be conducted. Finally, Defendants contend that many subjects described in Plaintiff's discovery plan are unnecessary in light of the issues to be resolved.

3

## II. DISCUSSION

### A.

For ease of discussion, the Court first addresses Defendants' proposal to conduct phased discovery. The Court is not persuaded that phased discovery will prove beneficial. In remanding this case, the Eighth Circuit suggested that "[t]he District Court will have the usual authority to control the order of proof, and if there is a failure of proof on the first element that it chooses to consider, it would not be an abuse of discretion to give judgment for defendants without taking further evidence." *Bucklew v. Lombardi*, 783 F.3d 1120, 1128 (8th Cir. 2015) (en banc) (quotation omitted). The Court now has the benefit of the Fourth Amended Complaint, and the issues it presents suggests that parsing out some issues for discovery and reserving others will not be useful. For instance, Defendants suggest that Phase 1 include discovery related to the likelihood that lethal gas will significantly reduce the risk of unnecessary pain and injury to Plaintiff. However, determining the extent to which lethal gas will reduce that risk requires consideration of the effect of lethal gas on Plaintiff given his medical condition – and Defendants suggest that discovery about Plaintiff's condition be postponed until Phase 2. Similarly, determining whether any reduction in pain and suffering is "significant" – a matter Defendants propose for Phase 1 – requires a comparison to the pain and suffering that is likely to occur through the use of lethal injection, but Defendants propose that discovery on this issue also be postponed until Phase 2.

The Court further believes that phased discovery may result in duplication of effort and prolong the ultimate resolution. For instance, if discovery occurs in phases, witnesses may have to be deposed twice: first to discuss lethal gas, then again to discuss lethal injection. Defendants' proposal also raises the potential of multiple "rounds" of dispositive motions, one after each

4

phase of discovery.  Finally, discovery is currently scheduled to close by the end of this year, and dispositive motions are to be filed by the end of January 2017.  (Doc. 79, ¶¶ 5, 7.)  Even if these deadlines are extended for some reason, the Court doubts that phased discovery would expedite the ultimate resolution of this case, particularly given that the scope of discovery will not be as broad as Plaintiff contemplates.  (*See* Part II.B, *infra*.)  For these reasons, the Court is disinclined to require that discovery be conducted in phases.

## B.

The scope of discovery is limited to nonprivileged matters[2] that are "relevant to any party's claim or defense and proportional to the needs of the case, considering" a variety of factors.  Fed. R. Civ. P. 26(b)(1).  In light of Plaintiff's proposal, the most problematic factors are "the importance of the issues at stake in the action [and] the importance of the discovery in resolving the issues," *id.*, because these considerations demonstrate Plaintiff's planned scope for discovery is overly broad.

As noted earlier, Plaintiff has proposed discovery be conducted in six broad categories, with each category containing specific topics.  The Court's discussion is organized around these six categories.

*1.  Execution Protocol* − Plaintiff anticipates requesting documents relating to the development and adoption of the current protocol, research regarding the chemicals to be used, the effects of those chemicals on the human body, documents concerning alternative lethal injection protocols that were researched or considered, and "documents concerning the complete execution protocol, including all phases of the execution, from the arrival of the team at the facility to the documentation and disposal of the lethal chemicals."  (Doc. 100, p. 7.)  Some of

---

[2] The Court does not offer an opinion regarding Defendants' claim of privilege because, as Defendants concede, "[p]rivilege analysis is beyond the scope of" the parties' briefing, (Doc. 102, pp. 6), and because the issue is best addressed in the context of a specific discovery request.

5

this information is relevant to the issues in the case.  For instance, Plaintiff is entitled to discover the execution protocol that Defendants intend to employ, including the chemicals to be used and the manner in which the chemicals will be administered.  Plaintiff is also entitled to obtain any information Defendants may have regarding the chemicals' effects on the human body.  However, information relating to "the documentation and disposal of the lethal chemicals" is not related to Plaintiff's claims.  Similarly, information related to other methods of lethal injection that might have been considered by DOC is not relevant because Plaintiff does not claim use of different chemicals is a viable alternative: not only is this revealed by the Fourth Amended Complaint, but he admits that he "has alleged that any execution by lethal injection poses unacceptable and unconstitutional risks to him . . . ."  (Doc. 100, p. 6.)  Finally, "documents about the development and adoption of the current lethal injection protocol, including each protocol developed since 2013 and all amendments and changes," (Doc. 100, p. 7), are not relevant to any issues in the case.  The current protocol is relevant, but prior protocols and the evolution of the process over time are not relevant.

     Plaintiff justifies discovery about alternative chemicals and further details about the process to guard against Defendants contending that lethal injection is the only available and viable method of execution.  In that event, Plaintiff wishes to conduct broad discovery to "seek[ ] ways that changes or alterations not previously known or contemplated might significantly reduce the risks to Mr. Bucklew and, hence, achieve compliance with the Constitution."  (Doc. 100, p. 6.)  However, the only alternative method Plaintiff has pleaded is execution by lethal gas – he has not alleged that changes to the lethal injection protocol or the use of different chemicals will "achieve compliance with the Constitution."  To the contrary, he has disclaimed the possibility that any utilization of lethal injection will reduce the risk of pain and suffering.

