Case No. 4:14-CV-8000-BP
_____

# United States District Court
# Western District Of Missouri
_____

RUSSELL BUCKLEW,

Plaintiff,

v.

GEORGE LOMBARDI, et al.,

Defendants.
_____

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
_____

**JOSHUA D. HAWLEY**
Attorney General

**Michael J. Spillane**
Assistant Attorney General
Missouri Bar No. 40704
P.O. Box 899
Jefferson City, MO 65102
Telephone: (573) 751-1307
Facsimile: (573) 751-3825
Attorneys for Defendants

# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| RUSSELL BUCKLEW, )<br>)<br>       Plaintiff, )<br>)<br>vs. )<br>)<br>GEORGE A. LOMBARDI, et al., )<br>)<br>       Defendants. ) | Case No. 4:14-CV-8000-BP |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### Standard of Review

Summary judgment is not a disfavored procedural shortcut, but "is an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Torgeson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc), *quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Id.* at 1042. The movant bears the burden of informing the district court of the basis for its motion and must identify the portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* The nonmovant must respond by submitting evidentiary materials that set out specific facts showing a genuine evidentiary issue for trial. *Id.*

In order to prevail on an Eighth Amendment method of execution challenge Bucklew must prove that the execution procedure is "sure or very

likely to cause serious illness and needless suffering." *Zink v. Lombardi*, 783 F.3d 1089, 1102 (8th Cir 2015) (en banc). And he must "prove that another execution procedure exists that is feasible and readily implemented, and that alternative method will significantly reduce a substantial risk of severe pain." *Id.* at 1103.

## Summary of Bucklew's Remaining Claim

Here, Plaintiff Bucklew raises an as-applied Eighth Amendment challenge to his execution by any means of lethal injection, by any personnel, because he alleges that his cavernous hemangioma would necessarily make that cruel and unusual punishment. Document 53, Fourth Amended Complaint, at 2, 10. Bucklew alleges execution by gas will significantly reduce the risk of severe pain during the execution. *Id.* at 2–3, 53. Bucklew alleges that his claim did not accrue until May 2014 when Dr. Zivot examined Bucklew's medical records and examined Bucklew. *Id.* at 49–50.

Bucklew alleges that any lethal chemical will fail to circulate properly in his body because of the hemangioma's, interference with the circulation of the chemical, delaying the effect of the chemical and making the execution tortuous. *Id.* at 4–5, 25, 27, 31, 53. Bucklew alleges that use of the dye may raise his blood pressure causing a risk of choking and bleeding. *Id.* at 9, 40–41. But he alleges if a dye is not used, it creates a risk that the execution team might not notice if fluids are not properly flowing through the intravenous lines (I.V.). *Id.* at 25–26,

42. Bucklew also alleges that risks to his airway are greater if he is lying flat on a gurney. *Id.* at 35. But then he claims that no adjustment of the gurney will likely fix this problem "as the stress of the execution may unavoidably cause Mr. Bucklew's hemangioma to rupture." *Id.* at 44. Therefore, Bucklew concludes he will suffer extreme, unnecessary, and tortuous pain during any execution by lethal injection.

But the record, including the testimony of Bucklew's own expert, refutes this claim. And it refutes the claim that execution by gas is a feasible and readily implemented method of execution that would significantly reduce a severe risk of unnecessary pain.

**The record refutes the first prong of an Eighth Amendment claim.**

After recent imaging was done of Bucklew's hemangioma, the Defendants' expert, Dr. Joseph Antognini, concluded that the hemangioma will not interfere with the flow of pentobarbital, delaying unconsciousness. Bucklew's expert, Dr. Joel Zivot, also does not now find evidence to support a conclusion that the hemangioma will interfere with circulation of the pentobarbital. Therefore, the record refutes the allegation in the amended complaint that unconsciousness will be delayed by the hemangioma diverting blood flow.

Dr. Antognini opined, that assuming the I.V. is properly established and used, Bucklew will achieve deep unconsciousness in which he cannot sense pain in 20 to 30 seconds. Dr. Zivot did not give a firm opinion as to when Bucklew

3

would be unable to sense pain, but opined that measurable brain activity would cease in 52 to 240 seconds assuming a proper infusion of the lethal chemical. Therefore, both experts place the occurrence of unconsciousness in a matter of seconds, assuming proper infusion occurs.

Neither expert finds it necessary for Bucklew to lay flat during an execution, the position he alleges would most compromise the airway. And both experts agree that Bucklew was able to tolerate lying flat for an hour during imaging studies. Dr. Zivot opines that Bucklew was able to do this by consciously adjusting his breathing patterns, but that he would not be able to do this once he is no longer awake during an execution. But Dr. Zivot's analysis places Bucklew's potential breathing difficulties after he is no longer awake.

