IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| RUSSELL BUCKLEW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14-8000-CV-W-BP |
| | ) | |
| GEORGE A. LOMBARDI, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING IN PART AND DENYING IN PART
## PLAINTIFF'S MOTION TO COMPEL

This is a civil rights lawsuit, brought by a condemned inmate. Plaintiff contends that the State's method of execution as applied to him violates the Eighth Amendment because of his unique medical condition. More specifically, Count I of the Fourth Amended Complaint alleges that given his circulatory and related disorders, execution through lethal injection poses a risk of severe pain and suffering that can be alleviated if he is executed through the use of lethal gas. Counts II challenged the staffing and procedures to be employed during the execution and Count III asserted Plaintiff's First Amendment rights were violated because he was not provided information about the source of the chemicals to be used in the execution. These two claims were dismissed. (Doc. 63, pp. 14-16.)

Early in the discovery process, the Court issued an Order Regarding Scope of Discovery ("the Scope Order"). (Doc. 105.) The Order discussed broad categories and determined that some were proper subjects of discovery and some were not.

Shortly before the discovery deadline of March 10, 2017, Plaintiff contacted the Court to seek resolution of outstanding discovery disputes. A telephone conference was held on March 15, 2017, ("the March 15 conference"), following which the Court, *inter alia*, directed Plaintiff

to file a Motion to Compel. (Doc. 163, pp. 1-2.) The parties were also directed to provide any related written discovery requests and the corresponding answers/objections.

The Motion to Compel, (Doc. 169), is fully briefed. It raises issues regarding (1) Plaintiff's request to elicit further information related to, or depositions of, members of the execution team (particularly M2 and M3), (2) Defendants' provision of a privilege log, and (3) Defendants' efforts to fully search e-mails for responses to the discovery requests. The Court has considered the parties' written arguments, the discovery requests, and the comments made during the March 15 conference. In light of these materials, the pleadings, and the Court's prior Orders (including the Scope Order), the Court resolves the parties' arguments as discussed below.

## I. Additional Information About Members of the Execution Team

Plaintiff contends that Defendants should be required to provide additional information about the members of the execution team. Specifically, Plaintiff wants information about the team members' training and experience, as well as access to depositions of team members taken in other cases that are the subject of Protective Orders issued in those cases. Defendants contend that this information is not relevant in light of Plaintiff's remaining claim. Consistent with its prior rulings, the Court agrees with Defendants that this information exceeds that which is necessary in light of Count I's allegations.

The Court's explanation begins with the Fourth Amended Complaint, and in particular the differences between Count I (the only remaining claim) and Count II (which has been dismissed). Count I alleges that the use of lethal injection violates the Constitution because of Plaintiff's cavernous hemangioma and related complications. Plaintiff does not contend that using different chemicals, or administering chemicals in a different way, will diminish the risk of

pain and suffering. According to Count I, the only way to significantly diminish the pain and suffering resulting from lethal injection is to execute Plaintiff with lethal gas. In contrast, Count II alleged that Plaintiff "will experience pain and suffering unless certain changes are made in the lethal injection protocol, and the failure to make these changes constitutes a deliberate indifference to his serious medical needs in violation of the Eighth Amendment." (Doc. 63, p. 14.) The Court dismissed Count II because the Fourth Amended Complaint did not "allege sufficient facts to indicate that the staffing and planning procedures Defendants intend to utilize will create a substantial risk of serious harm" and "does not allege what procedures should be employed (other than not performing an execution)." (Doc. 63, pp. 14-15.)

The differences in the allegations (and fates) of Counts I and II formed the basis for several decisions in the Scope Order, including the Court's decision regarding information about the execution team. The Scope Order's discussion of the issue is set forth below:

> Plaintiff explains that "given the severity of his medical condition, the training and qualifications of the execution team members are especially important, as the risks of a botched or excruciating execution are particularly great in his case." (Doc. 100, p. 6.) However, his remaining claim does not allege that changing the execution team members will significantly decrease the risk of pain and suffering, so the relevance of this information is not evident. This information might have been relevant to Count II, but Count II was dismissed. The Court holds that detailed discovery about the execution team members is unnecessary to resolving the issues in this case. Plaintiff may obtain, as part of the discovery regarding the execution protocol, information generally describing the composition of the team (*e.g.,* the number of doctors, nurses, anesthesiologists) as well as the functions they will perform. Finally, in light of the lack of a relationship between the execution team members and the specifics of Plaintiff's claim, the Court discerns no need for Plaintiff to learn the identities of, or depose, the execution team members.

