```
1          IN THE UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF MISSOURI
2                    WESTERN DIVISION

3
   RUSSELL BUCKLEW,                )
4                                  )
                  Plaintiff,       )  No. 14-08000-CV-W-BP
5                                  )  March 15, 2017
           V.                      )  Kansas City, Missouri
6                                  )  CIVIL
   GEORGE LOMBARDI, et al.,        )
7                                  )
                  Defendants.      )
8                                  )

9             TRANSCRIPT OF TELECONFERENCE

10        BEFORE THE HONORABLE BETH PHILLIPS
               UNITED STATES DISTRICT JUDGE
11
        Proceedings recorded by electronic stenography
12           Transcript produced by computer

13              APPEARING BY TELEPHONE

14
   For Plaintiff:          MS. KATHLEEN CARLSON
15                         Sidley Austin, LLP
                           1 S. Dearborn St.
16                         Chicago, IL 60603

17                         MS. CHERYL ANN PILATE
                           Morgan Pilate LLC
18                         926 Cherry Street
                           Kansas City, MO 64106
19
   For Defendants:         MR. MICHAEL JOSEPH SPILLANE
20                         MS. CAROLINE M. COULTER
                           MR. DAVID JAMES HANSEN
21                         Missouri Attorney General's Office
                           P.O. Box 899
22                         Jefferson City, MO 65102

23

24

25


              Kathleen M. Wirt, RDR, CRR
              United States Court Reporter
   400 E. 9th Street, Suite 7452 * Kansas City, MO 64106
```

1    MARCH 15, 2017

2    - - -

3    THE COURT:  Good morning, this is Beth Phillips.

4    Who else do we have on the line?

5    MS. CARLSON:  Good morning, Judge Phillips, this is

6    Kathleen Carlson on behalf of plaintiff, Russell Bucklew, and I

7    have some of my colleagues from Sidley Austin with me.

8    MS. PILATE:  Good morning, Your Honor, this is

9    Cheryl Pilate.  I am present for plaintiff, as well, but in a

10   separate office.

11   MR. SPILLANE:  Your Honor, this is Mike Spillane for

12   the defendant.  I have Miss Coulter, Mr. Logan, and Mr. Hansen

13   with me.

14   THE COURT:  Well, thank you for calling in.  I have

15   reviewed the summaries that the parties provided and have a few

16   questions.

17   Mr. Spillane, I'm a little unclear on -- let's start

18   with the privilege log.  I'm a little unclear on whether you

19   have provided a privilege log or you've just made the statement

20   that the information is privileged for various reasons.  So has

21   a privilege log been provided?

22   MR. SPILLANE:  No, Your Honor, a privilege log has

23   not been provided.

24   THE COURT:  Okay.  I --

25   MR. SPILLANE:  Miss Coulter, go ahead.

1        MS. COULTER:  I'm sorry, Your Honor.  There has been
2   information, for example, that was specifically identified as
3   privileged where we included the information that would
4   necessarily be included on a privilege log.

5        The other thing that the defendants also did, Your
6   Honor, is we provided a production log identifying which
7   documents we did produce, and we identified the one document
8   that was also discussed in the contents of the answer, saying
9   why, the date, and giving a description of the item that was
10  withheld.

11       So to say that no privilege log -- I mean, there's
12  no step for, I guess, additional documents besides what was
13  discussed -- that was specifically discussed in the responses
14  and identified on a production log.

15       THE COURT:  Okay.  So have all of the withheld
16  documents at least been identified and the basis for the
17  privilege stated?

18       MS. COULTER:  Yes, Your Honor.  Based on my
19  information and belief, all withheld documents, or with the
20  caveat that we talked about in our memo where there were
21  documents that we could not identify whether we had or did not
22  have, have been identified based on, as I kind of also
23  discussed too, some of the breadth of the requests.  You know,
24  we made all good faith and reasonable efforts to identify this
25  information.

1            MS. CARLSON:  Your Honor --

2            THE COURT:  Let me ask a quick question before

3   counsel for plaintiffs step in.

4            And so tell me again why there is some information

5   that you could not identify?