6

The Fourth Amended Complaint does not justify wide-ranging scrutiny into matters unrelated to his claims.[3] This conclusion is not only supported by Rule 26 generally, but by the pleading requirements set forth in *Glossip* and *Zink*. As the Eighth Circuit explained, "[t]he existence of . . . an alternative method of execution . . . is a necessary element of an Eighth Amendment claim, and this element – like any element of a claim – must be pleaded adequately." *Zink*, 783 F.3d at 1103. Moreover, a general allegation "that other methods would be constitutional, devoid of further factual enhancement, fails to state a claim under the Eighth Amendment." *Id*. Here, Plaintiff has not even made a general allegation that changes to the lethal injection process would be constitutional – he has instead denied that any changes can be made. Thus, he has not presented an Eighth Amendment challenge that justifies exploring intricate details of the lethal injection protocol in order to determine if changes can be made.

2. *Lethal Chemicals* – Plaintiff seeks a list of the chemicals utilized by the State to execute inmates, and the Court agrees Plaintiff is entitled to discover the chemicals that the State intends to use. Plaintiff is also entitled to obtain packaging, labeling, and other inserts to the extent that they describe the chemicals' contents or their effects on the human body (including warnings), although the name of the manufacturer or provider can be redacted.

Plaintiff would seek documents relating to the purchase, procurement, prescriptions, attempts to obtain chemicals, the DOC's inventory and expiration dates, and the method of maintaining, storing and securing lethal chemicals. None of this information is relevant to Plaintiff's claim.

---

[3] Plaintiff also points to the Court's prior observation that "'if discovery reveals the availability or feasibility of a different, as-yet unpleaded method, there are procedures to deal with such an eventuality.'" (Doc. 107, p. 3 (quoting Doc. 52, p. 10).) The Court did not intend this statement to permit Plaintiff to conduct discovery beyond the bounds set by the pleadings.

7

*3. Execution and Protocol Teams (Medical and Non Medical)* – This category seeks information about the individuals who will participate in or conduct the execution. Plaintiff explains that "given the severity of his medical condition, the training and qualifications of the execution team members are especially important, as the risks of a botched or excruciating execution are particularly great in his case." (Doc. 100, p. 6.) However, his remaining claim does not allege that changing the execution team members will significantly decrease the risk of pain and suffering, so the relevance of this information is not evident. This information might have been relevant to Count II,[4] but Count II was dismissed. The Court holds that detailed discovery about the execution team members is unnecessary to resolving the issues in this case. Plaintiff may obtain, as part of the discovery regarding the execution protocol, information generally describing the composition of the team (*e.g.,* the number of doctors, nurses, anesthesiologists) as well as the functions they will perform. Finally, in light of the lack of a relationship between the execution team members and the specifics of Plaintiff's claim, the Court discerns no need for Plaintiff to learn the identities of, or depose, the execution team members.

*4. Alternative Methods of Execution* – Within this category Plaintiff seeks documents regarding alternative methods of execution and further specifies that the scope of this category includes, but is not limited to, lethal gas. Information related to lethal gas is clearly relevant because Plaintiff has alleged that lethal gas is a viable and available alternative and a basis for believing that lethal gas will significantly decrease the risk of pain and suffering. However, it is the only alternative method he has alleged, so it is the only method for which discovery is justified and the breadth of this category must be limited accordingly.

---

[4] Count II alleged, among other things, that executing Plaintiff would violate the Constitution because there was "no contingency plan in the event the lethal drugs fail to kill Mr. Bucklew" and there was no training of personnel or contingency plans in place to address the possibility of a "botched execution." (Doc. 53, ¶¶ 155-57.)

8

*5. DOC Policies and Procedures* – The topics in this category relate to DOC policies for obtaining or using lethal chemicals, as well as documents relating to the training of execution team members. To the extent that "prescribing, administering, or using" lethal chemicals relates to the protocol, this information has been addressed in the context of other categories. The remaining respects are beyond the proper scope of discovery for this case. Plaintiff's claim does not depend upon how or from where the chemicals are procured, nor does it depend on the execution team's training. Therefore, discovery into these issues is unnecessary.

*6. Fact and/or Expert Witnesses* – This category seeks findings and conclusions from fact and expert witnesses, and other information that must be disclosed pursuant to Rule 26(a)(2). Obviously, the parties must comply with Rule 26(a)(2). It is not clear what else this category encompasses, so the Court cannot comment further.

### III. CONCLUSION

For the reasons set forth above, the Court denies Defendants' request that discovery be conducted in phases. Moreover, the scope of discovery shall be limited to the claim and theory advanced in Count I of the Fourth Amended Complaint, as set forth more fully in Part II.B of this Order.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
DATE: August 11, 2016    UNITED STATES DISTRICT COURT