Both experts opined that Bucklew has challenging peripheral veins in his hands and arms. But the execution protocol allows the primary or secondary I.V. line to be placed in a peripheral or a central vein. Both experts agreed there is no reason to believe that any of Bucklew's central veins or any veins besides the peripheral veins in his hands and arms have any defects. Therefore, any claim that a problem with infusion is sure or very likely to cause serious illness or unnecessary suffering is the type of speculation that the United States Court of Appeals found in *Zink* does not state an Eighth Amendment claim. Further, complaints about the veins in the hands and arms being poor were not pleaded, and Defendants do not consent to such claims being adjudicated now.

4

**The record refutes the second prong of an Eighth Amendment Claim.**

Bucklew's expert, Dr. Zivot, opined in published articles and in his deposition, that there are insufficient studies to show the execution by gas, specifically nitrogen hypoxia, would not be cruel and unusual punishment. Dr. Antognini similarly found that execution by gas would not significantly reduce a substantial risk of severe unnecessary pain. Matthew Briesacher, former General Counsel of the Department of Corrections, testified at his deposition that when he researched the possibility of execution by gas, he hit a wall, as there is insufficient research and no experts to answer necessary questions to establish that execution by gas is a feasible alternative method of execution. The record refutes the claim that Bucklew meets the second prong of *Zink* analysis.

Bucklew alleges that lethal gas is a feasible alternative method of execution and is likely to "significantly reduce the risk of severe pain" because its delivery into the lungs bypasses his circulatory system. Doc. 53 at 14. But there is no support in the record for the assertion that any form of gas would work faster than the pentobarbital would, and there is no support for the claim that Bucklew would not, with gas, have whatever choking and bleeding he would allegedly have with pentobarbital. In fact, in light of the testimony of Dr. Antognini and Dr. Zivot that there is no reason to believe the hemangioma would interfere with normal circulation of an execution chemical, and that if properly infused the pentobarbital would cause unconsciousness in seconds, gas would

5

likely significantly increase, rather than decrease, a risk of unnecessary suffering. And there is no logical reason to believe, and certainly nothing in the record, that supports inhalation of a lethal gas, or nitrogen hypoxia, would be less irritating to Bucklew's airway than an injection of fast-acting barbiturate into his circulatory system through a vein.

**The record refutes the existence of Article III jurisdiction.**

Dr. Zivot has written in a published article and confirmed in his deposition that if Bucklew is *not* executed, his untreatable hemangioma *will* cause him to die by self-strangulation, but that if he is executed, he has a risk of choking. Bucklew must establish an 1) injury in fact, 2) caused by the defendants, that 3) this Court can redress, in order to establish Article III jurisdiction over the case. *See Spencer v. Kemna*, 523 U.S. 1, 8 (1998) (at every stage of the litigation the plaintiff must have suffered or be threatened with an actual injury, traceable to the defendant, that is likely to be redressed by a favorable judicial decision). Here, the record establishes that Bucklew will die of suffocation from his hemangioma if he is not executed, but that, according to Plaintiff's expert, he has a risk of choking for a matter of seconds, probably after he is no longer awake, if he is executed. Bucklew does not set out an injury in fact caused by Defendants that this Court can remedy.

### The record establishes the affirmative defenses of claim preclusion and statute of limitations.

Defendants assert affirmative defenses of claim preclusion and statute of limitations. In June 2008, supported by an affidavit from another expert, Bucklew asked the United States Court of Appeals for the Eighth Circuit to fund clemency litigation based on a theory very similar to the one he currently raises–that execution by lethal injection would cause an excruciatingly painful death because his hemangioma would interfere with the circulation of execution chemicals. Therefore, he was aware of his claim no later than June 2008. But he was a plaintiff in the *Zink* litigation filed in 2012, in which he did not raise the hemangioma in making an Eighth Amendment challenge to his execution by lethal injection in Missouri. He did not file his as-applied challenge to lethal injection based on his hemangioma until May 14 2014, shortly before his scheduled May 21 execution, and shortly before the *Zink* litigation was dismissed. There is no good reason Bucklew could not have brought his current claim in the *Zink* litigation, and no good reason he could not have raised it within the applicable five-year statute of limitations, which necessarily began to run some time before June 2008 when he presented his pleading and expert affidavit to the Court of Appeals.

### Conclusion

This Court should grant Defendants' motion for summary judgment.

Respectfully submitted,

**JOSHUA D. HAWLEY**
Attorney General

/s/ Michael Spillane
MICHAEL SPILLANE
Assistant Attorney General
Missouri Bar # 40704
P.O. Box 899
Jefferson City, MO 65102
(573) 751-1307
(573) 751-2096 Fax
mike.spillane@ago.mo.gov
Attorneys for Respondent

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed electronically on this 10th day of April, 2017. This Court's electronic filing system should serve counsel for Mr. Bucklew.

/s/ Michael Spillane
Assistant Attorney General