(Doc. 105, p. 8 (footnote omitted).) Thus, the additional information Plaintiff now seeks is barred by the Scope Order.

Plaintiff contends that the Scope Order should be amended because his claim requires he prove that the execution protocol presents a substantial risk of serious harm and that an alternative method of execution will significantly reduce that risk. However, the substantial risk of serious harm that forms the basis for Count I does not depend on the execution team's training and experience. For instance, while Count I alleges that the execution protocol will cause him to hemorrhage, cough, choke and suffocate, thereby suffering an "excruciating execution," it does not allege that this risk is due to the execution team's training or expertise. Count I also does not allege that more or different training will decrease these risks.

Relatedly, Plaintiff contends that information about the individuals involved in his execution – including their training – is relevant "because during various depositions in this case, Defendants made clear that there are various unwritten and/or informal protocols that Defendants and the execution team rely upon to carry out an execution – many of which are contingent on the degree of training of the medical team members." (Doc. 169, p. 10.) As an example, it may be necessary to utilize a central line or a cutdown procedure, and Plaintiff wants to explore the execution team members' qualifications for performing these procedures. However, this explanation is no different than the explanation Plaintiff originally offered prior to entry of the Scope Order, and it remains the case that Plaintiff's claim does not depend upon either the manner in which a lethal injection is performed or the qualifications of the execution team members. Discovery is appropriate to determine how a central line or a cutdown procedure affects the risk of pain and suffering Plaintiff has identified. However, Plaintiff's claim does not depend on "how well qualified" the execution team is.

Finally, Plaintiff suggests that the execution team's qualifications and training are at issue because some information on these topics has been divulged during discovery. (Doc. 169, pp. 3-

4

4; *see also* Doc. 164, pp. 13-14.)  The Court does not agree that mere discussion of or reference to a topic during discovery makes further discovery on that matter appropriate.  There is no claim remaining that requires consideration of the execution team's qualifications and training, so the Court concludes that the Scope Order sets proper limits on discovery.  Plaintiff's request for additional details about the execution team members and access to their depositions from other cases is denied.

## II.  Privilege Log

Plaintiff served Interrogatories and a Request for Production of Documents ("RFP") in November 2016.  Defendants responded in December 2016.[1]  In most respects, Defendants' responses (1) raised "non-privilege based" objections, including objections based on vagueness, temporal scope, or perceived violations of the Scope Order, (2) reserved various privileges depending on how the other objections were resolved, (3) provided responsive documents, or (in some cases) (4) described documents that were privileged.  The parties discussed Defendants' objections but did not agree on a resolution.

In presenting the issues to the Court at this juncture, Plaintiff focuses on Defendants' claims of privilege and argues the Defendants have not provided a privilege log as required by Rule 26(b)(5).  Defendants rely on Rule 34(b)(1)(C) to contend that their obligation was fulfilled so long as they "explicitly identified in the discovery response (and production log) if a relevant privileged record communication was withheld and explained the basis for that privilege."  (Doc. 173, p. 16.)  The Court disagrees with Defendants and concludes that Rule 26(b)(5)(ii) – which specifically describes the contents of a privilege log – controls.

---

[1] The discovery requests issued to each Defendant are similar, as are the responses.  Plaintiff has supplied the requests posed to Defendant George Lombardi (and his responses) to represent all of the requests and responses.

However, a privilege log is required only "[w]hen a party withholds information *otherwise discoverable*," Fed. R. Civ. P. 26(b)(5)(A) (emphasis supplied), and with Defendants' other objections unresolved it has not been established that Defendants are withholding any discoverable information because it is privileged. Thus, before addressing Defendants' obligations under Rule 26(b)(5), the Court must determine whether anything Plaintiff has not been provided is discoverable.

***Interrogatory #1*** asks Defendants to identify all policies and protocols that apply to execution by lethal injection. Defendants provided the current written execution protocol, and Plaintiff is not entitled to anything further.[2] Defendants also suggest a "closed portion" of the protocol is not being disclosed pursuant to § 546.720 of the Revised Missouri Statutes, which relates to identification of members of the execution team; this is sufficient to identify what has been withheld and is functionally equivalent to the information required by Rule 23(b)(5).