6            MS. COULTER:  Well, for example, Your Honor, in some

7   of the requests for production of documents, plaintiffs

8   routinely asked us to provide any -- like, for example, in

9   Production 1, all documents, including communications related

10  to DOC's execution procedures for lethal injection and lethal

11  gas.  It also asks us to identify any communications.  In

12  Production 7, for example, it talks about any communications to

13  or from or authored by my DOC employee or agent pertaining to

14  execution by lethal injection.

15           Some of these topics, what it was doing was getting

16  into are, for example, any communications that, for example,

17  our office would have had regarding any of the 19 executions

18  that have been carried out, that could have been related to any

19  of the communications we had regarding any of the methods of

20  lethal injection cases that have been before, because,

21  unfortunately, the other issue that we had with the discovery

22  is that none of it was limited in any type of time frame.  And

23  so --

24           THE COURT:  And so it's --

25           MS. COULTER:  I'm sorry, Your Honor.

1      THE COURT:  And so it's essentially just -- so

2  essentially it's that the requests you're saying are overbroad

3  and --

4      MS. COULTER:  Yes.

5      THE COURT:  -- for that reason, you can't

6  necessarily identify all of the -- all of the documents.

7      MS. COULTER:  Correct, Your Honor.

8      THE COURT:  Okay.  Miss Carlson, was it you who was

9  trying to step in a minute ago?

10      MS. CARLSON:  Yes.  I just wanted to -- I'm sorry

11  for interrupting you.

12      THE COURT:  No, that's fine.

13      MS. CARLSON:  So I have actually asked defendants'

14  counsel the exact same question as you had asked, you know,

15  have you identified all of the documents.  And, you know, I

16  think she has answered it in a similar way, saying yes, but

17  then with a lot of caveats.

18      And so I think I'm still confused because there are,

19  you know, somewhere in the vicinity of 15, you know, RFP

20  responses where they claim that documents have been withheld or

21  that it calls for privileged information, and then so far, we

22  have -- they have identified on a log one document that they

23  have withheld because of privilege.

24      And so I'm confused whether their response is, yes,

25  we've withheld -- we've identified everything, so it's this one

document, or, no, we haven't.  Or -- and I understand that

their response is that the requests are overbroad, but

obviously they interpreted the requests in a certain way in

order to produce documents, and so I think that a privilege log

is separate and apart from all relevance or overbreadth

objections.  So to the extent that they've interpreted the

document requests in a certain way, whatever documents fall

within their interpretation of that request, if there are any

privileged documents that fall within that -- you know, their

interpretation, then those should be identified.  If they're

saying there are none, no other documents, other than the one

that they claim -- that have been identified, that's fine, but

we would want to know that and, thus far, I haven't been able

to get a clear answer to that.

THE COURT:  So, Ms. Coulter, it doesn't look as

though -- I guess here is my question.  Why don't you just put

together a privilege log?  It doesn't look as though there are

a large number of documents.  It seems to be the --

procedurally the proper way to go, the cleaner way to go, and

the easiest way to address this issue.

MS. COULTER:  Well, and, Your Honor, I think Mike

Spillane and I both can talk on this topic.  And I understand

Your Honor's position thinking that it's not necessarily a

burden to create a privilege log, but I guess I would add, the

other documents, aside from the one record that we identified,

1   we also noted that there would have been two communications had

2   by Director Lombardi with counsel, but he can't recall the

3   specific dates or times.

4          But the other issue that we have, too, is, for

5   example, we can't identify -- we can't say whether we have or

6   do not have certain records that were requested in some of the

7   interrogatories.  My recollection is it's only in response to

8   an interrogatory -- or, excuse me, Request For Production of

9   Document 2.

10         We have in the past made a good faith effort to

11  identify those records, produced sealed privilege logs

12  identifying that we may or may not have certain records, but

13  yet, even by us admitting that we have those records, that

14  information has been utilized or could be utilized to identify

15  execution team members.  And that information has been released

16  publicly, even under seal and saying that it's not going to be

17  disclosed.

18         MR. SPILLANE:  If I may, Your Honor, I think what

19  we're talking about specifically here is whether or not we have

20  package inserts.  Package inserts, if we have them, would be

21  identical to what can be found on the internet.  But if we say

22  or do not say we have them, then that would go to whether we

23  used manufactured or compounded pentobarbital.