***Interrogatory #2*** asks for policies and protocols related to execution by lethal gas. Defendants initially answered this interrogatory by stating that the Department of Corrections ("DOC") "does not use lethal gas and has no lethal gas protocol." In a Supplemental Response (made after the parties conferred), Defendants pointed out that the DOC last utilized lethal gas for an execution in 1965. Plaintiff's explanation as to why the protocols and procedures from 1965 are pertinent are not persuasive, and the Court agrees with Defendants that it exceeds the needs of this case for them to ascertain the protocols for a procedure last used in 1965. The Court further notes that Defendants did not assert any privileges in their response to this interrogatory, so there are no privilege issues to be considered.

---

[2] At least, it *appears* from the text of Defendants' answers that they provided the current written execution protocol. The Court does not know what documents are identified by the specified Bates Numbers. Regardless, the current written execution protocol *should* be provided to Plaintiff, and the Court's rulings presume this has occurred.

*Interrogatory #3* asks for several categories of information related to the chemicals used during a lethal injection. The Court concludes that much of the information sought is unnecessary given the claim that remains in the case. Plaintiff's claim does not depend on "the manner in which the chemicals are prepared and administered" or "the process and reasoning behind the selection of those particular chemicals and their respective doses." Therefore, this information need not be provided; and, given that the only privileges asserted relate to these matters, there is no need for Defendants to prepare a privilege log. Plaintiff is entitled to information that identifies the chemicals to be used, the doses, and "any risks, side-effects, or complications that could arise from their use." However, Defendants supplied information identifying the chemicals to be used and the manner in which they will be administered. Defendants also stated that they lack the medical training necessary to offer their own opinions about possible risks, side effects and complications, and they have no documents addressing these issues. Thus, Plaintiff has received answers to the portions of Interrogatory #3 to which he is entitled.

*Interrogatory #4* is similar to Interrogatory #3 in that it asks Defendants to describe the chemicals that are, or might be, used by DOC when using lethal gas as the means of execution. Defendants stated that there are currently no such chemicals, and consistent with its ruling regarding Interrogatory #2 the Court is not convinced that the chemicals used in 1965 (or before) are relevant to this case. Nonetheless, Defendants' Supplemental Response states that DOC used cyanide gas, and Defendants are not required to speculate as to what chemicals would be used if DOC were to start utilizing lethal gas as a means of execution. For these reasons Defendants' response to Interrogatory #4 (including the Supplemental Response) provides all the information to which Plaintiff is entitled and nothing has been withheld based on a privilege.

7

***Interrogatory #5*** seeks "the process by which the current drug protocols were selected and included in the Execution Procedures," but the Scope Order already determined that this was not allowed. (Doc. 105, p. 6-7.) Therefore, Defendants need not document their claims of privilege.

***Interrogatory #6***, which asks Defendants to identify all documents "related to the viability or feasibility of lethal gas as an execution method in Missouri," is addressed not only by Defendants' initial response and Supplemental Response, but also by an e-mail, (Doc. 177-2), Defendants sent to the Court and to Plaintiff's counsel on March 30, 2017, ("the March 30 e-mail"). Initially, Defendants contended the request was overly broad in that it was not limited in time – an objection the Court believes was appropriate. Defendants also asserted attorney/client, work product, and deliberative process privileges. In the Supplemental Response, Defendants contended they do not have any responsive documents. The March 30 e-mail describes a search of the e-mails of all Defendants and of attorneys in the DOC's general counsel's office, using the search terms "lethal gas" and "gas chamber." The search uncovered six documents, and Defendants contend all are privileged as attorney/client communications or attorney work product.[3] The e-mail further identifies the six e-mails by date, author, recipient and subject matter. The Court concludes that the e-mail constitutes an adequate privilege log for the six documents referenced therein.

***Interrogatory #7, Interrogatory #8, and Interrogatory #11*** are similar to Interrogatory #1 in that they asks for details about particular steps in the lethal injection protocol. Defendants' responses to Interrogatory #7, Interrogatory #8 and Interrogatory #11 are similar to those they provided for Interrogatory #1; the Court's ruling is the same as well.

---

[3] Plaintiff references the March 30 e-mail in his Reply Suggestions, but presents no argument suggesting that the documents identified therein are not privileged.