24         And we litigated this recently in *In Re:  Missouri*

25  *Department of Corrections* under a -- in the Eighth Circuit on a

1  mandamus writ.  And it's a slightly different case, but we

2  prevailed on that, and, as a practical matter, the things ended

3  up in the press anyway, at least references to the privilege

4  logs and our sealed arguments.

5       So the one thing that we really care about not

6  saying that we have or don't have are package inserts.  And if

7  we do have them, which we're not saying we do, identical ones

8  could be pulled off the internet.

9       THE COURT:  Well, then, this seems to be -- so this

10 seems to, then, be related to the last issue I was going to

11 raise, which is the information about the drugs' side effects.

12 So --

13      MS. CARLSON:  And, Your Honor, before we get to

14 that, I mean, I understand that that might be a separate issue,

15 but they've asserted several privileges here:  attorney/client

16 privilege, they've asserted state secrets, and they've asserted

17 deliberative process privilege.  Which, you know, I will note

18 is a qualified privilege that we're, you know, entitled to

19 challenge, but we cannot do so if we don't have any information

20 on the documents withheld.

21      So I would just -- before we get to sort of the side

22 effects issue, which I view as a separate issue, and I, you

23 know, think we can address that separately.  And I don't think

24 that we are demanding that they produce a package insert, but I

25 would just ask that they provide a privilege log.

1          THE COURT:  So Mr. Spillane or Ms. Coulter, other

2  than the indication as to whether or not you have package

3  inserts, are there any other documents that you're withholding,

4  other than the one that was included on the privilege log?

5          MS. COULTER:  Your Honor, I guess to answer that

6  question, I'd like to also maybe respond just generally to the

7  statements made by counsel saying that we did assert several

8  other privileges.

9          To answer your question, that is correct.  Our

10 interpretation within the scope of this Court's order, there

11 was one memorandum that was withheld from 1988 between DOC

12 legal counsel and the warden of M.S.P. at the time.  That was

13 identified to opposing counsel.

14         Additional privileges were asserted in response to

15 their requests for production of documents and requests for

16 discovery because those requests routinely went into

17 information that this Court had already held was not relevant.

18 For example, they sought record and information, documents,

19 communications regarding prior lethal injection protocols, the

20 development and adoption of DOC's current lethal injection, you

21 know, communications regarding the training of team members,

22 detailed information regarding team members, purchase and

23 procurement, et cetera.  And we have taken a position, and I

24 don't believe that we are required to identify documents that

25 are withheld on the basis of privilege when this Court has

1  already said those documents are not relevant.

2           THE COURT:  So has discovery closed in this case?  I

3  don't have the scheduling order in front of me.

4           MS. COULTER:  It has, Your Honor.

5           MS. CARLSON:  Close of discovery was this past

6  Friday.

7           THE COURT:  Okay.

8           MS. CARLSON:  And we were trying to get our motion

9  on file on Friday but understood that we, you know, wanted to

10 have this conference first.

11          THE COURT:  Here is the reason I ask the question is

12 that I think, given the positions of the parties, I need some

13 briefing on this issue.  I don't have the actual requests in

14 front of me, and so for me to conclude that the information --

15 or the requests that the defendants are not answering because

16 it falls into -- within my prior ruling on the appropriate

17 topics, I think I need to have the requests in front of me.

18          And so in order -- I don't do this very often, but I

19 do think that on this particular issue, some briefing would be

20 helpful, given the detail with which I would need to review the

21 requests and the areas to which the plaintiff is seeking

22 information.

23          And so, Ms. Carlson, could you -- it seems to me

24 that a brief motion to compel would be appropriate, and then

25 the -- the opposition to the motion to compel and the reply

1    would be a little bit more meatier.  And so I'm really not

2    looking for parties to waste time on this issue, but I do think

3    that some reference to the specific request is appropriate in

4    this context.

5              MS. CARLSON:  Yes, Your Honor, I agree, and we will

6    be prepared to submit a brief in short order.  So whatever the

7    Court orders, we can file something.

8              THE COURT:  Do you think that you can get -- again,

9    I think that the initial motion could be pretty brief.  Do you

10   think you could do it in a week?

11             MS. CARLSON:  Yes, Your Honor, absolutely.

12             THE COURT:  Actually, you know what?  Yeah, if you

13   could do it in a week, that would be great.