8

**Interrogatory #9** essentially asks Defendants to identify roles, responsibilities and functions of the execution team members. Notwithstanding Defendants' various objections they have supplied this information. Moreover, what Defendants has supplied is consistent with the Scope Order, (*see* Doc. 105, p. 8), and the Court's discussion in Part I of this Order. The only privileged information withheld is the names of the execution team members, and as discussed in the context of Interrogatory #1 the information supplied satisfies Defendants' obligations under Rule 26(b)(5).

**Interrogatory #10** is similar to Interrogatory #9, but it asks for identification of members of the execution team if execution is performed through the use of lethal gas. The fact that DOC does not utilize lethal gas in executions answers this question. The Court further notes that Defendants did not assert any privileges in their response to this interrogatory, so there are no privilege issues to be considered.

**Interrogatory #12** is similar to Interrogatory #2 in that it asks about the process by which an inmate would be executed through the use of lethal gas. Defendants' answer is similar to that which was provided for Interrogatory #2, and the Court's ruling is the same as well.

**Interrogatory #13** asks for detailed information about the execution team members' training. This issue has been addressed by the Scope Order, (Doc. 105, p. 8), and the discussion in Part I of this Order.

**Interrogatory #14** asks for all "contingency plans that exist for when any complications arise during an execution by lethal injection." Plaintiff has been supplied the DOC's execution protocol, so Plaintiff has been supplied all formalized contingency plans for anticipated complications. Obviously, there might be unanticipated complications – but there is no way for Defendants to describe contingency plans for events that are not anticipated. And, a request for

all unwritten contingency plans is too vague.  The Court concludes Defendants have answered this interrogatory by providing the DOC's execution protocol.  The Court further notes that Defendants did not assert any privileges in their response to this interrogatory (other than one related to the identification of the execution team members), so there are no privilege issues to be considered.

*Interrogatory #15* asks for contingency plans for executions by lethal gas; Defendants respond that DOC does not perform executions by lethal gas, which answers the interrogatory.  The Court further notes that Defendants did not assert any privileges in their response to this interrogatory, so there are no privilege issues to be considered.

*Interrogatory #16* follows up on the preceding two interrogatories by asking if there are no contingency plans, why it is that none exist.  Defendants' response explains that there are no contingency plans with respect to the use of lethal gas because DOC does not utilize lethal gas.  While there are no responses purporting to explain the lack of additional contingency plans in the lethal injection protocol, the request is too vague and broad to be enforced.  There are no objections to this response (based on privilege or otherwise), and there is no need for the Court make a further ruling.

*Interrogatory #17* asks for information about "failed executions or executions that did not follow the applicable protocol in effect at the time . . . including any and all information related to why those executions failed and any steps or actions taken in response."  Defendants posed an objection, noting (correctly) that this interrogatory exceeds the bounds set by the Scope Order. Then, notwithstanding its objection, Defendants answered that there have been no such executions.  The Court deems this response sufficient, particularly in light of the restrictions set

10

in the Scope Order.  The Court further notes that Defendants did not assert any privileges in their response to this interrogatory, so there are no privilege issues to be considered.

*Interrogatory #18* would require Defendants to identify all persons responsible for monitoring Plaintiff's medical condition in the weeks before the execution, as well as information about such persons.  Defendants presented a series of objections, one of which is based on relevance. The Court concludes this objection should be sustained.  Plaintiff's claim is that (1) use of lethal injection – regardless of the chemicals utilized and regardless of the procedures utilized – will cause a serious risk of severe pain and suffering and (2) execution with lethal gas will significantly reduce this severe risk.  Count II of Plaintiff's Fourth Amended Complaint alleged that Plaintiff's rights were violated because Defendant did not have a plan for taking necessary steps to assess Defendant before and during the execution, but the Court dismissed Count II. Interrogatory #18 might have been relevant to Count II, but it is not relevant to the sole remaining count.

*Interrogatory #19* asks Defendants to identify all communications, records, or correspondence involving Plaintiff's medical condition, as well as his "physical or mental fitness for execution." Defendants present several objections, some of which are based on privilege and some of which are not.  The Court does not find all of them applicable.