14             MS. CARLSON:  Absolutely, Your Honor, no problem.

15             THE COURT:  Again, I'm not going to be grading your

16   work on the quality of the product because I do think that the

17   response and the reply is going to be more helpful to me.

18             MS. CARLSON:  Okay.

19             THE COURT:  So let's move, then, to the next issue

20   regarding more information from M2 and M3.  I again, either Ms.

21   Coulter or Mr. Spillane, have some questions for you.

22             Why are you opposed to providing the previous

23   depositions of M2 and M3?

24             MR. SPILLANE:  Your Honor, there are a couple of

25   reasons.  One, we think it's outside the scope because the only

1  issue left in this case is Claim 1 that says no matter how we

2  execute, lethal -- use lethal injection or who does it, it

3  violates the Eighth Amendment as applied to Mr. Bucklew.



So I'm not sure there's anything that is helpful to the claim that they actually make that would be aided by bringing in these three depositions. And if we do bring them into this litigation, that invites the same problems we've had before about trying to keep them sealed, and we think that would be unduly burdensome in light of the limited information they would provide in light of Mr. Bucklew's specific claim.

THE COURT: So, Ms. Carlson, I'm most interested in why you think this information is relevant, given the claim that remains in this case.

MS. CARLSON: Yes, Your Honor, I'm happy to address that.

So the first thing I will say is, you know, we are -- we, being Sidley Austin, are a little hamstrung by the fact that we don't know specifically what is in those depositions. But I will say that during the deposition of defendants' expert, Dr. Antognini, specifically relied on the fact and assumed in his report and during the deposition that the persons M3 and M2 would have the requisite training necessary to carry out the executions.

Secondly, during the deposition of our own expert, Mr. Spillane asked our own expert several questions about training relating to inserting IV lines, et cetera, clearly getting at, you know, what the process would be for an

1    execution with respect to IV lines that is directly relevant,

2    you know, they've put it at issue.

3            And I think, third, is that their protocols

4    specifically state -- they've now produced the open protocols

5    and the closed protocols.  But the open protocols specifically

6    talk about the process for inserting an IV line and state that

7    it can be done a certain way, assuming that the person had the

8    requisite training and experience in order to do it.  So the

9    training and experience relating to IV lines is now directly at

10   issue, based on documents that they've produced and testimony

11   and expert reports that they've produced in this case.

12           THE COURT:  Well, I guess I take issue with the fact

13   that because a question was asked or documents were produced in

14   discovery that, thereby, that makes it relevant, because

15   obviously discovery is much broader than the issues that will

16   be permitted to be discussed at trial.

17           Can you tell me what types of experts these are?

18   Again, if the claim is that any type of lethal injection is a

19   violation of the Eighth Amendment, then I'm still unclear as to

20   why the training of the person who is involved in the lethal

21   injection is relevant.

22           MS. PILATE:  May I briefly say something, Your

23   Honor?  This is Cheryl Pilate.

24           Rusty Bucklew was a plaintiff in both of those

25   cases, and I was one of his counsel.  And, of course, with the

1 Eighth Amendment claim, we have to show that the pain reaches a
2 certain excruciating level, it's highly likely that the
3 prisoner will experience excruciating pain.  So I mean, we have
4 to show that.
5       Now, without revealing what's in the depositions,
6 and I'm trying to be careful here -- and I am in a very odd
7 situation in terms of having the depositions right in front of
8 me, having the knowledge, which is, of course, imputed to
9 plaintiff, and he's been a party in all of these cases.



23       THE COURT:  Well, Miss Pilate, I'm going to
24 interrupt you.
25       As I recall, there was a claim challenging the

1  qualifications of the personnel and, if I recall correctly, I

2  dismissed that claim. I also, again, just do not see how the

3  issue of -- I mean, given the fact that the remaining claim is

4  that any type of lethal injection is unconstitutional with this

5  particular defendant -- or this particular plaintiff, I again

6  just don't see how this is relevant.

7  Since we are going ahead and briefing the other

8  issue, I will give the plaintiff the opportunity to include an

9  argument with respect to this issue in the briefing. But I

10  will tell you at this point, based upon the information that's

11  in front of me, I do not see how information from M2 and M3 is

12  relevant to the one remaining claim in front of me. I will

13  defer ruling, and, if the plaintiffs want to add anything on

14  this issue in the briefing, they can do so.