Defendants objected because the interrogatory is not specific as to time and because Plaintiff "is not currently under an active warrant of execution."  These objections are overruled. The lack of a time frame does not make this request burdensome; Defendants can (and should) provide Plaintiff with all information they have about his medical condition.  The Court also holds the fact that there is or is not currently a warrant of execution is no bar to providing the information.

Defendants also objected that Plaintiff's mental condition is not an issue in this case, and they are technically correct. Nonetheless, it seems far easier to simply provide Plaintiff with all of the medical records about himself than try to parse the documents. After all, Plaintiff is essentially requesting his own medical records.

Despite these objections, Defendants provided a response. The Court does not know what was provided; as indicated, the preferred course would have been for Defendants to simply provide Plaintiff with all of the medical information about him that they have (which, based on Defendants' response to RFP #15, may be what they did – and without objection). More importantly, in addition to providing a response, Defendants asserted three privileges: attorney/client, state secrets, and a concern that answering will identify members of the execution team. The third privilege is understandable, but it is not clear how the first two privileges apply and Defendants provide no explanation for them. It may be that the state secrets privilege is intended to be co-extensive with the concern about identifying members of the execution team, but if this is the case a document that identifies a person as a member of the execution team could perhaps be redacted in a manner that allows Plaintiff to discover information relating to his own medical condition. This discussion (particularly the Court's inability to ascertain why the privileges even apply) demonstrates the need for Defendants to provide a privilege log that identifies all documents responsive to this interrogatory that have been withheld.

Within ten days, Defendants are directed to respond to this interrogatory in full, and prepare a privilege log for any documents they withhold based on a privilege. In identifying the documents on the privilege log, Defendants should describe the document in terms of its date,

the nature or type of document, the author(s) and recipient(s), a summary of its contents or subject matter, and the reason why the document is privileged.

*Interrogatory #20* requires Defendants to describe any research of alternative execution methods "including execution by lethal injections, lethal gas, firing squad or electrocution, and the feasibility of any of those methods." Defendants initially objected for a variety of reasons, including (1) the request exceeds the bounds set by the Scope Order and (2) attorney/client, work product, and deliberative process privileges. In their Supplemental Response, Defendants stated they had "not conducted any research and have had no communications concerning lethal gas as a method of execution."

The Supplemental Response provides a response to the permissible aspects of Interrogatory #20. As presently phrased, this interrogatory is broader than permitted by the Scope Order, which allowed Plaintiff to seek information related to lethal gas but noted that "it is the only alternative method [of execution] he has alleged, so it is the only method for which discovery is justified and the breadth of this category must be limited accordingly." (Doc. 105, p. 8.) Moreover, as the Court has stated previously, Count I does not allege that other methods of lethal injection will alleviate the risk of severe pain and suffering; therefore, information about "other ways" to conduct lethal injection are irrelevant. Given that Defendants fully responded to the proper aspects of this interrogatory by stating that no research about lethal gas has occurred, there is no need to consider the privileges.

*RFP #1* is similar to Interrogatory #1 in that it essentially asks for the execution protocol. To that extent, the Court's ruling is the same as with Interrogatory #1: Plaintiff should receive the execution protocol. RFP #1 goes further, however, seeking documents "related to the consideration and selection of the current protocols." The Scope Order determined that this was

13

not a permissible area of discovery. (Doc. 105, p. 6.) RFP #1 also seeks documents "related" to the protocol; to the extent this seeks something beyond the protocol itself, it is vague in a myriad of respects. Assuming that Defendants provided the execution protocol, (*see* page 6, n.2), Plaintiff has received all to which he entitled and there is no need to consider the privileges Defendants have asserted.

**RFP #2** requests several categories of documents related to the documents used in lethal injection. Most of the information sought was addressed in the Scope Order, (Doc. 105, p. 7), or the Order issued following the March 15 conference. (Doc. 163, ¶ 2.) The only category that was not previously addressed is Plaintiff's request for information about "potential chemicals" that could be used in a lethal injection. Given that Plaintiff's claim does not depend on the chemicals used, and he has not alleged that the use of alternative chemicals will reduce the risk of pain and suffering, Defendants need not respond to this aspect of RFP #2. These rulings obviate the need to consider Defendants' asserted privileges.