15  MS. CARLSON: Thank you, Your Honor, we will. Thank

16  you very much.

17  THE COURT: Moving now to the information regarding

18  the chemicals' side effects, this seems to be somewhat related

19  to the issue of the privilege log, but, Ms. Carlson, why don't

20  you explain to me why you think that this is relevant, again,

21  given the one remaining claim that we have in this case.

22  MS. CARLSON: Yes, Your Honor. So I think, you

23  know, the plaintiff has consistently -- I'm sorry, the

24  defendants have consistently indicated that this request seeks,

25  you know, the package insert, and that would cause them to

reveal some sort of state secret.  I think, you know, we are comfortable that they do not need to produce the package insert, if that's their concern; however, to the extent that they do have communications regarding how the drug works in the context of a lethal injection, I think that the protocols that they have produced have a lot of holes, and we have absolutely no idea what happens when there are complications relating to a lethal injection.  So to the extent that they have any communications relating to such complications and what would happen in that instance, I think that is directly relevant to the excruciating pain that Mr. Bucklew might suffer during execution by lethal injection.

        MS. PILATE:  Excuse me, Your Honor, those were -- I mean, that specific topic was also addressed in one of M3's depositions.

        THE COURT:  And so, Mr. Spillane, do you have any information on this topic that would not consist of package inserts?

        MR. SPILLANE:  I have been told that the Department of Corrections has been questioned on this point and has responded that, no, they do not.  Without saying that they do or do not have package inserts, that they do not have anything else.

        Is that correct with your conversations with them, Ms. Coulter?

1        MS. COULTER:  Yes, Your Honor.

2        THE COURT:  So, Ms. Carlson, if you don't believe

3   that the package inserts are -- need to be turned over, if they

4   do exist, and that the department doesn't have any additional

5   information on this topic, then what is it that you're seeking

6   from the defendants?

7        MS. CARLSON:  So, Your Honor, I think a couple of

8   points to that.  So I think maybe this is the first time that

9   we've heard that they don't have any additional information is

10  my first point; and second point is I think Mr. Spillane just

11  said that he has been told that the Department of Corrections

12  has been asked in another proceeding.

13       And so I think this sort of dovetails to our concern

14  regarding discovery generally, and our concern that is raised

15  in Point 4 in our letter is that I'm just not sure the level of

16  investigation that has been done to confirm that no information

17  exists.

18       For instance, during Director Lombardi's deposition,

19  he testified that he had not been asked to look for documents

20  and has not searched for documents; and then, you know, sort of

21  one day before the close of discovery, we got supplemental

22  documents that were years and years old, so were not things

23  that had just been created.

24       And so it appeared to us that, perhaps, an

25  exhaustive search had not been done, and we're still calling

1   that into question, especially in light of the fact that I

2   think less than five e-mails have been produced in this case,

3   so I'm not sure that any sort of e-mail search has been done to

4   actually determine whether there are responsive documents here.

5           THE COURT:  And so does --

6           MR. SPILLANE:  If I may correct one thing, Your

7   Honor, my response referred to this case.  That's what I just

8   asked Ms. Coulter, if she had spoken to DOC in connection with

9   this case, if they had any documents that dealt with side

10  effects, and the answer was no.  So that's not a past case,

11  that's this case.

12          MS. COULTER:  Correct.  And Your Honor, every time

13  we've communicated with counsel, we've informed and advised

14  them that, based on our information and belief and our

15  discussions with DOC, as well as the defendants, that all

16  responsive records have been produced.  I mean, for counsel to

17  say that this is the first time they've heard this, I mean,

18  we've put that in writing in e-mail and in our letters and the

19  discussions that we've had.

20          And as to the documents that they say we just

21  recently produced, one of the issues the defendants discussed

22  and the Court is already going to have briefing on is just the

23  breadth and the scope of the request.  One thing that we could

24  not narrow down, for example, is they asked for any and all

25  communications we have had regarding lethal gas.  Lethal gas is

1 currently not a method of execution in Missouri; however, it
2 was from 1937 to 1965.

3          And so one of the things that we were trying to work
4 out with counsel, which it was my understanding and belief that
5 we didn't even get a time frame that we were going to agree
6 upon until March 7th, was some sort of time period to even
7 conduct some sort of reasonable search to try and find some of
8 these records.