**RFP #3** asks for documents related to "the actual or potential chemicals" that might be used during an execution by lethal gas. Defendants object to the extent that it seeks information about the chemicals/gasses used in 1965 and before, and for the reasons discussed previously the Court agrees that such information need not be produced. Defendants also pose an objection based on deliberative process privilege, but it is not clear whether any responsive documents more current than 1965 have been withheld. If, for example, the DOC has documents regarding the current availability of chemicals that could be used for lethal injection, such documents might be relevant and also might not be subject to the privilege. Assuming any such documents exist, Defendants must produce the documents or prepare a privilege log for any documents that are not produced based on a privilege. If no such documents exist, Defendants must certify as such.

***RFP #4*** seeks documents "regarding the DOC's selection, consideration or rejection of any actual or potential drugs to be used during an execution by lethal injection or lethal gas," then sets forth a series of specific subjects Plaintiff considers encompassed by this request. Defendants first raise a non-privilege based objection, contending that to the extent RFP #4 calls for documents related to the selection of the drugs to be used during lethal injection, the request exceeds the bounds set by the Scope Order. The Court agrees. (Doc. 105, p. 6.) Therefore, the request must be limited to the subject of lethal gas, and when so limited RFP #4 is very similar to RFP #3 – and in that respect the Court's ruling is also the same.

***RFP #5*** asks for documents "regarding the actual or potential use of a paralytic drug during an execution by lethal injection or lethal gas, including all documents related to the purpose the paralytic serves, if any, during such an execution." Defendants first state that the lethal injection protocol does not use a paralytic drug, so there are no responsive documents related to the current protocol. The Scope Order precludes discovery on alternative methods of lethal injection, so there is no need to consider whether any documents related to alternative methods are also privileged. Finally, given that DOC has no protocol for the use of lethal gas, it stands to reason that there are no responsive documents available.

***RFP #6*** is similar to Interrogatory #6 and the Court's ruling is the same.

***RFP #7*** is similar to Interrogatory #20 and Interrogatory #12, and the Court's ruling is the same.

***RFP # 8*** is similar to Interrogatory #9 and the Court's ruling is the same.

***RFP #9*** is similar to Interrogatory #13 and the Court's ruling is the same.

***RFP #10*** is similar to portions of various interrogatories; it asks for documents related to the procedures "to prepare a prisoner for execution, including . . . steps taken to determine a prisoner's physical and/or mental fitness of execution." With the dismissal of Count II,

information related to the manner in which Plaintiff is assessed before execution is not relevant. Assuming Plaintiff has been provided the execution protocol, the relevant portions of this question has been adequately answered and there is no need to further consider the privileges asserted by Defendants.

*RFP #11* asks for documents "regarding the monitoring of prisoners during an execution by lethal injection or lethal gas." Defendants have confirmed there is no protocol for execution by lethal gas. With the dismissal of Count II – including its claim that the protocol does not require adequate assessment of the prisoner during the execution – detailed information is not necessary. The Court deems it sufficient for Plaintiff to have received the execution protocol.

*RFP #12* is similar to Interrogatory #14 and the Court's ruling is the same.

*RFP #13* is similar to Interrogatory #17 and the Court's ruling is the same.

*RFP #14 and RFP #15* were answered without objections (based on privilege or otherwise) or qualifications, so there is nothing for the Court to rule on.

*RFP #16* asks for documents identifying those who treated or provided medical care to Plaintiff, "including, but not limited to, resumes, administration records, employee files, and treatment records." Defendants supplied some documents identified only by their Bates Numbers, and then objected because medical services are provided by an outside vendor and some documents (e.g., resumes and employee files) are not in Defendants' possession. Plaintiff provides no basis for overruling this objection and there is no privilege for the Court to consider.

*RFP #17* and *RFP #18* ask for documents and records related to Plaintiff's medical condition, and Defendants object because there is no limitation as to time or scope. They are therefore similar to Interrogatory #19. (They are also similar to RFP #15, which – in contrast to RFP #17 and RFP #18 – Defendants answered without objection.) The Court's ruling on RFP #17 and

16

RFP #18 is the same as for Interrogatory #19: Defendants should provide Plaintiff with all of his medical records, and prepare a privilege log for any documents that are withheld based on a privilege. RFP #18 also asks for all documents "regarding Plaintiff;" this aspect of RFP #18 is discussed in Part III of this Order.