9          Although we do not believe that the prior, you know,
10 records and documents regarding DOC's use of cyanide gas from
11 the '60s and earlier, or necessarily the old gas chamber, which
12 was discussed during the deposition, which was held in January,
13 were relevant, we certainly tried to make every good faith
14 effort to give them whatever responsive documents that could be
15 located.  Those communications happened because the parties did
16 take good faith efforts to meet with and confer on some of
17 these discovery topics.

18          THE COURT:  And so -- I'm sorry, was that Ms.
19 Coulter?

20          MS. COULTER:  Yes, Your Honor, I apologize.

21          THE COURT:  Okay.  I tell you, if we have a future
22 telephone conference, I really think that it's important in
23 telephone conferences that we only have one counsel -- I think
24 it's important in hearings, but even more important in
25 telephone conferences that we only have one counsel for each

side speaking up.  I recognize that discovery especially is

somewhat of a tag-team effort; but in telephone conferences,

it's really confusing if we have multiple people talking.

So this really just comes back to what has the

defendant done in order to document, certify, whatever we want

to call it, that the searches have been done and the

appropriate documents have been turned over?  Mr. Spillane?

MS. COULTER:  I guess that's what I'm -- I'm sorry,

Your Honor, this is --

THE COURT:  Ms. Coulter?

MS. COULTER:  Yes, Your Honor.  And I guess that's

where I'm a little bit perplexed.  I'm not really necessarily

sure if counsel is requesting or asking me, for example, to

memorialize all of the communications that we would have had

with DOC, all of the -- you know, there were several

communications that we had with DOC after we got the discovery

requests.  There were certainly certain actions that DOC's

general counsel's office took to try to obtain these records.

There were a lot of individuals that were discussed.

It's my understanding that DOC's general counsel's

office would have went to the individuals who they believed had

the relevant documents or retained those documents to try to

locate this information.  And even then, like I said, we've had

communications, it's my understanding they had communications

with the defendants personally.  I had communications with the

1 defendants personally. And even after our meeting, there were

2 communications that we had with, again, DOC's general counsel's

3 office to see what could possibly or potentially be out there.

4          THE COURT: Okay. So let me --

5          MS. COULTER: I'm not sure if anything more needs to

6 be memorialized.

7          THE COURT: Let me -- let me interrupt you. In

8 plaintiff's submission, the last sentence says, "Plaintiff

9 seeks certification from each defendant that they undertook a

10 good faith effort to procure documents and to answer all

11 interrogatories."

12          It sounds as though that won't be any problem, Ms.

13 Coulter, if you have gone through all of the steps that you

14 just indicated. True?

15          MS. COULTER: Certainly, Your Honor.

16          THE COURT: Okay. If the defendants, then, could

17 provide a certification to defendant [sic] that they undertook

18 all good faith effort to procure documents and answer all

19 interrogatories, then that seems to address this issue.

20          It seems as though, however, that the discovery

21 requests on Issue No. 3, the chemicals' effects, that if the --

22 if the defendants do not have any of the documents that are

23 requested, then the plaintiffs are also entitled to an actual

24 interrogatory response, or whatever the nature of the discovery

25 request was, to that effect. So to the extent the defendant

1 has not responded in a fashion similar to what was stated

2 during today's telephone conference, then I think the

3 defendants also need to clarify that issue with an appropriate

4 discovery response.

5         MS. COULTER:  And certainly -- I will certainly go

6 back and look, Your Honor.  I think there were very few, if

7 any, in light of the original interrogatory responses and the

8 supplemental interrogatory responses where, even though we

9 certainly made the objections, that no information or no answer

10 was provided.  But I will go back and look at that, certainly,

11 Your Honor.

12         THE COURT:  Can you do that within the next five

13 days?

14         MS. COULTER:  Absolutely.

15         THE COURT:  Okay.  Then, Ms. Carlson, to the extent

16 you still have concerns on these issues after that has been

17 done, any additional issue can be included in the motion to

18 compel that you're filing.

19         MS. CARLSON:  Okay, Your Honor.  That sounds fine.

20 And I would just want to confirm that they -- in connection

21 with the certification, that they searched e-mails of the

22 defendants, at a minimum, for relevant communications.