**RFP #19** requires Defendants to supply "all documents referred to in, or used to answer or respond to" the Fourth Amended Complaint, the interrogatories, or the motions. Defendants' response refers to the documents that have been identified and supplied, and objects to supplying anything beyond that because the request is "unduly burdensome, overbroad," and calls for documents that are subject to the attorney/client and work product privileges. Given RFP #19's breadth and the subjects addressed, the Court agrees and deems Defendants' response to be sufficient without further identification of documents in a privilege log.

**RFP #20** asks for "[a]ll documents which refer or relate to, or support or refute, any affirmative defense you have asserted or will assert." Defendants' response is similar to their response to RFP #19. And, as with RFP #19, the Court deems Defendants' response sufficient.

### III. E-Mails

During the March 15 conference, the Court discussed Plaintiff's request for a certification from each Defendant that he undertook a good faith effort to procure responsive documents and fully respond to interrogatories. Defendants' counsel confirmed that such a certification could be produced, and the Court stated "[i]f the defendants, then, could provide a certification to [Plaintiff] that they undertook all good faith effort[s] to procure documents and answer all interrogatories, then that seems to address this issue." (Doc. 164, p. 22.) In the Order issued after the conference, the Court directed that "[w]ithin five business days, each Defendant shall provide a certification confirming that they undertook a good faith effort to procure documents

responsive to Plaintiff's discovery requests, and to provide answers to all interrogatories propounded by Plaintiff." (Doc. 163, ¶ 1.) Defendants complied with this directive. (Doc. 165.)

The Motion to Compel alleges Defendants' certifications are insufficient because they do not describe what Defendants did to search their e-mails. Defendants do not respond to this contention; instead, they argue that they produced 76 e-mails and that this seemingly-low number is unsurprising given the Scope Order's limitations and the fact that lethal gas has not been used since 1965. (Doc. 173, p. 25.)

Defendants sent the March 30 e-mail to the Court and Plaintiff's counsel the day after they responded to the Motion to Compel. In that e-mail, Defendants revealed that in December 2016 they searched all DOC employee e-mails for the term "Bucklew" in order to ascertain the breadth of the documents responsive to RFP # 18, part of which asks for all documents "regarding Plaintiff." The search generated more than 38,000 documents. (Doc. 177-2, p. 3.) It may well be that all of the relevant, non-privileged e-mails have been produced in response to other discovery requests – but there is no way to know for certain. In their Reply Suggestions, Plaintiff represents that this is the first time that a search yielding more than 38,000 results has been mentioned, and they correctly contend that "[i]f Defendants had concerns about the number of results, the proper course of action would have been to raise the issue with Plaintiff's counsel," which would have allowed the parties to refine the search or adopt some other course to insure that all relevant e-mails were produced.[4]

Given the circumstances, the Court directs the parties to confer to develop search terms to further narrow the 38,000 e-mails identified in the December 2016 search. They should also discuss whether the search should be limited temporally (although there are no e-mails from

_____

[4] As stated, the e-mail search was conducted in conjunction with RFP #18. The Court notes that Defendants' response to RFP #18 generally objects that the "request is vague, overly broad, and unduly burdensome" but does not mention that a search was conducted using "Bucklew" as the search term and that 38,000 e-mails were found.

before 2008 because e-mails before that date are not available) or in terms of whose e-mails should be searched.

Finally, the parties should discuss whether additional searches of DOC employees' e-mails should be conducted in order to insure that all e-mails responsive to Plaintiff's discovery request have been produced. It is possible that any searches combining "Bucklew" with additional terms will produce all relevant documents – but this point is far from certain. For instance, the March 30 e-mail also discusses a search of the Defendants' e-mails for the terms "lethal gas" and "gas chamber." The parties shall discuss whether this search should be expanded to the e-mails of others at DOC, or whether other searches utilizing other terms should be conducted.

## IV.  Conclusion

Plaintiff's Motion to Compel is granted to the extent described in Part III, and the parties shall confer within seven days of this Order and a new search of the e-mails should commence as soon as possible thereafter. The Motion to Compel is also granted with respect to Interrogatory #19 and RFP #3, RFP #4, RFP #17, and RFP #18 as described in Part II, and the responses called for by the Court's rulings should be completed within ten days. Plaintiff's Motion is denied in all other respects.

**IT IS SO ORDERED**.

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
DATE: April 11, 2017                        UNITED STATES DISTRICT COURT

19