23         THE COURT:  Ms. Coulter, I assume that wouldn't be a

24 problem.  I would assume in this day and age that a document

25 search would include an e-mail search.

1    MS. COULTER: Well -- and, Your Honor, again, this

2  is Caroline Coulter.

3        This goes back, though, to some of the problems that

4  we do have regarding the breadth of the request.  For example,

5  wanting any and all communications.  I'm certain that I could,

6  perhaps, try to formulate, but, for example, we haven't

7  narrowed down to which specific individuals.  I mean,

8  understand, of course, DOC -- I'm sorry.  I'm having -- I

9  guess, I'm sorry, Your Honor, I apologize.  I was distracted

10  for a moment.

11        But that's part of the problem that we have on

12  trying to narrow down at least a time period, if there are

13  specific individuals.  Some of the requests, like I said,

14  wanted information, if there was any information regarding any

15  individual or agent in the DOC, without regard to their

16  position or whether or not they're even involved in making any

17  of these types of decisions.

18        So I think -- I guess that's what I'm saying, as

19  part of the request for additional e-mail searches, unless we

20  have further narrowing of some of these topics, that is the

21  issue that we have with trying to narrow and provide that sort

22  of information.

23        THE COURT: Well, I mean, at some point, then, we

24  may need -- this may take us full circle here and back to the

25  first issue, which is we may need more information, then, as to

1   how you interpreted the discovery requests in light of your
2   objection that some of them were overly broad to ensure that
3   the searches that you did are sufficient.  And so that may be
4   an issue, then, that needs to be discussed when discussing the
5   privilege log, which seems to me to somewhat surround the issue
6   of your interpretation of these discovery requests.

7               MS. CARLSON:  Your Honor --

8               THE COURT:  This is a long way of saying that I'm
9   not real sure that this telephone conference has necessarily
10  been as helpful as I'd hoped, and, for that, I apologize.  I
11  do -- I think that the parties who have been involved in
12  previous litigation can attest that typically these discovery
13  disputes can be resolved through a telephone conference.  This
14  is one of the rare circumstances where I don't think that
15  that's going to happen.

16              Ms. Carlson, were you going to weigh in?

17              MS. CARLSON:  Yeah.  I was just going to say I
18  think -- and we can brief this for sure.  I think this just
19  maybe comes down to a difference of opinion in terms of
20  responding to discovery requests because I think that what I'm
21  hearing is that, because the interpretation of the discovery
22  requests is that -- from defendants is that it was too
23  overbroad or vague or whatever the response might be that they,
24  then, couldn't do any searches of e-mails because of that.  And
25  I think, you know, as a standard practice, you are obligated to

1  do the searches based on your sort of understanding of the

2  discovery request and your interpretation of what is relevant

3  and then, you know, to the extent that we then have problems

4  with the, you know, limitations that you pose on it, then we

5  can discuss it.  Unfortunately, that hasn't been done here, and

6  so then we're sort of left in the dark completely about what --

7  you know, what efforts that they've undertaken.

8          So we're happy to brief this, and we can put it all

9  in our motion and then proceed from there.  But apologies if

10 this is more complicated for you than normally.

11         MS. COULTER:  Your Honor -- I'm sorry.

12         THE COURT:  One thing I'd like to do, Ms. Coulter,

13 is see -- get some possibilities about shortening the briefing

14 schedule on this issue.  If the plaintiffs can get the motion

15 on file within the next seven days, can you respond within the

16 following seven days?

17         MS. COULTER:  I should be able to, Your Honor.

18         THE COURT:  Okay.  And then, Ms. Carlson, can you

19 get a reply within the next seven days?

20         MS. CARLSON:  Of course, Your Honor.

21         THE COURT:  Okay.

22         MS. COULTER:  And Your Honor, I apologize.  This is

23 Caroline Coulter.  I don't want to have anything misunderstood

24 here.  I don't want to indicate that there was no search of any

25 e-mails.  There were searches that were conducted and e-mails

1  that were provided; however, there was no additional search.

2  For example, I didn't ask them and request them to provide me

3  any and all e-mails with the mention of the word "gas" or

4  "execution," just broadly asking.  I think, again, this kind of

5  goes back to we tried to interpret to the individual defendants

6  and those specifically involved in this case.

7         But due to the breadth of the request, we'll

8  certainly brief it on this.  I just did not want Your Honor to

9  understand that there was no e-mails or any type of search

10 conducted.

11        THE COURT:  So have the parties had any

12 conversations regarding the objection and the areas of

13 discovery to which the parties can agree?  I mean, sometimes

14 when there's an objection, for example, overly broad, then the

15 parties can talk and can agree, well, then, we're talking about

16 this particular time frame.  Did that occur in this case?

17        MS. CARLSON:  We had two telephone conferences, Your

18 Honor, and we did resolve some issues during those conferences.

19 I think a lot of it was left open, and then we received some

20 documents late last week.  So we will certainly -- we're in the

21 process of reviewing those, and so we will certainly take that

22 into account when we file our motion so as not to unnecessarily

23 burden the Court.

24        THE COURT:  Well, I will look forward to the

25 briefing.  If the questions are answered in the briefing, then

1   we will try to get a ruling out as quickly as possible.  We
2   will make this a priority, too, so as soon as the briefing is
3   completed, we can get an order out in short order.  In the
4   event that the briefing raises any additional questions, I will
5   set up a telephone conference, but, again, will do so as
6   quickly as the briefing is completed.
7               Are there any other issues that I can take up at
8   this time?  Okay.  Hearing none --
9               MS. CARLSON:  Thank you very much for your time.
10              THE COURT:  -- I will take that as a no.
11              MS. COULTER:  Your Honor -- Your Honor, I apologize.
12  Caroline Coulter with defendants.
13              One thing that did come up, I think -- I know you
14  indicated that you wanted the parties to file the motion to
15  compel and how to do briefing.  It was my understanding that
16  defendant -- or plaintiff's counsel had indicated that some of
17  their motion that's already been drafted contained highly
18  confidential or discussion of highly confidential information.
19  So I just wanted -- perhaps, if maybe we can discuss briefly
20  how the Court would like the parties to proceed if the
21  documents may contain highly confidential information?
22              THE COURT:  I was not a party to that conversation
23  or that e-mail exchange or whatever.
24              Ms. Carlson, do you predict the need to include
25  confidential information?

1          MS. CARLSON:  Yes, Your Honor, I think so, because

2    we have some deposition testimony that we would need to cite

3    that defendants have designated as either confidential or

4    highly confidential.

5          THE COURT:  I'm open to suggestions.  Typically,

6    obviously, it would be filed under seal, and then we can access

7    it through ECF.  It sounds to me that there have been some

8    problems with that approach in the past.  And so, Ms. Coulter,

9    do you have a suggestion?

10         MR. SPILLANE:  Your Honor, this is Mike Spillane.  I

11   think if we -- if this is deposition testimony from this case,

12   I think under seal may be the way we have to go.  I hope

13   they're not saying we're going to bring in deposition testimony

14   from other cases that's already under seal and under protective

15   orders in the other cases.

16         MS. CARLSON:  No, Your Honor, we are not.

17         MR. SPILLANE:  Okay.  And I don't know how to solve

18   that, Your Honor.  As you may know, we had in the *Jordan* case

19   which was -- went up on mandamus in *In Re:  Missouri Department*

20   *of Corrections*, we had sealed in camera testimony that popped

21   up on ECF anyway and ended up in BuzzFeed.  And I don't know

22   how we can stop that, except, you know, put it under seal and

23   be careful.  Unless the Court has a better idea, because, you

24   know, that's happened to us a couple of times that the sealed

25   stuff has come out that's -- and I'm not sure there's a way

1  around it that I can think of.

2          THE COURT:  I don't have any answers at this point.

3  And so I would just ask that the parties be careful and follow

4  the ECF procedures when filing something under seal.  And

5  obviously, to the extent there's anything that the Court puts

6  on ECF that would contain confidential information, we will

7  obviously do the same.

8          If there is nothing further, then have a good rest

9  of the week.

10          (Teleconference concluded.)

11                  - - -

12                  - - -

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          <u>CERTIFICATE</u>

2              I certify that the foregoing is a correct transcript

3      from the record of proceedings in the above-entitled matter.

4

5

6      March 17, 2017

7                              /s/_____
                               Kathleen M. Wirt, RDR, CRR
8                              U.S. Court Reporter

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25